## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WILLIAM GIPSON, individually and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08-CV-2017 KHV/DJW |
| SOUTHWESTERN BELL TELEPHONE COMPANY (f/k/a SWBT, Inc., f/k/a Southwestern Bell Telephone, L.P., | ) ) ) ) ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

The Plaintiffs' discovery responses are confusing, if not misleading. Moreover the Plaintiffs have erroneously asserted and waived the attorney-client privilege and work product doctrine. Finally, many of the plaintiffs' other discovery responses are inadequate. For these reasons, Southwestern Bell Telephone Company ("SWBT") requests the Court's Order requiring the Plaintiffs to (i) amend their discovery responses and disclosures, (ii) produce documents previously withheld from production, and (iii) fully respond to SWBT's interrogatories.

### I.     Statement of Facts

On January 8, 2008, Plaintiff William Gipson filed suit under the Fair Labor Standards Act, 29 U.S.C. 2101, et seq. ("FLSA"), alleging he and others "similarly situated" were not properly paid for all hours they worked (i.e., they worked "off the clock"). *See* Doc. 1.[1] Numerous individuals have joined Plaintiff William Gipson's

---

[1]      Gipson also asserted claims for breach of contract, *quantum meruit*, and violations of the Kansas Wage Payment Act. *See id.* Gipson has ostensibly abandoned these state law claims.

putative collective action.[2]

On May 19, 2008, the Court filed its Scheduling Order indicating "the parties have agreed that, without any need for formal requests for production, copies of the various documents described in the parties' respective Rule 26(a)(1) disclosures shall be exchanged or made available for inspection and copying … ." Doc. 31., ¶ 2.a. In their initial and subsequent disclosures, the Plaintiffs identified "payroll records" and "job-related materials received form Southwestern Bell." *See* Docs. 30 and 48[3]; *see also* Exhibit A, Plaintiff's [sic] Second Supplemental Rule 26 Disclosures. The Plaintiffs have not produced "job-related materials received from Southwestern Bell."

On July 30, 2008, SWBT's counsel initiated an e-mail dialogue with the Plaintiffs' counsel regarding the Plaintiffs' Rule 26 disclosures. *See* Exhibit B. Specifically, SWBT inquired about the Plaintiffs' production of documents identified in the disclosures, including "job-related materials received from Southwestern Bell." *Id.* The Plaintiffs responded by indicating the disclosures identify categories of documents they "*believe* some plaintiffs in this case *will have*." *Id.* (emphasis supplied). The Plaintiffs further explained they did not have documents identified in the disclosures. *Id.* ("To date, none of the plaintiffs who opted in to the suit before July have produced job related materials to us, but we continue to anticipate that some plaintiffs will have such materials. We are not withholding any documents and will produce such materials if we identify plaintiffs who do have such materials.") SWBT asked the Plaintiffs to amend their disclosures, *Id.*, but they have failed or refused to do so.

---

[2]     The Plaintiffs' claims have not been provisionally certified as a collective action under 29 U.S.C. §216(b).

[3]     The Plaintiffs inexplicably filed their Rule 26 disclosures.

On May 23, 2008, SWBT began serving form, written discovery on each Plaintiff. *See e.g.,* Doc.[4]  On July 21, 2008, the Plaintiffs began responding to SWBT's discovery requests. *See* Exhibits C, D, and E.

On July 21, 2005, Plaintiffs William Gipson, Barbara Morales, Margarita Esparaza, and Tina Stoddard responded by serving a single response to discovery that was separately propounded on each of them.[5] *See* Exhibit D. In this initial response, Plaintiffs Barbara Morales, Margarita Esparaza, and Tina Stoddard indicated they allegedly "have no responsive documents in their possession, custody, or control," yet the substantive responses to a vast majority of the requests affirmatively state, "Any responsive documents will be produced."[6] *Id.* at 1, responses to Requests 1 – 15, 20. Similarly, in their July 25, 2008 responses, Plaintiffs Donna Plummer, Erik Ramirez, Blanca Bueno, Lilia Betancourt, and Juan Cisneros intermingled their "answers and objections" to SWBT's requests in a single response. *See* Exhibit E. Plaintiffs Ramirez, Bueno, Betancourt, and Cisneros also indicated they "have located no non-privileged, responsive documents in their possession custody, or control," yet they collectively assert, "Any responsive documents will be produced." *Id.* at 1, responses to Requests 1 –

