DJW/1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM GIPSON,
individually and on behalf of a class
of others similarly situated, et al.,

                      **Plaintiffs,**                **Civil Action**

**v.**                                    **No. 08-2017-EFM-DJW**

SOUTHWESTERN BELL TELEPHONE
COMPANY, f/k/a/ SWBT, Inc., f/k/a
Southwestern Bell Telephone, L.P.,

                      **Defendant.**

## MEMORANDUM AND ORDER

William Gipson brings suit against Southwestern Bell Telephone Company ("SWBT" or "Defendant") on behalf of himself and others similarly situated, seeking recovery of unpaid wages and overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Pending before the Court is Plaintiffs' Motion to Compel Discovery Responses and to Define Format for Document Production ("Motion to Compel") (doc. 177). Plaintiffs seeks an order requiring Defendant to respond to First Interrogatory No. 7 and First Request for Production Nos. 21 and 28. In addition, Plaintiffs seek an order compelling Defendant to (1) produce hard copy documents in image format with appropriate document breaks, and (2) produce electronic documents in native format or in a mutually agreeable text-searchable format. For the reasons set forth below, the Motion to Compel is granted in part and denied in part.

## I.    Nature of the Matter Before the Court and General Background Information

This is a putative collective action brought under the FLSA. Plaintiff William Gipson alleges that he previously worked at Defendant's call center facility in Wichita, Kansas, and that

"Defendant's practice and policy is to deny wages and overtime pay to its hourly paid, telephone dedicated service employees at its call center facilities."[1]  The Amended  Complaint states that the action "is brought as a collective action under the FLSA to recover unpaid wages owed to Plaintiff and all other similarly situated employees employed in Defendant's call centers."[2]  The Amended Complaint alleges that Defendant operates call centers in a region known as "MOKAT," which includes Missouri, Oklahoma, Kansas, Arkansas and Texas.[3]

## II.    Conference Requirement

Before considering the merits of Plaintiffs' Motion to Compel, the Court must determine whether Plaintiffs' attorneys have complied with the conference requirement set forth in Federal Rule of Civil Procedure 26(c) and D. Kan. Rule 37.2.  Defendant argues that Plaintiffs have failed to satisfy their duty to confer, and that the Court should decline to rule on portions of Plaintiffs' motion for that reason.

### A.    Duty to Confer

Federal Rule of Civil Procedure 37(a)(1) provides that a motion to compel must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[4]  The

---

[1]Am. Compl. (doc. 214) ¶ 1.

[2]*Id.* ¶ 2.

[3]*Id.* ¶ 14.

[4]Fed. R. Civ. P. 37(a)(1).

purpose behind the conference requirement is to encourage the parties to resolve discovery disputes without judicial involvement.[5]

In a similar vein, D. Kan. Rule 37.2 provides that the Court will not entertain a motion to resolve a discovery dispute pursuant to Federal Rule of Civil Procedure 37 unless counsel has satisfied the above-described duty by making a "reasonable effort to confer" with the opposing party.[6]   D. Kan. Rule 37.2 expressly states that "[a] 'reasonable effort' to confer means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[7]

### B.    Counsel's Efforts to Confer

Plaintiffs contend that they clearly discussed the issues involved in this motion during an August 12, 2008 telephone conference.  In contrast, Defendant asserts that Plaintiffs' counsel failed to sufficiently confer regarding First Request Nos. 21 and 29 and First Interrogatory No. 7.

As the Court was not privy to the August 12, 2008 telephone conference between counsel, the Court cannot determine whether that particular conference was sufficient to satisfy the conference requirement.  The Court does know, however, that following the Court's December 18, 2008 discovery conference, the parties conferred regarding the issues involved in this and other pending discovery motions.  On February 3, 2009, Defendant's counsel sent the Court an e-mail memorandum reporting the parties' efforts to resolve the motion.  Based on the information

---

[5]*P.S. v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2008 WL 3884312, at *2 (D. Kan. Aug. 19, 2008); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999).

[6]D. Kan. Rule 37.2.

[7]*Id.*  D. Kan. Rule 37.2 requires that the certification "describe with particularity the steps taken by all counsel to resolve the issues in dispute."  *Id.*

contained therein, the Court finds that no further conferring between the parties is likely to result in resolution of this motion.  The Court therefore declines to deny the motion on the basis of failure to confer, and will consider the merits of the parties' arguments.

## III.    Analysis

### A.    Plaintiffs' First Request for Production and the Form of Production

#### 1.    *Background Information*

On May 21, 2008, Plaintiffs served a "First Request for Production of Documents and Things" on Defendant, which consisted of thirty-one separate requests seeking various "records" and "documents."  The Request defined the terms "records" and "documents" as "all records within the scope of Fed. R. Civ. P. 26," including letters, reports, notes, files, memoranda and electronically stored information ("ESI") such as e-mails, computer programs, "transmittals of information . . . produced by electronic data processing," and personnel files stored electronically on a computer disk or hard drive.  Plaintiffs did not specify the form or forms in which any ESI was to be produced.

Defendant served written responses and objections to each request on July 25, 2008.  With respect to all requests except First Request Nos. 19, 27-29, and 31,[8] Defendant indicated that it would make various responsive documents and records available for inspection and copying at its counsel's office, subject to its stated objections.  In response to Request No. 2, Defendant stated that certain "log on and log off data from the Windows NT Security Logs for Plaintiffs" would be produced "upon agreement on the format for production."  With respect to the other requests for production, there was no mention of the format in which any responsive ESI would be produced.

---

[8]Defendant objected to these requests in their entirety and did not indicate it would be producing any responsive documents for copying or inspection.

