DJW/1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**WILLIAM GIPSON,**
**individually and on behalf of a class**
**of others similarly situated, et al.,**

|                    |                    |
|--------------------|--------------------|
| **Plaintiffs,**    | **Civil Action**   |
| **v.**             | **No. 08-2017-EFM-DJW** |

**SOUTHWESTERN BELL TELEPHONE**
**COMPANY, f/k/a/ SWBT, Inc., f/k/a**
**Southwestern Bell Telephone, L.P.,**

**Defendant.**

## MEMORANDUM AND ORDER

William Gipson brings suit against Southwestern Bell Telephone Company ("SWBT" or "Defendant") on behalf of himself and others similarly situated, seeking recovery of unpaid wages and overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Pending before the Court is Defendant's Motion to Compel (doc. 184). Defendant seeks an order requiring Plaintiffs to amend their allegedly confusing discovery responses and disclosures to clarify if they have discoverable documents and, if so, to produce those documents. Defendant also seeks an order overruling Plaintiffs' various objections and assertions of privilege to certain interrogatories and requests for production and compelling Plaintiffs to respond fully to those discovery requests. For the reasons set forth below, the Motion is denied in part and granted in part.

## I.   Nature of the Matter Before the Court and Background Information

This is a putative collective action brought under the FLSA. Plaintiff William Gipson alleges that he previously worked at Defendant's call center facility in Wichita, Kansas, and that "Defendant's practice and policy is to deny wages and overtime pay to its hourly paid, telephone

dedicated service employees at its call center facilities."[1]  The Amended  Complaint states that the

action "is brought as a collective action under the FLSA to recover unpaid wages owed to Plaintiff

and all other similarly situated employees employed in Defendant's call centers."[2]  The Amended

Complaint alleges that Defendant operates call centers in a region known as "MOKAT," which

includes Missouri, Oklahoma, Kansas, Arkansas and Texas.[3]

William Gipson is the named Plaintiff in the action.  Beginning April 4, 2008, numerous

individuals have filed consents to join into the action ("Opt-In Plaintiffs").[4]  As of the date of this

Order there are 159 Opt-In Plaintiffs.

## II.   Plaintiffs' Disclosures and Responses to Defendant's Discovery Requests

Defendant asserts that Plaintiffs have provided confusing and inconsistent Rule 26(a)(1)

document disclosures and answers to Defendant's First Request for Production, making it impossible

for Defendant to tell whether all responsive documents have been produced.  Defendant also

contends that Plaintiffs have failed to comply with Rule 34 by jointly, rather than individually,

responding to Defendant's First Request for Production.  Defendant contends that the joint responses

make it impossible to determine which particular Plaintiff is responding to each request and to

determine which particular Plaintiff has or had the requested documents in his/her possession,

custody, or control.  Finally, Defendant complains that Plaintiffs' individual written responses to

---

[1]Am. Compl. (doc. 214) ¶ 1.

[2]*Id.* ¶ 2.

[3]*Id.* ¶ 14.

[4]Mr. Gipson and the Opt-In Plaintiffs will be referred to collectively as "Plaintiffs."

2

Interrogatory No. 1's request that they identify certain documents is confusing and does not comply with Rule 33.

### A.      Background Facts

The parties agreed in their Rule 26(f) Planning Conference that they would exchange or make available for inspection the documents listed in their Rule 26(a)(1) disclosures without the need for formal requests for production.  That agreement was memorialized in the Court's May 19, 2008 Scheduling Order as follows:  "[T]he parties have agreed that, without any need for formal requests for production, copies of the various documents described in the parties' respective Rule 26(a)(1) disclosures shall be exchanged or made available for inspection and copying."[5]

Plaintiff Gipson, along with the first Opt-In Plaintiff, Donna Plummer, served Rule 26(a)(1) disclosures on May 16, 2008.[6]  They provided the following information with respect to documents:

Description of Relevant Documents

1.      Payroll records
2.      Job-related materials received from Southwestern Bell[7]

Plaintiffs served First Supplemental Rule 26 Disclosures on June 25, 2008[8] and Second Supplemental Rule 26 Disclosures on August 14, 2008.[9]  The document disclosures contained therein were identical to the document disclosures contained in the initial Disclosures Mr. Gipson and Ms. Plummer served on May 16, 2008.

---

[5]Scheduling Order (doc 31) ¶ 2.a.

[6]*See* Plf. Gipson and Plummer's Rule 26(a)(1) Disclosures (doc. 30).

[7]*Id*. at 5.

[8]*See* doc. 48.

[9]*See* doc. 166.

Defendant contends that Plaintiffs have not produced any "job-related materials received from Southwestern Bell" despite the fact that their Rule 26(a)(1) disclosures indicated they had such documents in their possession and despite the fact that the parties had expressly agreed to exchange or make them available.

On May 23, 2008, Defendant began serving identical sets of interrogatories on each Plaintiff and continued to do so as individuals filed their consents to join in.  First Interrogatory No. 1 asked each Plaintiff to "[i]dentify all persons you believe have knowledge, information or documents that [sic] regarding this Action and *describe the . . . documents you believe such persons have.*"[10] Plaintiffs began serving their responses as early as July 21, 2008. Each Plaintiff responded individually and stated, *inter alia*:  "I am producing any requested documents in my possession, and I therefore refer to those documents in response to the interrogatory's request to describe them."[11]

Beginning May 23, 2008, Defendant also began serving identical, individual sets of requests for production on Plaintiffs and has continued to do so as individuals have filed their consents to join in the lawsuit. While some Plaintiffs have served individual responses, many have served joint responses.

### B.      The Parties' Arguments

Defendant has a number of complaints regarding Plaintiffs' discovery responses.  First, it contends that Plaintiffs' joint responses to the First Request for Production are confusing because they do not identify which particular Plaintiffs or Plaintiffs out of the group of responding Plaintiffs has the documents in his/her custody, control, or possession.  Defendant also contends that the

---

[10]First Interrog. No. 1, Ex. C. attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185) (emphasis in original).

[11]*Id.*

responses are confusing because not only are the responses internally inconsistent, they are inconsistent with Plaintiffs' Rule 26(a)(1) document disclosures and Plaintiffs' responses to First Interrogatory No. 1.

As an example, Defendant points to the joint response of Plaintiffs Gipson, Morales, Esparza and Stoddard to the First Request for Production.   Their joint response contains an introduction, which states:   "Plaintiff is producing documents as ordinarily maintained in the respondent's possession.  Plaintiff Williams [sic] Gipson's documents are bates stamped PLTF 000001-000086. Plaintiffs Barbara Morales, Margarita Esparza, and Tina Stoddard have no responsive documents in their possession, custody or control."[12]   Then in response to First Request Nos. 1-15 and 20, Plaintiffs Gipson, Morales, Esparza, and Stoddard jointly respond that "[a]ny responsive documents will be produced."[13]  In response to First Request Nos. 16-17 and 21-22, said Plaintiffs jointly respond that documents will be produced subject to the stated objections.[14]

The joint responses of Plaintiffs Plummer, Ramirez, Bueno, Betancourt and Cisneros are similar.  The introductory portion of the joint response states:  "Plaintiff is producing documents as ordinarily maintained in the respondent's possession.  Plaintiff Donna Plummer's documents are bates stamped PLTF 0000087-000089.  Plaintiffs Ramirez, Bueno, Betancourt, and Cisneros have located no non-privileged, responsive documents in their possession, custody, or control."[15]  Then

---

[12]Plf. Gipson, Morales, Esparza and Stoddard's (Joint) Answers to First Req. for Produc. of Docs., Ex. D to Def.'s Mem. in Support of Mot. to Compel (doc.  185).

[13]*Id.*, Answers to First Req. Nos. 1-15 & 20.

[14]*See id.*, Answers to First Req. Nos. 16-17 & 21-22.

[15]*See* Plf. Plummer, Ramirez, Bueno, Betancourt, and Cisneros' (Joint) Answers to First Req. for Produc. of Docs., Ex. E to doc. 185.

in response to First Request Nos. 1-15, said Plaintiffs state that "[a]ny responsive documents will be produced."[16]   In response to First Request Nos. 16-17 and 21-22, they jointly respond that documents will be produced subject to the stated objections.[17]

Defendant contends that these responses to the First Request for Production are not only internally inconsistent, but inconsistent with Plaintiffs' Rule 26(a)(1) disclosures in which Plaintiffs indicate they possess "job-related materials received from Southwestern Bell."  Defendant states that to date,  Plaintiffs have not produced or made available for inspection any such "job-related materials."  Defendant also contends that these responses to the First Request are inconsistent with Plaintiffs' individual answers to Interrogatory No. 1, which, as noted above, state:  "I am producing any requested documents in my possession . . . ."  Defendant argues that Plaintiffs' *joint* responses to the First Request for Production, which were served *individually* on each Plaintiff, are improper under Federal Rule of Civil Procedure 34.