---

[4]    Identical interrogatories and requests for production of documents have been served on each of the individuals who have filed consents to join this action. In the interest of brevity, unless otherwise noted, SWBT has attached as Exhibits C, D, and E – i.e. a limited number of responses to SWBT's "form" Interrogatories and Requests for Production. If the Court prefers, SWBT will provide the discovery propounded on each of the Plaintiffs.

[5]    Perhaps acknowledging that lumping discovery responses together is not only confusing, but unauthorized by the Federal Rules of Civil Procedure, Plaintiffs Jennifer Pritchard and Linda Hall served separate responses to SWBT's requests, and did not jumble their "answers and objections" with other Plaintiffs' responses. *See* Exhibits F and G. The Plaintiffs' ability to individually respond to SWBT's discovery evidences that doing so is not burdensome or otherwise impracticable.

[6]    When counsel for the parties met and conferred regarding the Plaintiffs' inconsistent responses, the Plaintiffs adamantly refused to amend their discovery responses to accurately reflect they have no documents otherwise referenced in their discovery responses and disclosures leaving SWBT to wonder if the Plaintiffs' current responses are accurate. The Plaintiffs suggested their equivocal responses were necessary to avoid the need to amend discovery responses if the Plaintiffs subsequently found responsive documents.

15, and 20.

At the same time the Plaintiffs served their responses to SWBT's requests for production of documents, they also served their answers and objections to SWBT's interrogatories. *See e.g.*, Exhibit C.[7] Curiously, all of the Plaintiffs who have responded to SWBT's interrogatories, including those who ostensibly have no documents responsive to SWBT's request, have answered, under oath, they "are producing any documents in [their] possession" and they refer to those documents in lieu of describing them as requested. *See e.g.*, Exhibit C, Answer to Interrogatory 1.

On August 4, 2008, SWBT initiated a dialogue with the Plaintiffs regarding deficiencies in their discovery responses; specifically, SWBT's counsel sent the Plaintiffs' counsel a lengthy e-mail. *See* Exhibit I. On August 8, 2008, counsel for the parties met and conferred by phone for more than an hour regarding the issues addressed in SWBT's August 4th e-mail. After the August 8th conference, the parties exchanged e-mails regarding SWBT's discovery. See Exhibits H and I. The parties were unsuccessful in their efforts to resolve their disputes without the Court's intervention, thus leading to the present motion.

## II.     Questions Presented

**A.     Whether the Plaintiffs' should be compelled to amend their discovery responses to explain, once and for all, if they have (i) documents responsive to SWBT's requests, or (ii) generically described in their Rule 26 disclosures.**

**B.     Whether the Plaintiffs' aggregated discovery responses are authorized under Fed. R. Civ. P. 34.**

---

[7]     Unless otherwise noted, SWBT has only attached Plaintiff Barbara Morales' answers and objections because the other Plaintiffs generally served identical responses to the discovery at issue in this motion. If the Court prefers, Southwestern Bell will provide the discovery responses served to date by individual Plaintiffs.

     **C.**     **Whether the Plaintiffs erroneously raised and subsequently waived their attorney-client privilege and work product doctrine objections.**

     **D.**     **Whether the Plaintiffs' miscellaneous discovery responses are deficient.**

**III.**    **Argument**

The Plaintiffs' discovery responses and explanations regarding the same are misleading and beg three simple questions – (i) do the Plaintiffs have the documents *they* disclosed and referenced in *their* interrogatory answers and responses to requests for production, (ii) if not, why have they refused to amend their discovery responses and disclosures, and (iii) if so, why have they not produced the documents? Additionally, the Plaintiffs' discovery responses suffer from a wide variety of other defects. For example, without any authority under Rule 34, the Plaintiffs grouped together their responses to SWBT's document requests, thereby compounding the confusion regarding the Plaintiffs' inconsistent discovery responses and making it impossible to determine, from the face of the responses, if each Plaintiff is producing documents responsive to each particular request. Furthermore, the Plaintiffs have improperly preserved, or erroneously asserted, their attorney-client privilege and attorney work product doctrine objections. Finally, the Plaintiffs have erroneously withheld documents and other information requested by SWBT.