On August 4, 2008, Plaintiffs' counsel visited defense counsel's office for a document production ("the August 4, 2008 production"). At that time, defense counsel provided to Plaintiffs' counsel several disks containing a large amount of ESI responsive to Plaintiffs' document requests. Those disks are not at issue in the Motion to Compel. In addition, defense counsel made available for Plaintiffs' counsel's inspection a computer "printout of nearly 17,000 pages of scanned and sequentially bates-labeled documents with blue-sheet dividers between documents."[9] These 17,000 pages were not the hard copy documents themselves but rather printouts of the scanned images of the hard-copy documents. Defendant did not explain to Plaintiffs the method that Defendant employed to scan the documents. Defendant allowed Plaintiffs' counsel to view the printouts. The printouts included such documents as personnel files, time records, and overtime reports for the named Plaintiff and the first twenty-five Plaintiffs who have opted in to this putative collective action, as well as certain reference guides, policies, and procedures.[10] Defendant inserted blank blue pages "at logical breaks to demark where each document or discrete grouping of documents began and ended" (e.g., a blank page was inserted between two individuals' personnel files).[11]

At no time during the August 4, 2008 production did Defendant provide Plaintiffs with the hard copy documents themselves or photocopies of the hard copy documents. Furthermore, at no time during the production did Plaintiffs' counsel object that scanned printouts were provided rather

---

[9]Pls.' Mot. to Compel (doc. 177) at 11.

[10]Miller Decl., attached as Ex. 1 to Def.'s Resp. to Mot. to Compel (doc. 207).

[11]*Id.*

than the original hard copy documents nor did he indicate that he believed the production failed to comply with Federal Rule of Civil Procedure 34 or any other Federal Rule of Civil Procedure.[12]

While viewing the printouts on August 4, 2008, Plaintiffs' counsel informed defense counsel Stacy Bunck that because the documents had already been scanned into image format, he believed the most efficient method of production would be for Defendant to burn a disc copy of the images that had already been used to print the copies that Plaintiffs' counsel was reviewing.[13]  Ms. Bunck indicated that her co-counsel Donna Panich was in charge of the production and that she would ask Ms. Panich to call Plaintiffs' counsel to discuss his request for a disk copy of the document images.[14] The following day, Plaintiffs' counsel spoke with Ms. Panich, and he again indicated that because Defendant's production was already in image format, the most efficient method of production would be to burn a disk copy of the images.  Ms. Panich requested that Plaintiffs pay the cost of the disk. She did not provide Plaintiffs' counsel with any information about the format in which the images were stored or other details about how the disk would be created.[15]

On August 6, 2008, counsel exchanged several e-mail memoranda regarding Defendant providing Plaintiffs a disk containing the documents.  Defense counsel informed Plaintiffs' counsel that it would take its paralegal approximately five to six hours to "complete this task" and that the paralegal's hourly rate was $120.[16]  Plaintiffs's counsel asked defense counsel why it would cost so

---

[12]Panich Decl., attached as Ex. 2 to Def.'s Resp. to Mot. to Compel (doc. 207).

[13]Anderson Decl., attached as Ex. E. to Pls.' Mot. to Compel (doc. 177).

[14]*Id.*

[15]*Id.*

[16]8/6/2008 E-mails from Def.'s Counsel Panich to Pls.' Counsel Anderson, attached as Ex E-1 to Anderson Decl. (doc. 177).

much "to burn a disc of documents that are already scanned and sequentially bates-numbered."[17]

Defense counsel responded that the process was not as simple as Plaintiffs seemed to think, but

declined to explain for Plaintiffs how the images were maintained or the steps that Defendant would

need to undertake to accommodate Plaintiff's request for a disk.  Defendant did, however tell

Plaintiffs that they had "the customary option of having the documents scanned and burned to a disk

by a service" if Plaintiffs found Defendant's offer "unappealing."[18]

Plaintiffs' counsel also called defense counsel to inquire about producing "a Summation load

file."[19]  Defense counsel informed Plaintiffs' counsel via e-mail that Defendant did not have the

internal capability to produce such a file and that it would be providing Plaintiffs "with multiple pdf

files containing the documents."[20]  Plaintiffs' counsel responded via e-mail that, based on defense

counsel's assertion that "this is the lowest cost method by which your firm can produce these

documents, we will pay for the copy at your actual cost that you have estimated at 5-6 hours."[21]

Plaintiffs' counsel contends that it "repeatedly" told Defendant's counsel that any disks it made

"should be made from the computer images and not a re-scanning of the printouts."[22]  There are no-

---

[17]*Id.*

[18]*Id.*

[19]"Summation" is a commercially available litigation document management software program that creates an electronically searchable document database.  948 *Practising Law Institute, Discovery:  Planning for Efficiency and Effectiveness*, Sept-Nov. 2008, p.27.

[20]8/6/2008 E-mails from Def.'s Counsel Panich to Pls.' Counsel Anderson, attached as Ex E-1 to Anderson Decl. (doc. 177).

[21]*Id.*

[22]Pls.' Mot. to Compel (doc. 177) at 7.

emails or other documents exchanged between the parties that confirm Plaintiffs' counsel made these statements, however, and Defendant apparently disputes that such statements were made.

Defendant proceeded to burn a disk for Plaintiffs. In making such a disk, the printout of "the paper documents that had been produced for Plaintiffs' counsel's [August 4, 2008] inspection were run through a scanner to create .pdf files."[23] Sixteen Adobe .pdf files were created,[24] with each file containing approximately 1,000 pages.[25] Defendant contends that blank pages marking the beginning and end of each document were included in theses scanned copies. The .pdf files created through this scanning process were saved to a disk and provided to Plaintiffs' counsel on August 8, 2008.[26] Defendant asserts that "[t]he resulting electronic copy of the production [that was burned to the disks] was identical to the paper copy" that was made available to Plaintiffs at the August 4, 2008 production and that the disk was "identical in searchability to the electronic copy of the [document] collection as a whole that is maintained by Defendant's counsel . . . and from which the paper production was made."[27] Defendant further asserts that it does not have the capability to create Summation load files.[28]

Plaintiffs claim that despite the fact that their attorney made it clear to defense counsel that they did not want Defendant to burn a disk of the scanned printouts, that is exactly what Defendant did. Plaintiffs contend that Defendant misled their counsel into believing that Defendant was going

---

[23]Miller Decl., attached as Ex. 1 to Def.'s Resp. to Pls.' Mot. to Compel (doc. 207).