Finally, Defendant argues that each Plaintiff's individual response to Interrogatory No.1, which asks Plaintiffs to describe certain documents, adds to the confusion.  Rather than describing the documents or referring Defendant to particular documents, each Plaintiff merely states:  "I am producing any requested documents in my possession, and I therefore refer to those documents in response to the interrogatory's request to describe them."[18] Defendant argues that this response does not comply with Federal Rule of Civil Procedure 33(d).

---

[16]*Id.*, Answers to First Req. Nos. 1- 15 & 20.

[17]*Id.*, Answers to First Req. Nos. 16-17 & 21-22.

[18]First Interrog. No. 1, Ex. C. attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

With respect to the relief requested, Defendant asks the Court in its opening brief to order Plaintiffs "to amend their discovery responses and disclosures to (i) clarify, once and for all, if they have discoverable documents, and (ii) if so, [order that] the documents . . . be produced."[19]  In addition, Defendant asks the Court to require "Plaintiffs to separately respond to SWBT's document requests."[20]  In its Reply, Defendant expands the relief it requests, and asks the Court to compel "each of the Plaintiffs to supplement their current discovery responses by (i) clarifying if they have requested documents, (ii) certifying their efforts to find responsive documents, and (iii) adequately describing the outcome of their searches."[21]

Plaintiffs argue that Defendant's characterization of their responses is inaccurate and that Defendant has sufficient information to determine which Plaintiffs have produced which documents. They assert that "unless new documents are located in the future, the Plaintiffs whose responses are at issue have completed their production."[22]  They also state that "for Plaintiffs whose responses to document requests have been served, all documents have already been produced."[23]  Moreover, they represent that all of the documents they have produced were Bates Stamped with the producing Plaintiff's surname next to the Bates Stamp number.[24]  Plaintiffs maintain that Defendant therefore knows, or should know, which documents have been produced by which Plaintiff.  Plaintiffs argue that as long as they have sufficiently identified and labeled the documents produced with the

---

[19]Def.'s Mem. in Support of Mot. to Compel (doc. 185) at 7.

[20]*Id.*

[21]Def.'s Reply (doc. 248) at 2.

[22]Pls.' Resp. to Mot. to Compel (doc. 226) at 3.

[23]*Id.*

[24]*Id.*

producing party's surname, they have complied with Rule 34, and nothing in Rule 34 prohibited them from serving *joint* written responses.

Plaintiffs defend their practice of responding to discovery requests by stating that "all responsive documents will be produced" even though the responding Plaintiff has no responsive documents in his/her possession, custody, or control.  Plaintiffs explain:

> [E]xperience has proven that the response "all responsive documents will be produced" is a better response than stating that the party has no responsive documents because documents may be located after the response is made that are responsive and they can be produced without an amendment of a prior answer.  The response conveys the necessary information — if a responsive documents exists, it will be produced.[25]

In addition, Plaintiffs assert that Defendant is incorrect in stating that Plaintiffs have failed to produce the SWBT "job-related documents" listed in Plaintiff's Rule 26(a)(1) Disclosures. Plaintiffs explain that Opt-In Plaintiffs Jennifer Pritchard and Linda Hall each produced "job-related documents received from SWBT" on August 12 and 13, 2008, respectively,[26] and Defendant received those documents prior to filing its Motion to Compel.

Finally, Plaintiffs maintain that their individual responses to First Interrogatory No. 1 do not violate Rule 33(d).  Plaintiffs argue that their responses "do[] not invoke Rule 33(d); rather, Plaintiffs' response is a categorical response to an absurd request to 'describe' every document in

---

[25]*Id.*

[26]Ms. Pritchard's documents were stamped "Pritchard 000121-375," and Ms. Hall's documents were stamped "Hall 000376-1285."

this case."[27]  They maintain they "reasonably" responded to this "absurd" interrogatory by stating they will produce the documents they have.[28]

### C.    Discussion

#### 1.    Plaintiffs' Responses to the First Request for Production of Documents

The Court understands Defendant's frustration in deciphering Plaintiffs' ambiguous written responses to its First Request for Production.  However, Plaintiffs have clarified in their response to the Motion to Compel that (1) all of the Plaintiffs who have served written responses to the First Request have produced all documents they have, and (2) all documents produced have been labeled with the producing Plaintiff's surname and numbered with a Bates Stamp.  In light of this information, Defendant should be able to determine which Plaintiffs have produced documents and which particular Plaintiff has produced which particular set of documents.[29]  The Court therefore finds no basis to order the Plaintiffs who have already served written responses and/or produced documents to amend their answers to the First Request.

Moreover, the Court finds no basis, at this time, to direct Plaintiffs to produce any additional documents.  Plaintiffs indicate in their response that two of the Opt-In Plaintiffs have produced "job-related documents received from SWBT," and, thus, the Court finds Plaintiffs have satisfied their duty to produce the "job-related" documents they identified in their Rule 26(a)(1) Disclosures.

---

[27]*Id.* at 4.

[28]*Id.*

[29]It is not clear whether Plaintiffs have complied with Rule 34(B)(2)(E)(i) by organizing or labeling their documents to correspond to the individual requests.   Defendant, however, does not complain that Plaintiffs' production is lacking in this respect, and, thus, the Court need not address this issue.

Finally, the Court finds no basis to require Plaintiffs to "certify their efforts to find responsive documents" as Defendant requests.

In short, the Court declines to order any of the particular relief sought by Defendant in its Motion to Compel relating to Plaintiffs' production of documents in connection with their Rule 26(a)(1) Disclosures or their responses to the First Request for Production.[30]  To avoid any further confusion, however, the Court makes the following rulings with respect to any request for production that Defendant serves on an individual Plaintiff to which a response is served **after the date of this Order.**  First, the responding Plaintiff shall serve an *individual* response.  Second, the responding Plaintiff shall respond based on the information known at the time of the response.  If a responding Plaintiff has no responsive documents within his/her possession, custody, or control at the time he/she serves the written response to a particular request, Plaintiff shall so indicate that fact in his/her written response.  In the event the responding Plaintiff later discovers or acquires any responsive documents, he/she shall serve a supplemental response and produce the newly discovered/acquired document.[31]

### 2. *Plaintiffs' Responses to First Interrogatory No. 1*

As noted above, Defendant also asks that each Plaintiff be required to serve an amended response to that portion of First Interrogatory No. 1 which asks Plaintiffs to describe certain documents. First Interrogatory No. 1 asks each Plaintiff to "[i]dentify all persons you believe have knowledge,  information or documents that [sic] regarding this Action and describe the knowledge,

---

[30]The parties should note, however, that the Court makes specific rulings as to certain objections to the First Request for Production below in Part III.

[31]Fed. R. Civ. P. 26(e)(1) requires a party to supplement discovery responses if it learns the response is somehow incomplete or incorrect, unless the additional or corrective information has already "been made known to the other parties during the discovery process or in writing."

information or documents you believe such persons have."[32]  Each Plaintiff individually responded by stating, *inter alia*:  "I am producing any requested documents in my possession, and I therefore refer to those documents in response to the interrogatory's request to describe them."[33]

The Court holds that this response does not comply with Rule 33.   Under Rule 33(b)(3), a party responding to an interrogatory must, to the extent the interrogatory is not objected to, answer each interrogatory "fully in writing under oath."[34] As a general rule, a responding party may not answer an interrogatory by simply referring the requesting party to other documents.[35]  An answering party may, however, produce its business records in accordance with Rule 33 in lieu of providing a written response, but only if it makes an "affirmative election" to do so.[36]  It may also "refer to specific documents that are attached to its answer to the interrogatories."[37]  If a party affirmatively elects to produce its business records, it is required to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as

---

[32]First Interrog. No. 1, attached as Ex. C to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

[33]*Id.*  Plaintiffs also referred Defendant to documents that Plaintiffs presume Defendant has in its possession.  That portion of Plaintiffs' response is not addressed by Defendant in its opening brief, and thus, the Court finds that portion of the response is not at issue, despite the fact that Plaintiffs address it in their response and Defendant addresses it in its Reply.

[34]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL-DJW, 2008 WL 2222022, at *6 (D. Kan. May 28, 2008) (citing Fed. R. Civ. P. 33(b)).

[35]*Id.* (citing *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680 (D. Kan. 2004 ; *Zapata v. IBP*, *Inc.*, No. 93-2366-EEO, 1997 WL 50474 (D. Kan. Feb. 4, 1997)); *see also Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 625953, at *6 (D. Kan. Oct. 5, 1995) ("Under the guise of Fed. R. Civ. P. 33(d) [a party] may not simply refer generically to past or future production of documents.").