     **A.**     **The Plaintiffs' Rule 26 Disclosures, Interrogatories, and Responses to Requests for Production Are Contradictory.**

The overriding purposes of discovery are to (i) allow parties an opportunity to adequately analyze cases for litigation and/or settlement, and (ii) make relevant and non-privileged documents and information available to other parties. *See e.g., Lipari v. U.S.*

*Bancorp, N.A.*, 2008 WL 2874373, at *2 (D.Kan. July 22, 2008) (discussing the purpose of Rule 26 disclosures) (citing and quoting at n. 10, *Hertz v. Luzenac Am., Inc.*, 2006 WL 994431, at *7 (D.Colo. Apr. 13, 2006) ("[D]isclosures should provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation.")); *Equal Employment Opportunity Commission v. Thorman & Wright Corp.*, 243 F.R.D. 426, 428-29 (D.Kan. 2007) ("The purpose of Rule 34 is to make relevant and nonprivileged documents and objects in the possession of one party available to the other") (citing and quoting 8A Wright & A. Miller, Federal Practice & Procedure §2202, at 356 (2d ed. 1994)).  In this case, the Plaintiffs' run afoul of these general principles, as evidenced by their dizzying array of discovery responses.

The Plaintiffs have made it impossible to determine if they have documents (i) *they disclosed*, and (ii) SWBT requested. First, *the Plaintiffs' identified* a category of documents they "may use to support [their] claims" in their "possession, custody, or control" under Rule 26 (i.e., "job-related materials received form Southwestern Bell"). The Plaintiffs later claimed they do not have the documents *they identified*. *See* Exhibit B. Next, the Plaintiffs served facially inconsistent responses to SWBT's written discovery. *See e.g.*, Exhibit C. Specifically, *all of the Plaintiffs* who have responded to discovery answered an interrogatory by stating, under oath, they were producing otherwise unidentified documents[8] in their possession. *Id.* at Answer to Interrogatory 1. The Plaintiffs have not only failed to do so, but most of them have also provided baffling

---

[8]     SWBT notes the Plaintiffs' generic references to documents they will produce fail to comply with Rule 33(d).  More specifically, it is well settled in this jurisdiction that parties may not merely refer another party to documents "hoping [the other party] will be able to glean the requested information from them." *DIRECTV, Inc. v. Pucinelli*, 224 F.R.D. 677, 680-81 (D.Kan. 2004) ("Absent compliance with 33(d) or attachment of appropriate documents, [a party] may not direct [another party] to find answers from previously produced documents.")  Here, the generic is even more troubling because most of the Plaintiffs have not produced any documents.

responses to requests for production of documents alternatively indicating (i) they do not have responsive documents, and (ii) "Any responsive documents will be produced." *See* Exhibits D and E.

To date, the Plaintiffs have not provided a logical rationale for their inconsistent responses and disclosures. However, to the extent the contradictions are coy, "[t]he Federal Rules of Civil Procedure are designed to put an end to the sporting theory of justice by which the results depends on … the skill and strategy of counsel." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting 6 Wright, Miller, & Kane, Federal Practice & Procedure §1488 (2d ed. 1990)). Taken as a whole, the Plaintiffs' discovery responses and disclosures are confounding and the Plaintiffs should be required to amend their discovery responses and disclosures to (i) clarify, once and for all, if they have discoverable documents, and (ii) if so, the documents should be produced.