[24]Pls.' Mot. to Compel at 12.

[25]Miller Decl., attached as Ex. 1 to Def.'s Resp. to Pls.' Mot. to Compel (doc. 207).

[26]*Id.*

[27]*Id.*

[28]*Id.*

to extract the images from Defendant's database rather than scan the printouts.  Plaintiffs maintain that the disk they received from Defendant is "largely unusable" because it contains "multi-document .pdf files hundreds of pages in length, rather than . . . separate image files."[29] Furthermore, Plaintiffs claim that there is no indication of where documents begin and end and that they are forced to make "judgment calls as to the proper document breaks."[30]  Plaintiffs state that while Defendant has offered to provide a list of the bates-numbers indicating breaks between documents, it has not done so.[31]  Plaintiffs also complain that they have had to convert the images to .tif files so that they can be loaded into Summation,

Plaintiffs claim that they would have hired a copy service to do all of this in the first place had Defendant "been forthcoming about its undisclosed plan to 'copy' the printouts of the imaged documents."[32]  In their Reply brief, Plaintiffs add that they were ultimately forced to hire a vendor "to retrieve these first 17,000 documents from SWBT's counsel's office and have then scanned for the *third time*."[33]  Plaintiffs state that they incurred $4,000 in costs to do this.[34]  They do not, however, seek reimbursement of these costs.

2.    *The relief that Plaintiffs seek*

Plaintiffs' Motion to Compel seeks three forms of relief, one as to hard-copy documents, one as to ESI that has yet to be produced, and one as to documents that Plaintiffs contend Defendant

---

[29]Pls.' Reply (doc. 242) at 4.

[30]Pls. Mot. to Compel. (doc. 177) at 12.

[31]*Id.*

[32]*Id.*

[33]Pls.' Reply (doc. 242) at 4-5 (italics in original).

[34]*Id.* at 5.

9

maintains electronically but that Defendant scanned and printed and produced for inspection on August 4, 2008.

With respect to the first category (hard-copy documents), Plaintiffs move to compel Defendant "to produce the documents that originate as hard-copy documents in any standard image format (such as single-page .tif) with either a 'load file' or other means of identifying documents breaks, at its expense."[35]   In their Reply, Plaintiffs attempt to clarify the relief they seek as to hard-copy documents, explaining as follows:

> Plaintiffs are not asking for *re*-production of the paper documents Plaintiffs have already scanned at a cost of approximately $4,000.  And Plaintiffs have never asked SWBT to produce hard-copy documents in text-searchable format. . . .  For documents originally in paper form, Plaintiffs ask that SWBT produce the scanned, bates-labeled images that SWBT already has in its possession.  Plaintiffs . . . ask that SWBT produce each document as a single document, rather than incoherently lumping multiple documents together without breaks or breaking documents into pieces.[36]

With respect to the second category, i.e., ESI, Plaintiffs move for the following relief: "Plaintiffs . . . request that all electronic documents yet to be produced by SWBT be produced in native format or in some other mutually agreed text-searchable format."[37]   Plaintiffs state that this would apply to various e-mail memoranda and attachments which Defendant's counsel have indicated are responsive to various requests for production but which Defendant has yet to produce.[38]

With respect to the third category, Plaintiffs assert that "it appears" some of the documents Defendant has already produced, such as a 900-page software manual, are actually maintained in

---

[35]Pls.' Mot. to Compel (doc. 177) at 13.

[36]Pls.' Reply (doc. 242) at 5 (italics in original).

[37]Pls.' Mot. to Compel (doc. 177) at 13.

[38]*Id*. at 13. n.5.

electronic format but were scanned by Defendant and produced as part of the August 4, 2008 production. Plaintiffs claim that because Defendant scanned the software manual and possibly other electronically stored documents, they are not electronically searchable.[39]   Plaintiffs assert that Defendant should be compelled to produce these documents again, but this time in native format or in some other mutually agreeable text-searchable format.

### 3.     Issues to be resolved

In light of the foregoing, there are three primary issues that the Court must resolve relating to the form of documents produced in response to Plaintiffs' First Request for Production:

(a)     Should Defendant be compelled to produce the documents that it maintains in hard-copy form, i.e., those that "originate as hard-copy documents," in a standard image format with either a "load file" or other means of identifying document breaks;

(b)     Should Defendant be compelled to produce any ESI that it has yet to produce in response to Plaintiff's First Request for Production in native format or some other mutually agreeable text-searchable format; and

(c)     Did Defendant scan any ESI and produce it as part of its August 4, 2008 hard-copy document production, and, if so, should Defendant be compelled to re-produce that ESI in native format or some other mutually agreeable text-searchable format.

### 4.     Issue (a):  Should Defendant be compelled to produce the documents that it maintains in hard-copy form in a standard image format with either a "load file" or other means of identifying document breaks?

Federal Rule of Civil Procedure 34 governs the inspection and production of documents and ESI, and is therefore the starting place for the Court's discussion.  Subsection (b)(1)(A) of Rule 34 requires that the request set forth, either by individual item or by category, the items or categories of to be inspected or produced, and that each item or category be described with reasonable

---

[39]*Id*. at 13 n.6.

particularity.[40]  Subsection (b)(1)(C) provides that the requests "may specify the form or forms in which electronically stored information is to be produced."[41]  Subsections (b)(2)(A) and (B) set forth the manner in which requests must be answered.  They provide that the party upon whom the request is served must serve a written response within 30 days after the service of the request and must state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to.[42]  Subsection (b)(2)(D) contains an additional requirement for responding to a request for ESI.  It provides, *inter alia*, that where the requesting party fails to specify the form of production of ESI, the responding party "must state the form or forms it intends to use."[43]

Finally, Rule 34(b)(2)(E) governs how the documents and ESI must be produced.  It states as follows:

Unless otherwise stipulated or ordered by the court . . .