[36]*U.S. Fire Ins.,* 2008 WL 2222022, at *6

[37]*Id.* (quoting *Zapata,* 1997 WL 50474, at *1); *accord* DIRECTV, 224 F.R.D. at 680.

11

readily as the responding party."[38]  Furthermore, the party may rely on its business records only "if the burden of driving or ascertaining the answer will be substantially the same for either party."[39]

In this case, Plaintiffs made no specific, affirmative election under Rule 33(d) to produce business records.[40]  Nor did Plaintiffs attach documents to their interrogatory answers.  Instead, Plaintiffs merely referred Defendant to an unspecified group of documents that he/she was producing.  This was clearly insufficient to meet Plaintiffs' duty under Rule 33.[41]

The Court notes that Plaintiffs characterize Defendant's interrogatory as an "absurd request to describe all documents."[42]  Plaintiffs may have had a valid basis to object to the interrogatory; however, they failed to object and chose instead to respond to it.  This Court has, on numerous occasions held that any objections not asserted in a party's initial response to a discovery request are waived and cannot be raised for the first time in opposition to a motion to compel.[43]  Consequently, any objections Plaintiffs may have had to First Interrogatory No. 1 were waived when

---

[38]Fed. R. Civ. P. 33(d)(1).

[39]Fed. R. Civ. P. 33(d).

[40]It is questionable whether Plaintiffs could even make such an election, since Plaintiffs are individuals who would not possess "business" records within the meaning of Rule 33(d).  The Rule is construed narrowly to apply only to answers that can be derived from the answering party's own "business records."  *Wagner v. Fishing Co. of Alaska, Inc*., No. C06-1634RSL, 2008 WL 2813333, at *1 (W.D. Wash. July 18, 2008) (citations omitted).  If the answering party is not engaged in a business, it would appear unlikely that it would have "business records."

[41]*See Pulsecard, Inc. v. Discover Card Serv., Inc*., 168 F.R.D. 295, 305 (D. Kan. 1996) ("Under the guise of Fed.R.Civ.P. 33(d) defendants may not simply refer generically to past or future production of documents.").

[42]Pl.'s Resp. to Mot. to Compel (doc. 226), p.4.

[43]*See, e.g., Cardenas v. Dorel Juvenile Group, Inc*., 230 F.R.D. 611, 621 (D. Kan. 2005); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 657 (D. Kan. 2004).

they responded to it.  The Court will therefore grant the Motion to Compel as to this portion of First Interrogatory No. 1.  Within **thirty (30) days** of the date of this Order, Plaintiffs shall serve amended responses to that portion of First Interrogatory No. 1 which asks them to describe documents.

## III.   Plaintiffs' Objections to Specific Requests for Production and Interrogatories

Defendant asks the Court to overrule Plaintiffs' objections, including any attorney-client privilege and work product objections, to various First Interrogatories and First Requests for Production.  Each of the discovery requests at issue, and Plaintiffs' responses and objections thereto are discussed in detail below.

### A.    First Request No. 16

This request seeks "[a]ll written or tape recorded statements of any current or former SWBT officer, director, agent, representative, or employee."[44]  In their responses, Plaintiffs state as follows:

> Objection.  The request fails to describe with reasonable particularity any item or category of items to be inspected, as required by Rule 34(b)(1)(A).  The request is overbroad because it contains no limitation as to time or subject matter, and purports to request documents regardless of their bearing in any way on any issue in this litigation.  Subject to these objections, Plaintiff will produce any written or tape recorded statements of any current of former SWBT officer, director, agent, representative, or employee *concerning the issues in this lawsuit*.[45]

Defendant states in its opening brief that it agrees to Plaintiffs' limiting language, i.e., it agrees to limit this request to statements "concerning the issues in this lawsuit."[46]  Furthermore,

---

[44]First Req. No. 16, Ex. D & E. attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

[45]*Id.* (emphasis added).

[46]Defendant states:  "Since the Plaintiffs have ostensibly agreed to produce responsive things regarding the 'issues in this lawsuit,' SWBT does not challenge these objections."  Def.'s Mem. in Support of Mot. to Compel (doc. 185) at 13 n.11.

Defendant states that it "does not challenge" Plaintiffs' objections,[47] but merely asks that Plaintiffs produce the statements they indicated they would produce. In the event Plaintiffs have no statements responsive to this request, Defendant requests that the Court order Plaintiffs to serve amended answers in which they affirmatively state that they do not have any such statements.

In their response to the Motion to Compel, Plaintiffs fail to acknowledge that Defendant has agreed to limit this request to statements "concerning the issues in this lawsuit," and they ignore the fact that Defendant is no longer challenging Plaintiffs' objections. Plaintiffs argue the merits of their objections and assert that Defendant is not entitled "to documents with no bearing on any issue in this suit."[48]  In its reply, Defendant responds to Plaintiffs' arguments and attempts to show why its request is neither overbroad nor irrelevant. It argues that Plaintiffs should not be allowed to arbitrarily decide to produce "only the documents *they* believe involve 'issues in this lawsuit.'"[49] Like Plaintiffs, Defendant also appears to have forgotten that it stated in its opening brief that it is not challenging Plaintiffs' objections and that it only wants Plaintiffs to produce statements "concerning the issues in this lawsuit," or to state that they have no such statements.

As Defendant clearly stated in its opening brief that it was not challenging Plaintiffs' objections to this request, the Court need not address those objections. The only outstanding issue with respect to this request is whether Plaintiffs have produced all of the requested statements "concerning the issues in this lawsuit." Plaintiffs do not expressly state whether all such statements have been produced. They do, however, make several general representations that all responsive

---

[47]*Id.*

[48]Pls.' Resp. to Mot. to Compel (doc. 226) at 14.

[49]Def.s' Reply (doc. 248) at 17.

documents have been produced.  They state in their general discussion of the requests for production that "for Plaintiffs whose responses to document requests have been served, all documents have already been produced."[50]  They also state that "unless new documents are located in the future, the Plaintiffs whose responses are at issue have completed their production."[51]   In light of these statements, the Court finds no basis to compel Plaintiffs to produce any statements or to serve amended answers in which they affirmatively state that they do not have any such statements.   The Motion to Compel is therefore denied as to First Request No. 16.

**B.**      **First Requests No. 17 and 22**

First Request No. 17 seeks "[a]ll correspondence and communications between you and any current or former SWBT officer, director, agent representative, or employee."[52] Plaintiffs responded as follows:

> Objection.  The request fails to describe with reasonable particularity any item or category of items to be inspected, as required by Rule 34(b)(1)(A).  The request is overbroad because it contains no limitation as to time or subject matter, and purports to request documents regardless of their bearing in any way on any issue in this litigation.  Subject to these objections, Plaintiff will produce any correspondence and communications between Plaintiff and any current or former SWBT officer, director, agent, representative, or employee *concerning the issues in this lawsuit*.[53]

---

[50]Pls.' Resp. to Mot. to Compel (doc. 226) at 3.

[51]*Id.*

[52]First Req. No. 17, Ex. D & E, attached to Def.'s Mot. to Compel (doc. 185).

[53]*Id.* (emphasis added).

First Request No. 22 asks Plaintiffs to produce "[a]ll of your calendars, diaries, and journals with entries made by you, or on your behalf, while you were employed by SWBT during the last five years."[54]  Plaintiffs objected as follows:

> The request is overbroad because it contains no limitation as to subject matter, and purports to request documents regardless of their bearing in any way on any issue in this litigation.  Subject to this objection, Plaintiff will produce any calendars, diaries, and journals with entries made by Plaintiff *concerning the issues in this lawsuit*.[55]

Defendant states in its Motion to Compel that the parties have agreed to limit the temporal scope of First Request No.17 to the last five years.  Thus, both of these requests are limited to that five-year period.  Defendant, however, takes issue with Plaintiffs' decision to unilaterally limit their responses to correspondence, communications (Request No. 17) and calendars, diaries, and journals (Request No. 22) "concerning the issues in this lawsuit."

Defendant argues that the requested documents are relevant to Plaintiffs' claims that they were required to work "off the clock" and Defendant's defense that Plaintiffs were properly paid for all hours worked.  More specifically, Defendant argues that the communications and correspondence (including e-mail messages) requested in First Request No. 17 may lead to the discovery of admissible evidence because they may reveal when Plaintiffs were working or when they were engaged in non-work related activities.  Defendant points out that Plaintiffs allege in their Complaint that their "off the clock" work included reading e-mails.[56]  In a similar vein, Defendant argues that the calendars, diaries, and journals requested in First Request No. 22 will "logically reflect time at

---

[54]First Req. No. 22, Ex. D & E, attached to Def.'s Mot. to Compel (doc. 185).