**B.      The Plaintiffs' Responses Do Not Comply With Fed. R. Civ. P. 34.**

The manner in which the Plaintiffs have responded to SWBT's Requests for Production has rendered it virtually impossible for SWBT to ascertain which Plaintiffs have responsive documents. In particular, numerous Plaintiffs have improperly lumped together their written responses to SWBT's Requests for Production. *See* Exhibits D and E.

Under Fed. R. Civ. P. 34(b)(2)(A), "The *party* to whom the request is directed must respond in writing within 30 days after being served." (Emphasis supplied). Each individual who has opted into this case is a party plaintiff. *See* 29 U.S.C. §216(b) (filing a consent to join a collective action means the "employee *shall* be a *party* plaintiff.") As

parties, each of the plaintiffs must *individually* respond to SWBT's discovery. Accordingly, the Plaintiffs do not have the right to "hide the ball" by combining their responses. SWBT requests an Order requiring the Plaintiffs to separately respond to SWBT's document requests.

      **C.**    **The Plaintiffs Erroneously Asserted and Subsequently Waived The Attorney-Client Privilege And Work Product Doctrine By Failing To Serve A Privilege Log.**

Parties asserting privilege and the attorney work product doctrine bear the burden of making a "clear showing" the asserted objections apply. *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D.Kan. 1997) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *Ali v. Douglas Cable Comm., Ltd. Partnership*, 890 F.Supp. 993, 994 (D.Kan. 1995)). More specifically, "When a party withholds information . . . by claiming that the information is privileged . . . , the party *must*: (i) expressly make the claim; and (ii) describe  the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added).

In the District of Kansas, a party asserting the attorney-client privilege or the attorney work product doctrine must "describe in detail" the documents or information to be protected and provide "precise reasons" for the objections. *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D.Kan. 2000) (citing *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D.Kan. 1994)). In particular, privilege logs must include the following information:

- A description of the document (e.g., correspondence, memorandum, etc.);
- The date prepared;
- The date of the document (if different from the date prepared);
- The identity of the person(s) who prepared the document;
- The identity of the person(s) for whom the document was prepared and to whom the document and copies of the document were directed;
- The purpose of the document;
- The number of pages of the document;
- The basis or bases for withholding the document; and
- Any other pertinent information necessary to establish the elements of each asserted privilege.

*Heavin v. Owens-Corning Fiberglass*, 02-2572, 2004 WL 316072, at * 7 - 8 (D. Kan. Feb. 3, 2004). "Blanket claim[s]" regarding the privilege and the attorney work product doctrine do not satisfy the burden. *McCoo*, 192 F.R.D. at 680 (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan. 1995) and *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D.Kan. 1994)).

In various discovery responses, the Plaintiffs asserted attorney-client privilege and work product doctrine objections. *See* Exhibit C, Answers to Interrogatory 6, and Exhibits D and E, Responses to Requests 18, 19, and 21. Nevertheless, the Plaintiffs have made *no meaningful effort* to comply with Fed. R. Civ. P. 26(b)(5)(A). Specifically, they have not bothered serving a privilege log. It is well settled that failing to serve a privilege log constitutes a waiver of privilege and work product objections. *See In re TJX Cos., No. 07-1853, 2008 U.S. Dist. LEXIS 46365, at *13 (D. Kan. June 12, 2008) (finding* the plaintiffs waived the privilege by failing to serve a privilege log); *see also Haid v. Wal-Mart Stores, Inc.*, No. 99-4186, 2001 U.S. Dist. LEXIS 10564, at *4 (D. Kan. June 25, 2001) (same).

The Plaintiffs improperly rely on a "blanket claim" of privilege to withhold documents and information responsive to Interrogatory 6 and Requests 18, 19, and 21. *See* Exhibits C, D and E. Having altogether failed to provide a privilege log, and thus waiving the privilege, the Plaintiffs should be ordered to produce all responsive, pre-suit documents[9] withheld on the basis of the attorney-client privilege and the work product doctrine.