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.[44]

---

[40]Fed. R. Civ. P. 34(b)(1)(A).

[41]Fed. R. Civ. P. 34(b)(1)(C).

[42]Fed. R. Civ. P. 34(b)(2)(A)-(B).

[43]Fed. R. Civ. P. 34(b)(2)(D).

[44]Fed. R. Civ. P. 34(b)(2)(E).

Under subsection (i), the responding party may choose either of the two methods for producing the documents.  It may choose to produce them as they are kept "in the usual course of business" *or* it may choose to organize and label them to correspond to the categories in each request.[45]

Plaintiffs argue that Defendant's August 4, 2008 production failed to comply with subsection (i) because the "[t]he documents were neither organized as kept in the ordinary course of business, nor organized and labeled to correspond to the requests."[46]  Plaintiffs state, however, that "in an effort to spare SWBT any unnecessary expense, Plaintiffs have not required that SWBT organize and label all documents to correspond to the categories in all requests."[47]  Thus, it appears that Plaintiffs have no quarrel with Defendant about any failure to organize or label them to correspond with the requests.  Plaintiffs further argue that the August 4, 2008 production failed to comply with subsection (i) because Defendant "did not provide Plaintiffs the original documents or even a copy of them."[48]

Based on these assertions, Plaintiffs would arguably have a basis to request that the Court compel Defendant to produce the hard-copy documents as they are kept in the usual course of business.  Plaintiffs, however, do not ask for such relief, and, in fact, they expressly state that they "are not asking for *re*-production of the paper documents."[49]  Instead, Plaintiffs ask the Court to

---

[45]*MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 WL 3010343, at *3 (D. Kan. Oct. 15, 2007).

[46]Pls.' Mot. to Compel (doc. 177) at 11.

[47]Pls.' Reply (doc. 242) at 6.

[48]Pls.' Mot. to Compel (doc. 177) at 11.

[49]Pls.' Reply at 5.

compel Defendant to produce the hard-copy documents "in any standard image format (such as single-page .tif) with either a 'load file' or other means of identifying document breaks, at its expense."[50]

Defendant asserts that its production satisfied Rule 34, noting that Plaintiffs did not specify in their First Request for Production any particular form in which Defendant was to produce its documents.  Defendant further asserts that "the paper documents produced by SWBT are obviously in 'a reasonably usable form.'"[51]  It states that Plaintiffs elected to have Defendant scan the production and burn it to a disk using its in-house capabilities, and that is exactly what Defendant did.  Thus, Defendant maintains that Plaintiffs have no basis under Rule 34 to complain about its production.  It also argues that, pursuant to Rule 34(b)(2)(E)(iii), Plaintiffs cannot compel Defendant to produce the same documents in more than one form.

Both Plaintiffs and Defendant appear to be confusing the provisions for producing hard-copy documents with those relating to ESI.  Thus, neither Plaintiffs' request that Defendant be compelled to produce the hard-copy documents in the manner specified by Plaintiffs (i.e., in a standard image format with a load file or other means of identifying document breaks) nor Defendant's position that its production was proper, is supported by Rule 34.

Pursuant to Rule 34(b)(2)(E)(i), Defendant was required to produce its hard-copy documents "as they are kept in the usual course of business"[52] As the party producing documents as kept in the

---

[50]Pls.' Mot. to Compel (doc. 177) at 13.

[51]Def.'s Resp. to Mot. to Compel (doc. 207) at 5.

[52]The parties agree that, for most purposes, they agreed Defendant did not have to organize and label the hard-copies documents to correspond to the various categories in each request.  Thus, the only method for producing the hard-copy documents, absent a stipulation or order of the Court, was for Defendant to produce them as they are kept in the usual course of business.

usual course of business, Defendant bears the burden of demonstrating that the documents it made available to Plaintiffs were in fact produced in that manner.[53]

Defendant has not met this burden. At the August 4, 2008 production, Defendant did not provide Plaintiffs with the original hard-copy documents themselves, but rather scanned the hard copies into some type of format (which Defendant has not identified) and provided Plaintiffs with printouts of the documents, with blank pages inserted to show the page breaks. Obviously these documents were not kept in the usual course of business as printouts of scanned copies. Thus, the Court finds that they were not produced as kept in the usual course of business.

At no time during the August 4, 2008 production, however, did Plaintiffs object to the method in which Defendant was producing the documents. Thus, it could be argued that Plaintiffs waived the right to complain about the manner in which Defendant produced the documents. Plaintiffs, however, contend that the parties came to an agreement that Defendant would burn a them a disk containing a "copy of the digital images [of the hard copy documents] with logical document breaks."[54] When Plaintiffs received the disk, however, they were dissatisfied because it contained thousand-page .pdf files of the scanned printouts rather than the separate text-searchable image files Plaintiffs were expecting. Plaintiffs contend that the disk is unusable because it allegedly does not contain breaks between documents and it is not text searchable, and they ask the Court to compel Defendant to provide the documents in a standard image format with either a "load file" or other means of identifying document breaks. Defendant, on the other hand, contends that their agreement was merely to scan the documents that Plaintiffs' counsel had inspected on August 4, 2008 and create

---

[53]*Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005).

[54]Pls.' Mot. to Compel (doc. 117) at 12.

.pdf files on a disk for Plaintiffs.[55]   Defendant contends that it burned such a disk for Plaintiffs and that it has lived up to its agreement.