[55]*Id.* (emphasis added).

[56]Am. Compl. (doc. 214) ¶ 20 ("off the clock" work included "reviewing memoranda and e-mail relating to Defendant's promotions and other services").

work, as well as time away from work."[57]  Thus, Defendant argues that they, too, may lead to the discovery of admissible evidence.

Plaintiffs argue that by limiting their responses to only those documents that "concern the issues is this lawsuit" Plaintiffs are providing Defendant with all documents that are relevant to this lawsuit.  Plaintiffs argue that if this limitation is not imposed, they will have to produce notes and calendars about totally irrelevant events, such as lunch plans, family gatherings, and dentist appointments.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence . . . of any documents . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[58] Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[59]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by

---

[57]Def.'s Mem. in Support of Mot. to Compel (doc. 185) at 18.

[58]Fed. R. Civ. P. 26(b)(1).

[59]*Jones v. Wet Seal Retail, Inc.,* 245 F.R.D. 724, 725 (D. Kan. 2007); *Cardenas,* 232 F.R.D. at 382; *Owens v. Sprint/United Mgmt. Co,* 221 F.R.D. 649, 652 (D. Kan. 2004).

discovery would outweigh the ordinary presumption in favor of broad disclosure.[60]  Conversely, when the request is overly broad on its face or when the relevancy of the requested document or information is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[61]

The Court finds that these requests are overly broad on their face and the relevancy of the requested documents is not readily apparent on the face of the requests.  Moreover, the Court finds that Defendant has failed to meet its burden to show the relevancy of these materials.  Plaintiffs have agreed to give Defendant the requested documents to the extent they "concern the issues in this lawsuit," which is certainly as broad as — if not broader — than Rule 26(b)(1)'s requirement that the information be "relevant to any party's claim or defense."  While Plaintiffs will have to be the final arbiters of what documents "concern the issues in this lawsuit," Defendant has little room to complain, as it chose to word these requests in such a broad manner.  If Defendant was seeking specific documents, it should have more narrowly tailored its requests to obtain the documents it is seeking.  The Court will deny the Motion to Compel as to First Requests No. 17 and 22.

### C.    First Request No. 18

This request asks Plaintiffs to produce "[a]ll documents urging current or former employees to, or describing how current or former employees may, become parties to this action."[62] Plaintiff Gipson objected as follows:

---

[60]*Johnson v. Kraft Foods N. Am., Inc*., 238 F.R.D. 648, 653 (D. Kan. 2006); *Cardenas,* 232 F.R.D. at 382; *Owens*, 221 F.R.D. at 652.

[61]*Johnson*, 238 F.R.D. at 653; *Cardenas*, 232 F.R.D. at 382; *Owens*, 221 F.R.D. at 652.

[62]First Req. No. 18, Ex. D & E, attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

Objection:  The request invades the attorney-client privilege and work product doctrine because it calls for the production of communication between Plaintiff and counsel, as well as efforts taken by either Plaintiff or counsel in support of the prosecution of this case.  This includes pre-filing communications between Plaintiff William Gipson and his counsel at Stueve Siegel Hanson LLP, concerning Mr. Gipson's complaint against Southwestern Bell.[63]

The Opt-In Plaintiffs asserted the same objection, but without the last sentence regarding pre-filing communications between Mr. Gipson and counsel.[64]

### 1.    The parties' arguments

Defendant contends that Plaintiffs have waived their attorney-client privilege and work product objections to this request with respect to any "pre-suit" documents, i.e., documents that were created before the lawsuit was filed on January 8, 2008.  Defendant asks the Court to find waiver because Plaintiffs failed to provide a privilege log identifying the allegedly privileged and protected pre-suit documents, as required by Rule 26(b)(5)(A).  Defendant asks the Court to compel Plaintiffs to "produce all responsive, *pre-suit* documents withheld on the basis of the attorney-client privilege and the work product doctrine."[65]  Defendant explains that "[t]he parties stipulated that post-suit documents do not need to be logged."[66]  Thus, Defendant has limited the Motion to Compel to *pre-suit* documents.[67]

---

[63]*Id.*, Ex. D.

[64]*Id.*, Ex. E.

[65]Def.'s Mem. in Support of Mot. to Compel (doc. 185) at 10 (emphasis added).

[66]*Id.* at n. 9 (emphasis added).

[67]The Court notes that Defendant contends in its reply brief that *post-suit* documents should also be produced pursuant to Paragraph 4 of the Stipulation Regarding Privilege Logs (doc. 93), which requires a party to provide a privilege log for any post-suit documents when the requesting party disputes the party's assertion of privilege as to those post-suit documents.  Defendant's

(continued...)

The Opt-In Plaintiffs argue that they were not required to provide a privilege log in response to this request because they did not join the lawsuit until after January 8, 2008 and therefore have no responsive *pre-suit* documents.  Plaintiff Gipson, who was the party who filed this lawsuit, concedes that he was required to provide the privilege log information as to his responsive documents.  He maintains, however, that he provided the requisite information in his written response to the request by stating:  "This includes pre-filing communications between Plaintiff William Gipson and his counsel . . . concerning Mr. Gipson's complaint against Southwestern Bell."[68]  Mr. Gipson argues that this description is sufficient to make "the requisite 'clear showing' that the communications are privileged."[69]  Furthermore, Mr. Gipson asserts that his attorney informed Defendant's counsel that the privileged documents he withheld "were created approximately December 28, 2007."[70]

### 2.    *Law regarding privilege logs*

Federal Rule of Civil Procedure 26(b)(5)(A) sets forth the proper procedure for a party withholding privileged or work product information to advance a claim that such material is privileged or protected by the work product doctrine.  The Rule provides as follows:

---

[67](...continued)
contention, however, runs directly counter to the assertions and arguments Defendant made in its opening brief.  This Court does not ordinarily address issues or arguments raised for the first time in a reply brief.  *See, e.g., Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).  Nor will the Court allow a party to seek in its reply brief drastically different relief than what it sought in its opening brief.  Consequently, the Court will disregard Defendant's reply brief request that Plaintiffs be compelled to provide privilege logs for any *post-suit* documents.

[68]First Req. No. 18, Ex. D, attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185)/

[69]Pls.' Resp. to Def.'s Mot. to Compel (doc. 226) at 7.

[70]*Id.*

20

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[71]

In applying Rule 26(b)(5)(A), this Court has held that the party asserting the privilege or protection bears the burden of making a "clear showing" that the asserted privilege or protection applies.[72]   A "blanket claim" as to the applicability of the privilege/work product protection does not satisfy the burden of proof.[73]   To carry its burden, the asserting party must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery.[74]  This information is typically provided in a "privilege log" and must be sufficiently detailed to enable the requesting party, and, if necessary, the court,  to evaluate the applicability of the claimed privilege or protection and to determine whether each element of the asserted privilege

---

[71]Fed. R. Civ. P. 26(b)(5)(A).

[72]*White v. Graceland Coll. Ctr. for Prof. Dev. & Lifelong Learning, Inc*., 586 F. Supp. 2d 1250, 12667-68 (D. Kan. 2008); *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007);

[73]*White,* 586 F. Supp. 2d at 1268; *Williams,* 245 F.R.D. at 667; *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680. (D. Kan. 2000).

[74]*White,* 586 F. Supp. 2d at 1268; *Williams,* 245 F.R.D. at 667; *McCoo*, 192 F.R.D. at 680.

or protection is satisfied.[75]  Failure to follow these rules may result in waiver of the attorney-client privilege and/or work-product protection.[76]

> 3.    *Application to this case*

The Court finds that the Opt-In Plaintiffs were not required to provide any privilege logs in response to this request, as they state in their briefing that they have no responsive pre-suit documents.  Their written responses to this request, however, do not make that clear; the written responses merely assert an objection based on attorney-client privilege and work product immunity.  The Opt-In Plaintiffs are therefore directed to serve amended responses to First Request No. 18 indicating that they have no responsive pre-suit documents in their possession, custody, or control.  To minimize the burden on these Opt-In Plaintiffs, the Court will allow them to file a single, joint amended response, so long as it clearly identifies each Opt-In Plaintiff who is responding.  The amended response shall be served within **thirty (30) days** of the date of this Order.

With respect to the documents withheld by Mr. Gipson, the Court finds his description of the documents insufficient to establish that the documents are privileged and/or protected by work product immunity.  Mr. Gipson's description is lacking in several respects.  First, he fails to indicate how many documents are being withheld, and for each, he fails to describe the type of document (e.g., correspondence, e-mail, memorandum).[77]  Second, he fails to identify the number of pages of

---

[75]*White,* 586 F. Supp. 2d at 1268; *Williams,* 245 F.R.D. at 667; *McCoo*, 192 F.R.D. at 680.