### D.  The Plaintiffs' Individual Discovery Responses Are Deficient.

#### 1.  Interrogatory 4

Interrogatory 4 asked the Plaintiffs to:

> Identify all persons whom you believe SWBT has failed or refused to properly pay overtime during the last five years, and for each person identify his or her job titles, supervisors, and locations where they provided services for SWBT, the job duties performed by such persons, the number of overtime hours worked by such persons in each calendar week, and the exact starting and ending times each such persons worked on each calendar days during the calendar weeks when such persons worked overtime.

*See* Exhibit J. SWBT provided further guidance regarding the term "identify." *Id* at 1. In particular, "identify" means to provide the individual's or the entity's full name, last known address and telephone number. *Id.*

Rather than identify any individuals to whom the Plaintiffs believe "SWBT has failed or refused to properly pay overtime," Plaintiffs simply claim SWBT failed or refused to pay **all** call center employees overtime and refers SWBT to unspecified documents purportedly in SWBT's possession that include the information responsive to SWBT's interrogatories. *See e.g.*, Exhibit C, Answer to Interrogatory 4. This answer is non-responsive because it fails to provide the name, last known address, and telephone

---

[9]     The parties stipulated that post-suit documents do not need to be logged. *See* Doc. 93.

number of each individual to whom SWBT owes overtime pay. Furthermore, the response does not comply with Rule 33(d). *See* discussion *supra* at n. 8. Finally, when interrogatories seek information about facts supporting a party's claim, it is irrelevant if the information requested is equally available to both parties. *See Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D.Kan. 1987).

### 3.    Interrogatory 6

Interrogatory 6 asked the Plaintiffs to:

> Identify all current or former SWBT employees with whom you have had contact or communication about the claims you make in this Action, and provide the date of each communication, the person initiating the communication, the substance of each communication, and whether each communication was documented.

*See* Exhibit J. The Plaintiffs objected to this interrogatory by asserting the attorney-client privilege and the attorney work product doctrine. *See e.g., E*xhibit C, Answer to Interrogatory  6. The Plaintiffs have not logged documents withheld on either basis, nor have they suggested that responsive documents were only created after suit was filed.[10] *Id.*  As set forth *supra at* § 3.C., the Plaintiffs have waived their objections.

Further, certain Plaintiffs limited their responses by only identifying conversations with other Plaintiffs and putative Plaintiffs that occurred *before* they hired counsel. *See e.g.,* Exhibit C, Answer to Interrogatory 6. *Information* about communications *between the Plaintiffs* themselves – who do not have an attorney-client relationship – are discoverable regardless of when they occurred. *In re Universal Serv. Fund Tele. Billing Practices Litigation*, 232 F.R.D. 669, 674 (D. Kan. 2005) (identifying the elements of the attorney-client privilege, including the requirement that the

---

[10] *See* n. 9.

communications must occur between counsel and client); *see also Heavin*, 2004 WL 316072, at *4 (noting the attorney work product doctrine plies to documents and tangible things).

### 4.      Interrogatory 8

Interrogatory 8 states:

> Within the last ten years, have you been convicted of, or entered a plea, regarding any crime? If so, for each conviction or plea, state the name and location of the agency or court where you were convicted or plead, the date of the conviction or plea, and describe the crime you were convicted of committing or that you plead to.

*See* Exhibit J. The Plaintiffs object to this Interrogatory as not likely to lead to the discovery of admissible evidence, harassing, and overbroad pursuant to Fed. R. Evid. 609. *See e.g.,* Exhibit C, Answer to Interrogatory 8.

In *Bradley v. Val-Mejias,* 2001 U.S. Dist. LEXIS 25278, at *13 (D. Kan. Oct. 9, 2001), the Court rejected nearly identical objections, and ordered the Plaintiff to produce information about his criminal background. In particular, the Court concluded that "[d]efendants should be provided with the requested information so that they may make their own determination as to whether the conviction falls within Fed. R. Evid. 609(a)(2) and so that they may raise whatever arguments they deem necessary at trial regarding the conviction's admissibility." *See also*, *Johnson v. Kraft*, 236 F.R.D. 535, 541 (D.Kan. 2006) (instructing that documents and information should not be uniformly withheld per a party's interpretation of relevance). For the same reasons set forth in *Bradley*, the Plaintiffs should be ordered to provide information concerning criminal convictions or pleas.