As noted above, Rule 34(b)(2)(E) allows the parties to stipulate to any method of producing documents in lieu of following the Rule's mandate that they be produced as they are kept in the usual course of business or organized and labeled to correspond to the categories in the request.[56]   Thus, if the parties stipulated to a method for producing these documents, and Defendant did not comply with the stipulated method of production, then arguably Plaintiffs should be allowed to ask the Court to enforce the stipulation.   This is apparently what Plaintiffs are asking the Court to do.

It is unclear, however, what the parties actually stipulated to.   Based on the record before it, the Court is unable to determine whether the parties actually reached an agreement, let alone determine what the terms of that agreement were or whether Defendant's disk complied with any such agreement.[57]   Consequently, there is no "stipulation" for the Court to enforce, and the purported agreement provides no basis for the Court to compel Defendant "to produce the documents that originate as hard-copy documents in any standard image format (such as single-page .tif) with either a 'load file' or other means of identifying documents breaks,[58] as Plaintiffs request.   Thus, this request for relief must be denied.

---

[55]Def.'s Resp. to Mot. to Compel (doc. 207) at 3.

[56]Rule 34(b)(2)(E) states:   "*Unless otherwise stipulated or ordered by the court* . . . (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."   (Italics added.)

[57]The instant dispute highlights the need for parties to memorialize in writing any agreements or stipulations the parties may reach regarding discovery issues.

[58]Pls.' Mot. to Compel (doc. 177) at 13.

Plaintiffs provide the Court with no other basis for granting them the relief they seek.  Nor does the Court find that they are entitled to any other type of relief as to this issue.  Plaintiffs make it clear that they do not seek re-production of the original documents.[59]  Moreover, Plaintiffs state in their Reply that they ultimately hired a vendor "to retrieve [the] first 17,000 documents from SWBT's counsel's office and have them scanned for the *third time.*"[60]  Thus, it would appear that Plaintiffs have the documents they are entitled to and that any court-ordered relief is simply not necessary.[61]  In light of the above, the Court denies the Motion to Compel with respect to Defendant's production of hard-copy documents.

     5.     *Issue (b):  Should Defendant be compelled to produce any ESI that it has yet to produce in native format or some other mutually agreeable text-searchable format?*

Plaintiffs also seek relief with respect to ESI.  As noted above, Plaintiffs seek an order compelling "all electronic documents yet to be produced by SWBT be produced in native format or in some other mutually agreed text-searchable format."[62]  Plaintiffs explain that this would include various responsive e-mail memoranda and attachments that Defendant indicated it would produce but has yet to produce.

The starting place for the Court's discussion is, once again, Rule 34, and, more specifically, subsection (b)(1).  As set forth above, subsection (C) of Rule 34(b)(1) provides that a request for production "may specify the form or forms in which electronically stored information is to be

---

[59]Pls.' Reply (doc. 242) at 5 (italics in original).

[60]*Id*. at 4-5 (italics in original).

[61]Plaintiffs do not seek reimbursement of the $4,000 they allegedly incurred in hiring the vendor to retrieve and scan these documents.

[62]Pls.' Mot. to Compel (doc. 177) at 13.

produced."[63]  If no form is specified in the request, then Subsection (D) of Rule 34(b)(2) provides that the responding party "must state the form or forms it intends to use."[64]  Subsection (E)(ii) of Rule 34(b)(2) states that if a request does not specify the form for producing ESI, then the producing party "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."[65]

Plaintiffs' First Request for Production did not specify the form for producing ESI.  Thus, it was up to Defendant to identify in its written responses the form or forms it intended to use. Defendant did not identify the form or forms it intended to use except with respect to Request No. 2, to which Defendant responded that certain "log on and log off data from the Windows NT Security Logs for Plaintiffs" would be produced "upon agreement on the format for production."

For whatever reasons, Plaintiffs' First Request for Production did not specify the form or form in which Defendant was to produce its ESI.  Consequently, Defendant was free, and remains free, to select the form for production of its ESI, so long as it complies with subsection (E)(ii) by producing it in the form (1) in which it is ordinarily maintained, or (2) in "a reasonably usable form."[66] Plaintiffs are not allowed to come before the Court almost two months after they served their requests for production and belatedly designate a form for ESI production.  If Plaintiffs wanted Defendant to produce its ESI in native format or in text searchable format, they should have specified those formats when they served their First Request for Production.  Accordingly, the Court denies Plaintiffs'

---

[63]Fed. R. Civ. P. 34(b)(1)(C).

[64]Fed. R. Civ. P. 34(b)(2)(D).

[65]Fed. R. Civ. P. 34(b)(2)(E)(ii).

[66]*Id.*

request that Defendant be required to produce any additional ESI responsive to the First Request for Production in native format or some other mutually agreeable text-searchable form.

Notwithstanding the above, the Court recognizes that Defendant did fail to specify in its initial written responses to First Request Nos. 1 and 3-31 the form or forms of production it intended to use for producing ESI, as required by subsection (D) of Rule 34(b)(2). Thus, to the extent Defendant still owes Plaintiffs ESI responsive to any of those requests, Defendant, shall within **ten days** of the date of this Order serve a supplemental written response specifying the form(s) of production it intends to use for producing ESI responsive to those requests.[67] After Defendant has served its supplemental response, Plaintiffs may determine whether Defendant's specified form(s) complies with subsection (E)(ii). If Plaintiffs are not satisfied that the specified form(s) complies with the Rule, then at that time Plaintiffs may file an appropriate motion to compel ESI be produced in a particular form. Any ruling regarding form that the Court might enter at the present time — before Defendant has specified the form(s) in which it intends to produce any additional ESI — would be premature and, thus, an impermissible advisory opinion.