[76]*White,* 586 F. Supp. 2d at 1266; *Sprint Commc'ns Co., L.P. v. Vonnage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (citing 8 Charles A. Wright, *Federal Practice and Procedure* § 2016. 1, at 228-29 (2d ed. 1994)).

[77]*See Heavin v. Owens-Corning Fiberglass,* No. 02-2572-KHV-DJW, 2004 WL 316072, at *7-8 (D. Kan. Feb. 3, 2004) (listing information to be provided in privilege log and indicating that for each document withheld, the log should provide a description of the document (e.g. (continued...)

each document.[78]   Third, he does not specify which of the asserted privileges applies to each particular document.[79]   While he states his counsel informed Defendant of the date the documents were created, he fails to indicate whether any different date may be stated on the document itself.[80]   He also fails to provide the identity of the person(s) who prepared each document, the identity of the person(s) for whom the document was prepared, and the identity of the person(s) to whom the document and any copies were directed.[81]   Significantly, Mr. Gipson also fails to identify the purpose of the document and whether the document relates to seeking or giving legal advice, which is essential to establishing a claim of attorney-client privilege.[82]   With respect to any claimed work product, Mr. Gipson fails to provide any basis for asserting that the documents were prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was "real and imminent."[83]

---

[77](...continued)
correspondence, memorandum, attachment)).

[78]*See id.* at *8 (log should identify the number of pages of each document).

[79]*See id.* (log should identify the particular basis for withholding each document, i.e., the specific privilege or protection being asserted).

[80]*See id.* at *7 (log should identify the date the document was prepared as well as the date of document, if different from the date prepared).

[81]*See id.* (log should identify the person who prepared the document, the person for whom the document was prepared, and to whom the document and any copies were directed).

[82]*See id.* (log should state the purpose of preparing the document, including evidence to support the attorney-client privilege).   It is well settled that"[n]ot every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."   *Id.* at *3 (citations omitted).

[83]*Id.* at *7.

23

In sum, Mr. Gipson has failed to provide important information required by Rule 26(b)(5)(A), and the Court is unable to determine whether the withheld documents should be protected from disclosure by the attorney-client privilege and/or work product doctrine.  Because Mr. Gipson did not provide the requisite information — in the form of a privilege log or otherwise — the Court must decide whether to deem the privileged waived or allow Mr. Gipson to provide a privilege log at this point in time.

As noted above, the failure to provide a privilege log or otherwise comply with Rule 26(b)(5)(A) may result in waiver of the attorney-client privilege and/or work-product protection.[84] Although this result is not mandated by Rule 26(b)(5)(A) itself, the Advisory Committee clearly contemplated the sanction.  It explained as follows:  "To withhold materials without [providing the information required by Rule 26(b)(5)(A)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."[85]  Acknowledging the harshness of a waiver sanction, courts often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith.[86] Indeed, the general rule in this Court is that "[m]inor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver."[87]

---

[84]*White,* 586 F. Supp. 2d at 1266; *Sprint,* 2007 WL 1347754, at *2 (citing 8 Charles A. Wright, *Federal Practice and Procedure* § 2016. 1, at 228-29 (2d ed.1994))..

[85]*White,* 586 F. Supp. 2d at 1266 (citing Fed. R. Civ. P. 26(b)(5) advisory committee's notes (1993 amendments); *Sprint,* 2007 WL 1347754, at *2 (citing same).

[86]*White*, 586 F. Supp. 2d at 1266 (citations omitted); *Sprint,* 2007 WL 1347754, at *2 (citations omitted).

[87]*White*, 586 F. Supp. 2d at 1266 (citations omitted).

The Court finds that, in providing a written response to First Request No. 18, Mr. Gipson made at least an attempt, albeit insufficient, to provide some information required by Rule 26(b)(5)(A). A finding of waiver is therefore unwarranted under the circumstances. The Court directs Mr. Gipson to provide an amended response to Request No. 18 and a privilege log for any documents he is withholding on the basis of privilege or work product immunity. He shall do so within **thirty (30) days** of the date of this Order. The Motion to Compel is therefore granted as to Mr. Gipson and First Request No. 18.

### D.    First Request No. 19

Request No. 19 asks Plaintiffs to produce "[a]ll documents regarding your agreement to compensate your counsel for attorney fees related to this Action."[88] Plaintiff Gipson objected, stating: "The request invades the attorney-client privilege and work product doctrine. This includes Mr. Gipson's representation agreement concerning this case with his counsel at Stueve Siegel Hanson LLP."[89] The Opt-In Plaintiffs also objected on the basis of attorney-client privilege and work product, but without referring to any representation agreement or any other documents.[90]

As in the case of First Request No. 18, Defendant argues that Plaintiffs have waived their attorney-client privilege and work product objections by failing to provide a privilege log of any withheld pre-suit responsive documents. The Opt-In Plaintiffs counter that they were not required to provide privilege logs because they did not join the lawsuit until after January 8, 2008 and they have no responsive *pre-suit* documents. Plaintiff Gipson argues that he satisfied the privilege log

---

[88]First Req. No. 19, Ex. D & E, attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

[89]*Id.*, Ex. D.

[90]*Id.*, Ex. E.

requirement by identifying the "representation agreement" he entered into with his counsel.  In addition, he argues that discovery regarding fee agreements should not even be allowed at this point in time, citing D. Kan. Rule 54.2.  That rule provides that "discovery shall not be conducted in connection with motions for awards of attorney's fees unless permitted by the court upon motion and for good cause shown."[91]

None of the Plaintiffs raised D. Kan. Rule 54.2 as an objection in their initial responses to this request.  Plaintiffs therefore waived this objection and cannot raise it for the first time in opposition to Defendant's Motion to Compel.[92]  It is therefore overruled.

The Opt-In Plaintiffs state they have no responsive pre-suit documents responsive to this request.  The Court therefore finds there is no basis for Defendant to demand they provide a privilege log in response to this request.  For clarity's sake, however, the Court directs the Opt-In Plaintiffs to serve a joint amended response to first Request No 19 indicating that they have no pre-suit documents responsive to the request.  The Opt-In Plaintiffs shall do so within **thirty (30) days** of the date of this Order.

With respect to Mr. Gipson, the Court finds that his identification of the "representation agreement" is insufficient to show that the agreement is protected by the attorney-client privilege or work product doctrine.  Moreover, the Court questions whether the attorney-client privilege and work product doctrine apply in the first place.  This Court has held on several occasions that fee

---

[91]D. Kan. Rule 54.2.

[92]*Cardenas v. Dorel Juvenile Group, Inc*., 230 F.R.D. 611, 621 (D. Kan. 2005); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 657 (D. Kan. 2004).

arrangements and agreements are generally not protected by the attorney-client privilege.[93]  Fee arrangements and agreements reveal nothing about the advice sought or given and are not normally part of the legal consultation.[94]  Thus, "disclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client."[95]  In addition, fee agreements typically do not fall within the scope of the work product doctrine[96] because they are not deemed "unwarranted inquiries into the files and the mental impressions of an attorney."[97]  If, however, the fee agreement or related document reveals the specific nature of services provided or legal advice given to the client, or discloses the attorney's legal conclusions or opinions, the agreement/document may fall within the scope of the privilege or protection.[98]

In light of the above, Mr. Gipson might have a valid privilege or work production objection to producing any fee agreement or "representation agreement" if the agreement reveals the specific nature of legal services provided or legal advice given to him by his attorneys or if it reveals the

---

[93]See, e.g., *In re TJX Cos. Inc. Fair and Accurate Credit Transactions Act Litig.*, No. 07-1853-KHV-DJW, 2008 WL 2437558, at *4 (D. Kan. June 12, 2008); *ERA Franchise Systs., Inc. v. N. Ins. Co of N. Y.,* 183 F.R.D. 276, 279 (D. Kan. 1998).

[94]*In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990).

[95]*ERA Franchise*, 183 F.R.D. at 279 (quoting *In re Grand Jury Subpoenas*, 906 F.2d at 1492).

[96]*Montgomery County v. MicroVote Corp.*, 175 F.3d. 296, 303 (3d Cir. 1999); *Murray v. Stuckey's Inc.*, 153 F.R.D. 151, 153 (N.D. Ia. 1993); *In re Sheffield*, 280 Bankr. 719 (Bankr. S. D. Ala. 2001).

[97]*Murray*, 153 F.R.D. at 153 n.2 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).