### 5.    Request 16

Request 16 seeks "[a]ll written or tape recorded statements of any current or former SWBT officer, director, agent, representative, or employee." *See* Exhibits D and E. In response, the Plaintiffs state they "will produce any written or tape recorded statements of any current or former SWBT officer, director, agent, representative, or employee concerning the issues in this lawsuit."[11]  *See e.g., Id.* at Response to Requests 16.

To date, the Plaintiffs have not produced any documents responsive to Request 16. A vague promise to produce documents at an unspecified time and place does not comply with Rule 34(b)(2)(A), and is non-responsive. *See Cardenas v. Dorel Juvenile Group, Inc*., 230 F.R.D. 611, 619 n. 29 (D. Kan. 2005) (*citing Lee v. Flagstaff Indus. Corp*., 173 F.R.D. 651, 655 (D. Md. 1997). The Plaintiffs should be required to either produce responsive documents, or, if they do not have responsive documents, so state.

### 6.    Request 17

Request 17 seeks "[a]ll correspondence and communications between you and any current or former SWBT officer, director, agent, representative, or employee." *See* Exhibits D and E. In response, the Plaintiffs claim the request is overly broad in time and subject matter.[12] *See e.g., Id.* at Response to Requests 17. The plaintiffs further claim they will narrow the scope of their response to "issues in this lawsuit." *Id.*

---

[11]     The Plaintiffs also claim the request is overly broad in time and subject matter. *Id.* Since the Plaintiffs have ostensibly agreed to produce responsive things regarding the "issues in this lawsuit," SWBT does not challenge these objections.

[12]     The parties subsequently agreed that the appropriate temporal scope for the requests is the last five years, but the parties were unable to resolve other disputes regarding the requests. *See* Exhibit I.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As noted by this Court, "Relevancy is broadly construed, and a request for discovery should be consider3ed relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Johnson*, 236 F.R.D. at 541 (citing *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004)). As this Court has instructed, discovery requests should be permitted "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party." *Id.*

The documents requested by SWBT are relevant to the Plaintiffs' claims' (i.e., they worked "off the clock") and SWBT's defenses (i.e., the Plaintiffs were properly paid for the hours they worked). *See* Doc. 1. More specifically, the Plaintiffs' communications with one another, as well as correspondence with other current and former SWBT employees, may lead to the discovery of admissible evidence because they may reveal when the Plaintiffs were working, or engaged in non-work related activities.[13] As evidenced by their request for the Plaintiffs' e-mail, the Plaintiffs presumably believe that communications between the Plaintiffs and current and former SWBT employees may bear on their claims. *See* Exhibit K, Request 22 (seeking communications between the Plaintiffs, SWBT, which is defined at p. 3 to include all current and former employees), *see also* Doc. 1, ¶ 20 (alleging the Plaintiffs' "off the clock" work included reading e-mails). For these reasons, the requested communications should be produced, unabated.

---

[13]     The requested communications may also reveal information communicated between the Plaintiffs regarding their claims (i.e., they were required to work "off the clock").

### 7.        Requests 18 and 21

Request 18 seeks "[a]ll documents urging current or former employees to, or describing how current or former employees may, become parties to this Action," and Request 21 seeks "[a]ll written statements from any person regarding your claims in this Action. *See* Exhibits D and E. The Plaintiffs object to these Requests because they purportedly seek documents protected by the attorney-client privilege and the work product doctrine. *See e.g.*, *Id.*, Responses to Requests 18 and 21.

Although the parties have stipulated it is unnecessary to log *post-suit* communications, correspondence between plaintiffs and putative plaintiffs (as opposed to communications between the Plaintiffs and their counsel) are not protected by the attorney-client privilege. *See In re Universal Serv. Fund Tele. Billing Practices Litigation*, 232 F.R.D. at 674 (identifying the elements of the attorney-client privilege, including the requirement that the communications must occur between counsel and client). Further, the Plaintiffs have not provided a log regarding pre-suit documents they are withholding from production. For the reasons discussed *supra* at §3.C., the Plaintiffs have improperly asserted and waived their objections.