6.    *Issue (c): Did Defendant scan any ESI and produce it as part of its August 4, 2008 production, and, if so, should Defendant be compelled to produce that ESI in native format or some other mutually agreeable text searchable format?*

The final issue with respect to the form of Defendant's production relates to certain documents that Defendant produced in its August 4, 2008 production which Plaintiffs claim are normally maintained electronically rather than in hard-copy paper form. According to Plaintiffs, "it appears that some of the documents already produced (such as a 900-page software manual, and a

---

[67]The Court's ruling does not apply to First Request No. 2, as Defendant responded that the "log on and log off data from the Windows NT Security Logs" would be produced pursuant to an agreement between the parties as to its form of production.

handful of e-mail) were originally [maintained by Defendant] in electronic format," and that Defendant scanned those electronic documents along with its hard-copy documents and then provided the print-outs to Plaintiffs as part of the August 4, 2008 production.[68]  Plaintiffs contend that because these documents would have been text searchable in their original electronic form but are not now text searchable, Defendant should be compelled to produce them in native format or in some other text-searchable form.

Defendant does not directly address whether any documents  provided to Plaintiffs as part of its August 4, 2008 production, including the software manual that Plaintiffs mention, are maintained by Defendant in electronic rather than hard-copy form.  Rather, Defendant generally argues that its August 4, 2008 production complied with Rule 34, and that Rule 34 provides no authority for Plaintiffs to demand that documents be produced in a text-searchable form.

The distinction between hard-copy paper documents and electronically stored documents is crucial in applying Rule 34.  If documents are maintained electronically, then different provisions of Rule 34(b) apply.  Assuming arguendo that Defendant does in fact maintain the above-referenced software manual in electronic form, then Defendant was required, pursuant to Rule 34(b)(2)(E)(ii) to produce it in (1) a form that it is ordinarily maintained, or (2) a reasonably usable form.   Clearly, any e-mail memoranda would be maintained in electronic form, and thus Rule 34(b)(2)(E)(ii) would apply to them.

As the record now stands, it is not clear whether Defendant did in fact include any ESI in its August 4, 2008 production.  It is thus impossible for the Court to make a definitive ruling without having more information.  The Motion to Compel must therefore be denied without prejudice with respect to this issue.  The Court, however, directs Defendant to identify for Plaintiffs any documents

---

[68]Pls.' Mot. to Compel (doc. 177) at 13 n.6.

that it maintains in electronic form that it produced as part of its August 4, 2008 production. Defendant shall provide this information to Plaintiffs in writing within **ten (10) days** of the date of this Order.  If such electronically stored documents were in fact included in that production, the parties shall confer and attempt to agree as to the form in which they should be produced, keeping in mind Rule 34(b)(2)(E)(ii)'s requirement that they be produced in the same form in which they are ordinarily maintained or in a reasonably usable form.  The parties should review the Court's ruling in *White v. Graceland College Center for Professional Development & Lifelong Learning, Inc.*[69] for guidance.  If the parties are unable to reach an agreement as to the proper form of production, Plaintiffs may file a renewed motion as to this particular issue.  If the parties agree as to the form of production, Defendant shall produce the electronically stored information within **twenty (20) days** of the date of this order.

### B.    Defendant's Objections to First Request for Production Nos. 21 and 29

In addition to objecting to Defendant's form of production, Plaintiffs also ask the Court to overrule objections that Defendant made in response to First Request Nos. 21 and 29.  The Court will now address those objections.

#### 1.    First Request for Production No. 21

This request asks Defendant to produce documents to or from the Department of Labor or any "state equivalent of the federal Department of Labor" regarding Defendant's compliance with the FLSA or its compensation of telephone dedicated customer service employees.  Defendant's counsel advised the Court in his February 3, 2009 e-mail memorandum that "the parties have partially resolved" their dispute regarding No. 21.  He states that the parties have agreed to limit the request "to the call centers at issue in this case."  He further states that "the only remaining issue regarding

---

[69]586 F. Supp. 2d 1250 (D. Kan. 2008).

[First Request No. 21] is whether the defendant is required to produce documents regarding investigations performed by state agencies."[70]  With this partial resolution in mind, the Court restates the request as  follows:

> Produce all documents to or from any state agency that is the "state equivalent" of the federal Department of Labor in the last five years regarding investigations performed regarding compliance with any state wage and hour laws or the compensation of telephone dedicated customer service employees working at the call centers at issue in this case, for all time worked.

The Court will now examine the validity of Defendant's objections in light of this restated request.

Defendant objected to the request on the basis that "it is not limited in scope to the claims at issue in this lawsuit and is, therefore, overly broad."  Defendant also objected that the request is vague and ambiguous "regarding the term 'telephone dedicated customer service employee.'"  In addition, Defendant objected that the request is overly broad, seeks information that is not relevant to Plaintiffs' claims, and is not reasonably calculated to lead to the discovery of admissible evidence because (1) "plaintiffs in this case are not identified by SWBT as 'telephone dedicated customer service employees'"; and (2) this case has not been conditionally certified as a collective action and, as a result, the request seeks information unrelated to Plaintiffs.  Subject to these objections, Defendant agreed to make available to Plaintiffs a copy of a letter from the U. S. Department of Labor dated April 16, 2007.  That letter informs Defendant that the Department of Labor will be conducting an examination at a SWBT location in Wichita, Kansas to determine Defendant's compliance with the FLSA.

In its opposition to the Motion to Compel, Defendant argues that the request is overly broad and seeks irrelevant documents because it does not focus "on the types of issues raised by Plaintiffs'

---

[70]*See* 2/3/2009 E-mail Mem. from Patrick Hulla (Def.'s counsel) to the Court.

claims in this litigation" or "on information related to the Plaintiffs."[71]  It contends that the vast

majority of any responsive documents would be completely irrelevant, as Defendant has employees

"in a multitude of different positions subject to a variety of different requirements under the FLSA

and related laws."[72]  In response to Plaintiffs' argument that these documents would be relevant to

show Defendant's knowledge of FLSA requirements, Defendant states that the April 16, 2007 letter

from the Department of Labor "sufficiently establishes Defendant's knowledge of the Department

of Labor's investigation."[73]

     In its response to the Motion to Compel, Defendant does not reassert its vague and ambiguous

objections to this request.  The Court therefore deems those objections abandoned.[74]  Defendant also

fails to reassert its overbreadth and relevance objections based on its assertion that Plaintiffs are not

identified by Defendant as "telephone dedicated customer service employees."  Those objection, too,

are therefore deemed abandoned.  Even if Defendant did not intend to abandon these objections, the

Court would nonetheless be required to overrule them as unsupported.