[98]*See In re Indep. Serv. Org.*, No. MDL-1021-KHV, 1999 WL 450906, at *2 (D. Kan. May 24, 1999) (recognizing that correspondence and fee agreements disclosing consulting with an attorney and arrangements for payment of the attorney's fees are not protected but also recognizing that document or correspondence that reveals the substance of any confidential information between the attorney and client in addition to the fee agreement could be privileged).

mental impressions and conclusions of his attorneys.  In such a case, Mr. Gipson has the burden to provide the required Rule 26(b)(5)(A) privilege log information to support his assertion of the privilege/protection.  His mere description of the document as a "representation agreement" is not sufficient to meet his burden.

Rather than impose the harsh sanction of waiver, the Court will allow Mr. Gipson the opportunity to provide a privilege log describing the "representation agreement" and any other documents he may be withholding in response to this request if he has a valid basis for claiming privilege or work product protection.[99]  To the extent, however, the "representation agreement" or any other document Mr. Gipson is withholding on the basis of privilege or work product protection is merely a fee agreement, it is not protected by the attorney-client privilege or work product doctrine and must be produced.

In light of the above, the Court directs Mr. Gipson to provide a privilege log or produce the "representation agreement" and any other responsive documents he may be withholding.  He shall do so within **thirty (30) days** of the date of this Order.

### E.   First Request No. 21

This request asks Plaintiffs to provide "[a]ll written statements from any person regarding your claims in this Action."[100]  Plaintiff Gipson responded:

---

[99]Mr. Gipson's written response to First Request No. 19 is unclear as to whether he is withholding any documents other than the "representation agreement."  After he asserts his privilege and work product objections, he states:  "This includes Mr. Gipson's representation agreement concerning this case with his counsel . . . ."  The "this includes" language is ambiguous and leaves the reader to wonder whether Gipson's objection "includes" other documents.

[100]First Req. No. 21, Ex. D & E, attached to Def.s' Mem. in Supp. of Mot. to Compel (doc. 185).

Objection. The request invades the attorney-client privilege and work product doctrine. This includes pre-filing communications between Plaintiff William Gipson and his counsel at Stueve Siegel Hanson LLP, concerning Mr. Gipson's complaint again Southwestern Bell. Subject to this objection, any responsive, non-privileged, non-work product documents will be produced.[101]

The Opt-In Plaintiffs asserted a similar objection. They responded as follows: "Objection. The request invades the attorney-client privilege and work product doctrine. Subject to this objection, any responsive, non-privileged, non-work product documents will be produced."[102]

Defendant once again argues that Plaintiffs have failed to provide a privilege log in support of their privilege and work product objections, and urges the Court to find waiver and require Plaintiffs to produce all pre-suit documents responsive to this request that they are withholding on the basis of privilege and/or work product protection.

Plaintiff Gipson counters that he is only withholding one document in response to this request. He argues that his initial response to the request for production adequately identifies the document for privilege log purposes, and thus, there is no basis to find waiver. As in the case of First Requests No. 18 and 19, the Opt-In Plaintiffs argue they were not required to provide a privilege log because they did not join the lawsuit until after January 8, 2008 and they have no responsive *pre-suit* documents.

The Court's ruling as to the Opt-In Plaintiffs is the same as its ruling with respect to First Requests No. 18 and 19. Because the Opt-In Plaintiffs state they have no responsive pre-suit documents responsive to this request, there is no basis to require them to provide a privilege log. For clarity's sake, however, the Court directs the Opt-In Plaintiffs to serve a joint amended response

---

[101]*Id.*, Ex. D.

[102]*Id.*, Ex. E.

to Frst Request No 21 indicating that they have no pre-suit documents responsive to the request. The amended response shall be served within **thirty (30) days** of the date of this Order.

The Court finds that Mr. Gipson's identificaion of "pre-filing communications" between himself and his counsel "concerning Mr. Gipson's complaint against Southwestern Bell" to be lacking sufficient detail to satisfy Rule 26(b)(5)(A). Rather than find waiver, however, the Court directs Mr. Gipson to provide a privilege log adequately describing the pre-suit documents he is withholding in response to this request.

### F.    First Interrogatories  No. 4 and 8

Defendant's counsel advised the Court in a February 9, 2009 e-mail that the parties have resolved the issues relating to First Interrogatories No. 4 and 8. The Court therefore finds the Motion to Compel to be moot as to First Interrogatories No. 4 and 8.

### G.    First Interrogatory No. 6

This interrogatory asks each Plaintiff to provide the following information:

Identify all current or former SWBT employees with whom you have had contact or communication about the claims you make in this Action, and provide the date of each communication, the person initiating the communication, the substance of each communication, and whether each communication was documented.[103]

Each Plaintiff responded with the following: "OBJECTION: The interrogatory invades the attorney-client privilege and work-product doctrine because it is so broad as to seek information conveyed from counsel to plaintiffs."[104] Plaintiffs then provided information about any responsive communications that they contend are non-privileged, but stated that such information was being

---

[103]First Interrog. No. 6, Ex. C attached to Def.'s Mem. in Support of Mot. to Compel (doc. 185).

[104]*Id.*

provided "subject to and without waiving" their privilege and work product objections.[105]   For example, Plaintiff Barbara Morales stated: "Subject to and without waving this objection, the respondent states as follows: . . . sometime in April 2008 . . . before I retained counsel to pursue back pay on my behalf, I spoke with [Plaintiff] Tina Stoddard about this suit.  The conversation was not documented."

### 1.   The parties' arguments

Defendant contends that Plaintiffs have waived their attorney-client privilege and work product objections to this interrogatory because they failed to provide a privilege log as to any responsive pre-suit documents.  Defendant therefore asks the Court to find waiver and compel Plaintiffs to fully answer the interrogatory and provide all information and all pre-suit documents withheld on the basis of privilege or work product protection.  Defendant  also asks the Court to compel Plaintiffs to provide any information or documents (regardless of whether the documents are pre- or post-suit) as to any communications between the Plaintiffs themselves, which Defendants maintain would not be subject to attorney-client privilege or work product protection if no attorney were present during the communications.

In their response to the Motion to Compel, Plaintiffs represent that they "have responded with their best recollection of all non-privileged, non-work product information," and state that they are not withholding any "non-privileged [or] non-work product information"[106]   To the extent Plaintiffs are withholding privileged communications and work-product information, they state that no log is required because such communications and information post-date the filing of the lawsuit and need

---

[105]*Id.*

[106]Pls.' Resp. to Mot. to Compel (doc. 226) at 11-12.

not be disclosed or logged pursuant to the Stipulation Regarding Privilege Logs.  Apparently, all of the post-suit information and documents they are withholding on the basis of privilege/work product protection relate to communications between Plaintiffs and other SWBT customer service representatives.[107]  Plaintiffs argue that such communications are privileged and/or protected by the "common interest" doctrine.  Finally, Plaintiffs argue, that in the event the Court determines Plaintiffs should have provided a privilege log, the Court should decline to find waiver and allow them to provide a privilege log at this time.

2.    *The validity of Plaintiffs' privilege and work product objections*

The Court will first assess the validity of Plaintiffs' underlying attorney-client and work product objections.  This is crucial, because the parties' Stipulation Regarding Privilege Logs, by its express terms, applies only to those documents that are "protected by the attorney-client privilege and the work product doctrine."  If there is no valid  basis for claiming the information is privileged or protected work product, then the Stipulation Regarding Privilege Logs does not apply, and any post-suit documents or information would have to be disclosed.

a.    *Work product protection*

Rule 26(b)(3) governs work product or "trial preparation materials."[108]  More specifically, it provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."[109]

---

[107]Plaintiffs state in their response to the Motion to Compel that "Plaintiffs' counsel is aware of no communications between Plaintiffs and any SWBT employees other than customer service representatives with identical legal interests, and is withholding none."  *Id.* at 12.

[108]*See* Fed. R. Civ. P. 26(b)(3).

[109]*Id.*

Consequently, this Court has on several occasions observed that, generally speaking, "the work product doctrine protects only documents and tangible items."[110] The Court has noted, however, that under the Supreme Court's decision in *Hickman v. Taylor*,[111] the doctrine "also provides . . . protection for an attorney's mental impressions and conclusions, which is not limited to documents and tangible things that are protected under Fed. R. Civ. P. 26(b)(b)(3)."[112] Thus, although Rule 26(b)(3) is confined to the discovery of "documents and tangible things," the doctrine has been expanded to reach information sought through interrogatories when the interrogatory seeks the mental impressions or legal conclusions of an attorney.[113]

Accordingly, this Court has held that unless an interrogatory (1) specifically inquires into an attorney's mental impressions, conclusions, or legal theories, or (2) asks for the content of a document protectable as work product, it is inappropriate to raise a work product objection to the interrogatory.[114] The Court has also held that the work product doctrine provides no protection for

---

[110]*Beach v. City of Olathe*, No. Civ. A. 99-2210-GTV-DJW, 2000 WL 090808, at *11 (D. Kan. July 6, 2000); *ERA Franchise Sys., Inc. v. N. Ins. Co.,* 183 F.R.D. 276, 280 (D. Kan. 1998); *accord Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995) ("In order to be protected by the work product rule, the material must . . . be a document or tangible thing . . . .").