### 7.        Request 19

Request 19 seeks "[a]ll documents regarding your agreement to compensate your counsel for attorneys fees related to this Action." *See* Exhibits D and E. The Plaintiffs object to this request because the agreements are supposedly subject to the attorney-client privilege and the attorney work product doctrine. *See e.g., Id.*, Responses to Request 19.

It is beyond cavil that fee agreements are *not* privileged. *See In re TJX Cos.*, No. 07-1853, 2008 U.S. Dist. LEXIS 46365, at *13 (D. Kan. June 12, 2008) (noting fee

agreements are generally not privileged); *see also ERA Franchise Sys. v. Northern Ins. Co.*, 183 F.R.D. 276, 279 (D. Kan. 1998) ("Information regarding the fee arrangement is generally not privileged, because it is not 'normally part of the professional consultation'"). Furthermore, as set forth more fully *supra* at §3.C., the Plaintiffs waived their privilege objections by failing to serve a privilege log. For these reasons, the Plaintiffs should be compelled to produce their fee arrangements.

### 8.    Request 22

Request 22 seeks "[a]ll of your calendars, diaries, and journals with entries made by you, or on your behalf, while you were employed by SWBT during the last five years." *See* Exhibits D and E. The Plaintiffs claim the request is objectionable because (i) it is not limited in scope regarding its subject matter, and (ii) seeks documents "regardless of their bearing in any way on any issue in this litigation." *See e.g., Id*., Responses to Request 22. The Plaintiffs also limit their responses by indicating they "will produce any calendars, diaries, and journals with entries made by Plaintiff concerning the issues in this lawsuit." *Id.*

The core issue in this lawsuit is the amount of time the Plaintiffs spent working. Calendars, diaries, and journals may logically reflect time at work, as well as time away from work, and therefore may be relevant to, or calculated to lead to the discovery of admissible evidence regarding, the Plaintiffs' claims and SWBT's defenses.

## IV.   Conclusion

For all of the foregoing reasons, SWBT respectfully requests the Court's Order requiring the Plaintiffs to (i) amend their discovery responses and disclosures, (ii) produce documents previously withheld from production, and (iii) fully respond to SWBT's interrogatories.

Respectfully submitted,

s/Patrick F. Hulla
Patrick F. Hulla, KS#16230
Stacy M. Bunck, KS#20531
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
Park Central Plaza
4717 Grand Avenue, Suite 300
Kansas City, MO  64108
816-471-1301
816-471-1303  *(Facsimile)*
patrick.hulla@ogletreedeakins.com
stacy.bunck@ogletreedeakins.com

Danuta Bembenista Panich, #3121980 (Illinois)
Christopher C. Murray, #26221-49 (Indiana)
   *Both admitted pro hac vice*
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
111 Monument Circle
Suite 4600
Indianapolis, IN 46204
317-916-1300
317-916-9076 *(Facsimile)*
danuta.panich@ogletreedeakins.com
christopher.murray@ogletreedeakins.com

Bruce A. Ney, KS#15554
Melanie N. McIntyre, KS#19945
Southwestern Bell Telephone Company

220 E. Sixth Street, Room 515
Topeka, Kansas 66603-3596
(785) 276-8435
(785) 276-1948 (*Facsimile*)
bruce.ney@att.com
msawyer.1@att.com

**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on the 25th day of August, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

George A. Hanson
Richard M. Paul III
Jonathan H. Lehr
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO  64112
816-714-7100
816-714-7101  (*Facsimile*)
hanson@stuevesiegel.com
lehr@stuevesiegel.com
paul@stuevesiegel.com

**ATTORNEYS FOR PLAINTIFFS**

s/Patrick F. Hulla
**ATTORNEY FOR DEFENDANT**