     Defendant's remaining objections are that the request is overly broad and seeks irrelevant

information.  Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense — including the

existence . . . of any documents . . . .  Relevant information need not be admissible at the trial if the

---

[71]Def.'s Resp. to Pls.' Mot. to Compel (doc. 207) at 10.

[72]*Id.*

[73]*Id.* at 11.

[74]When ruling on a motion to compel, this Court will consider only those objections that have been (1) timely asserted, and (2) relied upon in response to the motion to compel. *See Moses v. Halstead,* 236 F.R.D. 667, 672 n. 8 (D. Kan. 2006); *Cardenas v. Dorel Juvenile Group*, 232 F.R.D. 377, 380 n. 15 (D. Kan. 2005).  It is well settled that "[o]bjections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."  *Moses,* 236 F.R.D. at 672, n.8.

discovery appears reasonably calculated to lead to the discovery of admissible evidence."[75] Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[76]  Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[77]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[78]  Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[79]

The Court finds that this request does not appear relevant, on its face, to any of Plaintiffs' claims or Defendant's defenses.  Plaintiffs therefore have the burden to demonstrate its relevance. Plaintiffs basically argue that the requested documents are relevant to show Defendant's knowledge of the FLSA'S requirements, which, in turn, is relevant to show whether Defendant acted willfully in violation of the FLSA.  Plaintiffs claim in their Amended Complaint that Defendant acted willfully in failing to pay Plaintiffs overtime and willfully failed to keep accurate records of all hours worked

---

[75]Fed. R. Civ. P. 26(b)(1).

[76]*Jones v. Wet Seal Retail, Inc.,* 245 F.R.D. 724, 725 (D. Kan. 2007); *Cardenas,* 232 F.R.D. at 382; *Owens v. Sprint/United Mgmt. Co,* 221 F.R.D. 649, 652 (D. Kan. 2004).

[77]*Jones,* 245 F.R.D. at 725; *Cardenas,* 232 F.R.D. at 382; *Owens,* 221 F.R.D. at 652.

[78]*Johnson v. Kraft Foods N. Am., Inc.,* 238 F.R.D. 648, 653 (D. Kan. 2006); *Cardenas,* 232 F.R.D. at 382; *Owens,* 221 F.R.D. at 652.

[79]*Johnson,* 238 F.R.D. at 653; *Cardenas,* 232 F.R.D. at 382; *Owens,* 221 F.R.D. at 652.

by its employees.[80]  Plaintiffs assert that Defendant's alleged willfulness means that a three-year statute of limitations applies to their FLSA claim.[81]  They also assert that Defendant's alleged willfulness entitles them to recover liquidated damages under the FLSA.[82]

It is well settled that a standard of willfulness applies to both liquidated damages and the statute of limitations under the FLSA.[83]  It follows, then, that documents relating to a prior Department of Labor investigation could be relevant to show, or lead to the discovery of admissible evidence, regarding whether the employer was aware of its obligation to pay overtime in compliance with the FLSA and whether the employer acted willfully in violating that obligation.[84]  The Court thus agrees with Plaintiffs that the requested documents to and from the *Department of Labor*, which is the federal agency that investigates claimed FLSA violations, are, generally speaking, relevant to their willfulness claims and therefore discoverable.  The parties, however, have apparently resolved the dispute as to documents to and from the *Department of Labor*.  The only remaining dispute as to this request relates to documents to and from any state agency that is a "state equivalent" of the Department of Labor.

---

[80]Pls.' Am. Compl. ¶¶ 34, 37-38.

[81]*Id.* ¶ 36.

[82]*Id.* ¶ 38.

[83]*See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1278 (10th Cir. 2006) (citing 29 U.S.C. § 255(a)) (applying three-year statute of limitations to willful violations of the FLSA); *see also* 29 U.S.C. § 260 (to avoid liquidated damages, the employer must show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].").

[84]*See, e.g., Chao v. A-One Med. Servs., Inc*., 346 F.3d 908, 919 (9th Cir. 2003) (employers who have "previously had run-ins with the Labor Department" are deemed to be on notice of potential FLSA requirements); *Hodgson v. Catcus Craft of Ariz.*, 481 F.2d 464, 467 (9th Cir. 1973) (upholding district court's finding that employer's FLSA violations were willful in view of two previous Department of Labor investigations of the employer's labor practices).

Plaintiffs fail to explain how documents relating to any state agency investigations of state law wage and hour claims are relevant to show Defendant's knowledge of the FLSA (a federal law) and its requirements, or relevant to show that Defendant acted willfully in violation of the FLSA. Furthermore, the Court notes that Plaintiffs have dropped their state law wage and hour claims.[85] The Court therefore sustains Defendant's relevance objection, and the Motion to Compel is denied with respect to First Request No. 21 (as revised by the parties' agreement).

### 2.    *First Request for Production No. 29*

This request seeks all records identified, relied on, or referenced by Defendant in answering Plaintiffs' First Set of Interrogatories.   Defendant's counsel informed the Court in his February 3, 2009 e-mail memorandum that the parties have resolved their dispute regarding this request.  The Court therefore finds the Motion to Compel to be moot with respect to First Request No. 29.