[111]329 U.S. 495 (1947).

[112]*Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 645 (D. Kan. 1999) (internal quotations and citations omitted).

[113]*Beach*, 2000 WL 960808, at *11; *Starlight*, 186 F.R.D. at 645; *Audiotext Commc'ns v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *9 (D. Kan. Oct. 5, 1995).

[114]*Beach,* 2000 WL 090808, at *11; *Starlight*, 186 F.R.D. at 645; *ERA Franchise*, 183 F.R.D. at 280; *Mackey v. IPB, Inc*., 167 F.R.D. 186, 200 (D. Kan. 1996); *Mike v. Dymon, Inc*., No. Civ. A. 95-2405-EEO, 1996 WL 674007, at *9 (D. Kan. Nov. 14, 1996).

facts concerning the creation of work product or facts contained within work product.[115]  In a similar vein, it has held that the work product doctrine does not prevent a party from propounding an interrogatory asking about "the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery."[116]

The Court will now apply these rules to First Interrogatory No. 6.  The Court finds that asking Plaintiffs to identify employees with whom Plaintiffs have communicated and who initiated the communication, to provide the date of each communication, and to state whether the communications were documented does not require Plaintiffs to divulge the content of any document or tangible item.  Nor do these inquiries require Plaintiffs to disclose their attorneys' mental impressions, strategies, or legal conclusions.  At most, these inquiries ask Plaintiffs to divulge facts concerning the creation of possible work product documents and for information as to whether certain documents exist.  As noted above, the work product doctrine does not protect against the disclosure of facts concerning the creation of work product nor does it shield from discovery the existence or non-existence of work product documents.  Consequently, any work product objection to providing a response to these portions of First Interrogatory No. 6 is not valid.

On the other hand, asking Plaintiffs to provide "the substance of each communication" might, under certain circumstances, require disclosure of their attorneys' mental impressions, strategies, or legal opinions.  Thus, it is conceivable that Plaintiffs might have a valid work product objection to describing the substance of each such communication.

---

[115]*Starlight*, 186 F.R.D. at 645 (citing *RTC v. Dabney*, 73 F.R.D. 262, 266 (10th Cir. 1995)).

[116]*Mackey*, 167 F.R.D. at 200 (citing *Casson Constr. Co. v. Armco Steel Corp*., 91 F.R.D. 376, 385 (D. Kan. 1980) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2023 (1970 & Supp. 1978)).

In light of the above, the Court finds no basis for Plaintiffs to assert work product immunity in response to First Interrogatory No. 6 to the extent it asks Plaintiffs to identify employees with whom Plaintiffs have communicated, provide the date of each communication, identify the person initiating the communication, and state whether each communication was documented. Plaintiffs' work product objections to those portions of First Interrogatory No 6 are therefore overruled. Plaintiffs might, however, have a valid work product objection to the interrogatory to the extent it asks Plaintiffs to the describe the substance of each communication. Thus, the Court will need to address whether a privilege log was required in response to that portion of the interrogatory. Before turning to the privilege log issue, however, the Court will examine the validity of Plaintiffs' attorney-client privilege objections.

b.      *Attorney-client privilege*

The purpose behind the attorney-client privilege "is to preserve confidential communications between attorney and client."[117] Thus, the privilege "protects communications between attorney and client, not facts."[118] The identity of employees with whom Plaintiffs have communicated, the dates of the communications, the identity of the person initiating the communication, and whether each communication was documented are facts and not "communications." Thus, they cannot fall within the purview of the privilege. The Court therefore overrules Plaintiffs' attorney-client privilege

---

[117]*In re Grand Jury Subpoenas*, 144 F.3d at 658 (quoting *U.S. v. Anderson,* 906 F.2d 1485, 1492 (10th Cir. 1990)). As this is a federal question case, the federal common law of privilege applies. *See In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006).

[118]*Hoffman v. United Telecomm., Inc.,* 117 F.R.D. 436, 439 (D. Kan. 1987); *accord Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164-MLB-DWB, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) (citation omitted); *see also Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

35

objection to First Interrogatory No. 6 to the extent the interrogatory seeks the identities of various employees and individuals, the dates of the communications, and information as to whether the communications were documented.

In contrast, the Court finds that asking Plaintiffs to describe the "substance of each communication" could require Plaintiffs to divulge the content of a privileged communication between Plaintiffs and their attorneys, thereby implicating the attorney-client privilege. Thus, it is possible that Plaintiffs might have a valid attorney-client privilege objection to providing this information. Defendants, however, argue that Plaintiffs cannot legitimately claim the privilege if the communications were merely between the Plaintiffs themselves, who do not have an attorney-client relationship. It appears Defendant is concerned that in responding to this interrogatory Plaintiffs have withheld information about post-suit communications *between themselves*, when in fact such communications would not be privileged or protected by work product immunity. Plaintiffs respond to this argument by asserting the common interest doctrine. They contend Defendant is arguing waiver, and they characterize Defendant's argument as follows: "SWBT argues that Plaintiffs waived the attorney-client privilege or work product protection by talking with each other."[119] Plaintiffs assert that no waiver occurred because the common interest doctrine applies and acts as an exception to waiver. Thus, Plaintiffs contend that no privilege logs were required as to any post-suit documents.

Plaintiffs and Defendants are arguing about two different factual and legal scenarios. Defendant is focusing on the scenario where Plaintiff A communicates with Plaintiff B about the claims A has asserted in the lawsuit. Defendant argues that such a communication would not be

---

[119]Pls.' Resp. to Mot. to Compel (doc. 226) at 12.

privileged because there is no communication between the attorney and client.  Thus, Defendant argues that any such post-suit communications must be disclosed in response to this Interrogatory. Plaintiffs, on the other hand, focus on the scenario where the attorney has communicated with Plaintiff A about A's claims in such a manner that the communication between the two of them is privileged.  Plaintiff A then passes on the substance of the privileged communication to Plaintiff B. Plaintiffs argue that the communication A passed on to B is still privileged because of the common interest doctrine.  In other words, no waiver occurred when A passed on the communication to B and the substance of the communication remained privileged.  Pursuant to the Stipulation Regarding Privilege Logs, no privilege log was required for this communication because it was a post-suit communication subject to a valid privilege.

Defendant has correctly stated the law with respect to the first scenario.  It is axiomatic that the attorney-client privilege requires a communication between the attorney and the client.[120]  A communication merely between two of the Opt-In Plaintiffs about one of their claims simply is not privileged.

Plaintiffs have also correctly stated the law with respect to the second scenario.  "The common interest doctrine . . . affords two parties with a common legal interest a safe harbor in which

---

[120]"The focal point of the protection afforded by the attorney-client privilege lies with communications between attorneys and their clients." *Wagoner v. Pfizer, Inc*., No. 07-1229-JTM-KMH, 2008 WL 821952, at *3 (D. Kan. Mar. 26, 2008).  Generally speaking the attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his/her capacity as a legal adviser.  *In re Universal Serv. Fund Tel. Billing Practices Litig,* 232 F.R.D. 669, 674 (D. Kan. 2005) (citations omitted).  The privilege also protects advice given by the attorney in the course of representing the client.  *Id*. (citations omitted).

they can openly share privileged information" without risking loss of the privilege.[121]  The common interest doctrine exists only where there is an applicable underlying privilege.[122]  The doctrine is not a separate privilege, but rather an exception to waiver of the privilege which allows parties who share common interests to secure legal advice regarding their common legal interests.[123]  "For the common interest doctrine to attach, most courts insist that the two parties have in common an interest in securing legal advice related to the same matter — and that the communications be made to advance their shared interest in securing legal advice on that common matter."[124]

In short, to rely on the common interest doctrine, the underlying communication must be protected by the attorney-client privilege.  If the privileged communication is passed on to a third party with identical legal interests for the purpose of advancing their shared legal interests, the common interest doctrine applies and the privilege is not waived.  Clearly, the various Opt-In Plaintiffs in this action, along with Plaintiff William Gipson, have identical legal interests for purposes of applying this doctrine.

In light of the above, Plaintiffs may properly rely on the attorney-client privilege in response to First Interrogatory No. 6 to protect post-suit communications between themselves if the underlying communication itself was protected by the attorney-client privilege and if the communication was passed from one Plaintiff to another for the purpose of advancing their shared legal interests.  To the

---

[121]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006) (citing *Sawyer v. Southwest Airlines*, No. 01-2385-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002).

[122]*U.S. Fire,* 2006 WL 3715927, at *1; *Sawyer,* 2002 WL 31928442, at *3.

[123]*Id.*

[124]*Id.* (citations and internal quotations omitted).

38

extent Plaintiffs have engaged in such communications, the communication would remain privileged, and any such post-suit communications need not be identified in a privilege log pursuant to the Stipulation Regarding Privilege Logs.

To the extent, however, Plaintiffs have relied on the attorney-client privilege in response to First Interrogatory No. 6 to protect any post-suit communications between themselves where the common interest doctrine does not apply — because there was no underlying privileged attorney-client communication or because the communication was not passed on to another Plaintiff for the purpose of advancing their shared legal interests — then Plaintiffs' assertion of the privilege is erroneous.  In such a situation, there was never any underlying privileged communication or it was waived, and Plaintiffs were required to disclose "the substance of the communication" in response to First Interrogatory No. 6.  To the extent this is the case, Plaintiffs shall serve amended responses to this interrogatory identifying the substance of each such communication and shall do so within **thirty (30) days** of the date of this Order.

To summarize, the Court finds no basis for Plaintiffs to assert work product immunity or attorney-client privilege in response to First Interrogatory No. 6 to the extent it asks Plaintiffs to identify employees with whom Plaintiffs "have had contact or communication about the claims" they make in this action, provide the date of each communication, identify the person initiating the communication, and state whether each communication was documented.  Plaintiffs' work product and attorney-client privilege objections to those portions of First Interrogatory No. 6 are overruled, and the Motion to Compel is granted as to those portions of the interrogatory.  Plaintiffs must serve amended responses to those portions of the interrogatory.

In contrast, the Court finds that First Interrogatory No. 6 could conceivably require Plaintiffs to provide information protected by the attorney-client privilege and/or work product doctrine to the extent it asks Plaintiffs to state "the substance of each communication."   However, if the communications were strictly between Plaintiffs and there was no communication of any underlying privileged or protected information, the communications would not be privileged or protected and would need to be disclosed.  In those cases, Plaintiffs must serve amended responses to this portion of the interrogatory.  Only in those situations where the common interest doctrine applies (as set out above) will Plaintiffs be allowed to assert privilege or work product protection and they will not be required to disclose the communications pursuant to the Stipulation Regarding Privilege Logs.

## IV.    Attorney's Fees and Expenses

Defendant makes no request to recover the fees or expenses it has incurred in connection with filing its Motion to Compel.  The Court must nevertheless consider whether to make such an award.

Federal Rule of Civil Procedure 37(a)(5) governs the award of fees and expenses in connection with motions to compel.  It requires the Court to award reasonable expenses and attorney's fees to a prevailing party unless the position of the non-prevailing party was substantially justified or other circumstances make an award of expenses unjust.[125]   If a discovery motion is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.[126]  Courts have generally held that a party's position (i.e., motion, request, response, or objection) is "substantially justified" within the meaning of Rule 37 if it is "justified to a degree that could satisfy

---

[125]*See* Fed. R. Civ. P. 37(a)(5)(A) and (B)

[126]Fed. R. Civ. P. 37(a)(5)(C).

a reasonable person"[127] or where "reasonable people could differ as to the appropriateness" of the objection or response.[128]   Whether to impose sanctions when a court grants in part and denies in part a motion to compel, lies within the court's sound discretion, and the court must consider on a case-by-case basis whether the party's position was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.[129]

Rule 26(g) also provides for sanctions in connection with discovery.  It requires that every discovery request, response, or objection be signed by at least one attorney of record or by the pro se party.[130]  More importantly, the Rule provides that the attorney or pro se party's signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the discovery request, response, or objection is "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."[131]  The signature also certifies that the request, response or objection is

---

[127]*See, e.g., Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir.  2005); *Pan Am. Grain Mfg. Co., Inc. v. Puerto Rico Ports Auth.* 295 F.3d 108,116 (1st Cir. 2002); *Cardenas v. Dorel Juvenile Group, Inc.,* No.04-2478-KHV-DJW, 2005 WL 3503625, at *2 (D. Kan. Dec. 22, 2005).

[128]*Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997); *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2008 WL 833509, at *1 (D. Kan. Mar.  27, 2008*); Cardenas,* 2005 WL 3503625, at *2.   In a similar context, the Supreme Court has said that "substantially justified" does not mean "justified to a high degree," but only "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing government's obligations under Equal Access to Justice Act).

[129]*Moss v. Blue Cross and Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 699 (D. Kan. 2007) citations omitted).

[130]Fed. R. Civ. P. 26(g).

[131]Fed. R. Civ. P. 26(g)(1)(B)(i).

"not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[132]   Finally, the signature certifies that the request, response or objection is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."[133]

If an attorney or pro se party makes a Rule 26(g) certification that violates the Rule and the violation is "without substantial justification," the Court, on motion or *sua sponte,* "must impose an appropriate sanction" on the signer, the party on whose behalf the signer was acting, or both of them.[134]   Such a sanction may include an order to pay the reasonable expenses caused by the violation, including attorney's fees.[135]

The 1983 Advisory Committee notes on Rule 26(g) explain that attorneys have an "affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purpose of Rules 26 through 37."[136]   The Advisory Committee further observes:

> Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.  The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection.

* * * *

---

[132]Fed. R. Civ. P. 26(g)(1)(B)(ii).

[133]Fed. R. Civ. P. 26(g)(1)(B)(iii).

[134]Fed. R. Civ. P. 26(g)(3).

[135]*Id.*

[136]Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments.

If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. With this in mind, Rule 26(g), which parallels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection.

* * * *

Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.[137]

With these standards in mind, the Court has carefully considered the discovery requests, responses and objections at issue in this Motion to Compel, as well as the arguments of counsel. The Court has serious concerns regarding Plaintiffs' practice of responding that "all responsive documents will be produced" when, in fact, the responding Plaintiff had no responsive documents in his/her possession, custody, or control at the time the response was given. The Court also has serious concerns about Plaintiffs' practice of jointly responding to requests for production that were *individually* served on each Plaintiff, where the joint responses made it difficult to determine which Plaintiff was actually responding. The Court also finds Plaintiffs' generic references to documents being produced in partial response to First Interrogatory No. 1 improper, particularly in light of the clear mandate of Rule 33(d) and well established case law that the responding party must specify the business records in sufficient detail so that the interrogating party may locate and identify the documents as readily as the responding party. Finally, the Court has serious concerns regarding Plaintiffs' withholding of allegedly privileged materials without providing a privilege log or information sufficient to comply with Rule 26(b)(5)(A). These responses and objections of Plaintiffs were not "substantially justified" within the meaning of either Rule 37(a)(5) or 26(g).

---

[137]*Id.*

The Court's concerns are not limited to Plaintiffs' responses. The Court also questions the reasonableness of several of Defendants' discovery requests for production. First Requests No. 16, 17, and 22 are clearly overbroad and not specifically tailored to seek documents concerning the claims or defenses in this lawsuit. Such requests fall well outside the scope of discovery allowed by Rule 26(b)(1).

In short, the Court finds that several of Defendant's requests and Plaintiffs' responses and objections at issue in this Motion to Compel did not meet the minimum standards required by Rule 26(g). Because *both* sides have failed to satisfy their Rule 26(g) duties, the Court will decline to impose sanctions under the Rule. The Court will also decline to apportion an award of fees and expenses under Rule 37(a)(5)(C). The Court, however, wishes to make it clear to counsel that in the future it will not hesitate to impose sanctions under Rule 26(g) or 37(a)(5) in the event the Court finds discovery abuse on the part of any party.

As Magistrate Judge Paul W. Grimm observed in his recent opinion expounding on the duties imposed by Rule 26(g), "[t]he failure to engage in discovery as required by Rule 26(g) is one reason why the cost of discovery is so widely criticized as being excessive — to the point of pricing litigants out of court."[138] The costs associated with adversarial conduct in discovery have become a serious burden not only on the parties but on this Court as well. While the Court is well aware of counsel's obligations to act as advocates for their clients and to use the discovery process for the fullest benefit of their clients, those obligations must be balanced against counsel's duty not to abuse legal procedure.

---

[138]*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008) (citations omitted).

The voluminous file in this case and the number of discovery motions filed reveal that a vast amount of attorney time has been expended as the parties have engaged in discovery battles. Many of those battles appear to have been unnecessary. The Court reiterates its advice to counsel to communicate and cooperate in the discovery process in an attempt to resolve their discovery disputes without judicial involvement. All parties will benefit if they can avoid the further costs of filing additional motions and voluminous briefs.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (doc. 184) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that each party shall bear its/his/her own expenses incurred in connection with the Motion to Compel.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 24th day of March 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and pro se parties