### C.    Defendant's Objection to First Interrogatory No. 7

Plaintiffs also served a First Set of Interrogatories on Defendant.  The only interrogatory at issue in the Motion to Compel is First Interrogatory No. 7, which asks Defendant to "[i]dentify every SWB facility that has employed telephone dedicated customer service employees during the class period."  Defendant objected as follows:

> SWBT objects to this interrogatory because the plaintiffs' claims have not been provisionally certified as a collective action, and, therefore, this interrogatory is (i) overly broad, (ii) seeks information that is not relevant to the plaintiffs' present claims, and (iii) is not reasonably calculated to lead to the discovery of admissible evidence. SWBT also objects to this interrogatory because it is vague and ambiguous regarding the term "telephone dedicated customer service employee." SWBT further objects to this interrogatory because the plaintiffs in this case are not identified by SWBT as "telephone dedicated customer service employees," and therefore, the interrogatory (1) is overly broad, (ii) seeks information that is not relevant to the plaintiffs' present claims, and (iii) is not reasonably calculated to lead to the discovery

---

[85]When Plaintiffs filed their Amended Complaint (doc. 214), they deleted the Kansas Wage Payment Act claim that was in their original Complaint (doc. 1).

of admissible evidence. Answering in part, over objections, but specifically reserving all of its objections, SWBT states that plaintiffs are/were employed at one of the following call centers: Wichita Large Team Call Center . . . [and] El Paso Large Team Call Centers . . . . SWBT will periodically supplements its answer . . . to provide similar information for additional plaintiffs who joined this action after July 15, 2008.

Defendant states in its response to the Motion to Compel that it has agreed to provide the requested information with respect to facilities that have employed Plaintiffs and any Opt-In Plaintiffs, but not as to any other facilities. With respect to the other facilities, Defendant's sole argument in response to the Motion to Compel is that "Plaintiffs have provided no persuasive explanation of how such information is relevant to their claims or reasonably calculated to lead to the discovery of admissible evidence" prior to the case being provisionally certified as a collective action.[86] Defendant contends that the identification of other employees may "potentially become relevant for notice purposes" if and when a collective action is certified, but until that happens, it believes there is no basis for Plaintiff to seek this information.[87]

The Court disagrees and overrules Defendant's objections that the requested information is not relevant or reasonably calculated to lead to the discovery of admissible evidence. The Court finds that the information sought by Plaintiffs is directly relevant to defining the proposed class of plaintiffs. It is well established that, prior to collective action certification, plaintiffs are entitled to conduct discovery to enable it to define the proposed class. This Court in *Hammond v. Lowe's Home Centers, Inc.*[88] expressly held that "provisional certification is not . . . a prerequisite for conducting

---

[86]Def.'s Resp. to Pls.' Mot. to Compel (doc. 207) at 13.

[87]*Id.* at 13-14.

[88]216 F.R.D. 666 (D. Kan. 2003).

limited discovery necessary for defining the proposed class."[89]   The Court observed that "the first step" in the collective action discovery process "is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action."[90]   The instant interrogatory merely asks Defendant to identify the facilities that employed individuals in the same job category as Plaintiff.  Thus, the interrogatory appears likely to lead to the discovery of information concerning employees who would be similarly situated to Plaintiff and will therefore assist Plaintiffs in defining the proposed class.  Accordingly, the Court finds the interrogatory to be relevant on its face.

Because the interrogatory is facially relevant, Defendant has the burden to establish its lack of relevance.  Defendant fails to do so.  The Court therefore overrules Defendant's objections that Interrogatory No. 7 seeks information that is irrelevant and that it is not calculated to lead to the discovery of admissible evidence.

The Court also overrules Defendant's overbreadth objection.  Defendant provides no support for its overly broad objection, other than the case has yet to be provisionally certified as a collective action.   For the reasons set forth above, this objection is also overruled.

The Court also overrules Defendant's overbreadth and relevance objections on its asserted grounds that "plaintiffs in this case are not identified by SWBT as 'telephone dedicated customer service employees.'"   Defendant failed to reassert or address these objections in its response to the Motion to Compel, and, thus, the Court deems them abandoned.[91]

---

[89]*Id*. at 671.

[90]*Id.* at 673.

[91]*See* note 74, *supra.*

Having overruled Defendants' objections, the Court grants the Motion to Compel with respect to Interrogatory No. 7. Defendant shall serve an amended response to Interrogatory No. 7 within **ten (10) days** of the date of this Order.

## IV.    Attorney's Fees and Expenses

Plaintiffs make no request to recover the fees or expenses they have incurred in connection with their Motion to Compel. The Court must nevertheless consider whether to make such an award.

Federal Rule of Civil Procedure 37(a)(5) governs the award of fees and expenses in connection with motions to compel. Subsection (C) of Rule 37(a)(5) allows a court to award a moving party fees and expenses where, as here, a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses for the motion."[92]

Under the circumstances of this case, the Court does not find an award of fees and expenses to be warranted. Accordingly, the parties shall bear their own fees and expenses incurred in connection with the Motion to Compel.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel is denied in part and granted in part, as set forth herein.

**IT IS FURTHER ORDERED** that, to the extent Defendant still owes Plaintiffs electronically stored information responsive to First Request Nos. 1 and 3-31, Defendant, shall, within **ten (10) days** of the date of this Order serve a supplemental written response specifying the form(s) of production it intends to use for producing the electronically stored information.

**IT IS FURTHER ORDERED** that Defendant shall, within **ten (10) days** of the date of this Order, identify for Plaintiffs any documents that it maintains in an electronic form which Defendant produced as part of its August 4, 2008 production, and the parties shall confer and attempt to agree

---

[92]Fed. R. Civ. P. 37(a)(5)(C).

as to the form in which that electronically stored information should be produced.  If the parties agree as to the form of production, Defendant shall produce the electronically stored information within **twenty (20) days** of the date of this order.

**IT IS FURTHER ORDERED** that Defendant shall serve an amended response to Interrogatory No. 7 within **ten (10) days** of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own expenses incurred in connection with the Motion to Compel.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 27th day of February 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties