DJW/1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**WILLIAM GIPSON,**
**individually and on behalf of a class**
**of others similarly situated, et al.,**

                               **Plaintiffs,**                  **Civil Action**

**v.**                                        **No. 08-2017-EFM-DJW**

**SOUTHWESTERN BELL TELEPHONE**
**COMPANY, f/k/a/ SWBT, Inc., f/k/a**
**Southwestern Bell Telephone, L.P.,**

                               **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

William Gipson brings suit against Defendant Southwestern Bell Telephone Company ("SWBT" or "Defendant") on behalf of himself and others similarly situated, seeking recovery of unpaid wages and overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Pending before the Court is Defendant's Motion to Compel Supplemental and Amended Discovery Responses and for Sanctions (doc. 398) ("Motion to Compel"). For the reasons set forth below, the Motion to Compel is granted in part and denied in part. In addition, Defendant's request for sanctions is denied.

## I.     Background Information

Plaintiff William Gipson alleges that he previously worked at Defendant's call center facility in Wichita, Kansas, and that "Defendant's practice and policy is to deny wages and overtime pay to its hourly paid, telephone dedicated service employees at its call center facilities."[1] The Amended

---

[1]Am. Compl. (doc. 214), ¶¶ 1-2.

Complaint states that the action "is brought as a collective action under the FLSA to recover unpaid wages owed to Plaintiff and all other similarly situated employees employed in Defendant's call centers."[2]

The Amended Complaint alleges as follows:

Plaintiff and similarly situated employees engage in numerous preparatory activities, as well as related work activities performed over breaks and at the end of the work day, that are integral and indispensable for them to perform their customer service duties. It is Defendant's policy and practice not to pay its hourly paid, telephone dedicated service representatives for this work time, consequently these employees are consistently working "off the clock" and without pay. Accordingly, under the holding of *Alvarez*, as well as under consistent rulings and interpretations of the United States Department of Labor, Plaintiff and all similarly situated employees are entitled to compensation for the time spent working pre-shift, post-shift and during unpaid meal breaks.[3]

The Amended Complaint further alleges that "Defendant uniformly denies wages and overtime pay to its employees by requiring them to perform 'off the clock' work. Defendant's deliberate failure to pay employees their earned wages and overtime compensation violates the FLSA."[4]

On April 20, 2009, the Court entered an Order conditionally certifying the case as a collective action and defining the class as "telephone dedicated customer service representatives" employed from April 20, 2006 to the present at call centers in SWBT's "MOKAT" region comprised of Missouri, Oklahoma, Kansas, Arkansas, and Texas.[5]

_____

[2]*Id.*, ¶ 2.

[3]Id., ¶ 4.

[4]*Id.*, ¶ 5.

[5]April 20, 2009 Mem. and Order (doc. 550) at 7-8.

## II.      Nature of the Matter Before the Court

This motion pertains to discovery relating to ten Plaintiffs:  William Gipson, Linda Hall, Jessica Weir, Tracy Groth, Barbara Farrington, Danny Dandurand, Stephanie Vasina, Tammy Squier, Tina Stoddard, and Dawn Erwin.  Defendant seeks four categories of relief.  First, Defendant asks the Court to compel these ten Plaintiffs to amend and supplement their answers to various interrogatories.  Second, Defendant requests that it be permitted to reopen their depositions to question Plaintiffs regarding their amended and supplemental answers.

Third, Defendant seeks an order compelling Plaintiffs' counsel to certify, within thirty days of this Order, that:

> (i)  they have given to Plaintiffs Gipson, Hall, Groth, Dandurand, Squier, and Stoddard copies of SWBT's Requests for Production of Documents, (ii) Plaintiffs Gipson, Hall, Groth, Dandurand, Squier, and Stoddard have searched for, and produced any, documents requested by SWBT, and (iii) Plaintiffs Gipson, Hall, Groth, Dandurand, Squier, and Stoddard have read and agree with their amended responses to SWBT's Requests for Production of Documents.[6]

Fourth, Defendant seeks to recover from Plaintiffs the reasonable expenses and attorney's fees that it has incurred in connection with its Motion to Compel and that it will incur in reopening Plaintiffs' depositions.

## III.     Should Plaintiffs Be Compelled to Supplement and Amend Their Interrogatory Answers?

Identical sets of interrogatories were served on each of the aforementioned ten Plaintiffs.  The particular interrogatories at issue in this Motion are Nos. 2, 3, 5, and 6.  Defendant asserts that during their depositions, Plaintiffs "admitted their answers . . . are incomplete, inaccurate, and based

---

[6]Def.'s Mot. to Compel (doc. 398) at 2.

3

on erroneous assumptions."[7]   Defendant moves, pursuant to Federal Rules of Civil Procedure 26(e)(1)(A)and 26(e)(1)(B), to compel these ten Plaintiffs to serve supplemental and amended answers to one or more of these interrogatories to correct the alleged inaccuracies and errors and to make the answers full and complete.

### A.     Applicable Law

#### 1.     Rule 26(e)(1)(A)

Subsection (A) of Rule 26(e)(1) governs the supplementation of answers to discovery requests, including interrogatory answers.  It provides in pertinent part:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.[8]

The basic purpose behind Rule 26(e)(1)(A)'s supplementation provision is to prevent prejudice and surprise.[9]  In other words, it is intended to prevent "trial by ambush."[10]

Under the plain language of the Rule, and consistent with its purpose,  the duty to supplement applies only if (1) the discovery response is incomplete or incorrect "in some material

---

[7]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 3.

[8]Fed. R. Civ. P. 26(e)(1)(A).

[9]*Frydman v. Dep't of Justice*, 852 F. Supp. 1497, 1509 (D. Kan. 1994) (citing *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d. 82, 85 (5th Cir. 1994)).

[10]*Kuntsler v. City of New York*, 242 F.R.D. 261, 264 (S.D.N.Y. 2007) (citations omitted).

respect, and (2) the other party is unaware of the new or corrective information.[11]  With respect to

the first element, "[i]nformation is 'incomplete or incorrect' in 'some material respect' if there is an

objectively reasonable likelihood that the additional or corrective information could substantially

affect or alter the opposing party's discovery plan or trial preparation."[12]

With respect to the second element, i.e., the "otherwise been made known" element, both the

Advisory Committee and leading commentators indicate that the "incidental discovery," particularly

during a deposition, of new or "corrective" information, satisfies the Rule 26(e)(1) duty to

supplement as sufficiently as a formal filing or writing.[13]  The Advisory Committee Notes to the

1993 Amendments to Rule 26(e) state as follows:

> There is . . . no obligation to provide supplemental or corrective information that has
> been otherwise made known to the parties in writing or during the discovery process,
> as when a witness not previously disclosed is identified during the taking of a
> deposition or when an expert during a deposition corrects information contained in
> an earlier report.[14]

Similarly, Professors Wright and Miller explain that this provision "recognize[s] that there

is no need as a matter of form to submit a supplemental disclosure to include information already

revealed by a witness in a deposition or otherwise through formal discovery.[15]

---

[11]*Colon-Millin v. Sears, Roebuck De Puerto Rico, Inc.*, 455 F.3d 30, 37 (1st Cir. 2006); *Hooker v. Fulton County, Ga*, No.  CIVA105CV982GET, 2006 WL 2617142, at *4 (N.D. Ga. Sept. 12, 2006).

[12]*Gallegos v. Swift & Co.*, No. 04-cv-01295-LTB-CBS, 2007 WL 214416, at *2 (D. Colo. Jan. 25, 2007) (quoting *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004)).

[13]*Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998).

[14]Fed. R. Civ. P. 26(e), 1993 amendments, advisory committee's notes.

[15]8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2049.1 at 604 (2d ed. 1994); *see also* 6 James Wm. Moore, et. al, *Moore's Federal*
(continued...)

The duty to supplement "applies whether the corrective information is learned by the client or by the attorney,"[16] and extends not only to newly discovered evidence, but to "information that was not originally provided although it was available at the time of the initial disclosure or response."[17] The duty to supplement is triggered only where a party, or more frequently, the party's attorney, obtains actual knowledge that a prior response is incorrect in a material way.[18]

### 2. *Rule 26(e)(1)(B)*

Subsection (B) of Rule 26(e)(1) also provides for the supplementation of answers to discovery requests. It simply states that a party who has responded to a discovery request "must supplement or correct" its response "as ordered by the court."[19] Defendant argues in its reply that this subsection comes into play in this case because "Plaintiffs refuse to supplement and amend their erroneous responses."[20]

Subsection (B) allows the court to order supplementation even where supplementation is not required under subsection (A). For example, in *Pacific Railway Co. v. Grede Foundries, Inc.*,[21] Magistrate Judge Donald W. Bostwick ordered a plaintiff to supplement its answer to an

---

[15](...continued)
*Practice* § 26.131[1] p. 26-299 (3d ed. 1997) ("The duty to supplement generally does not extend to disclosures made as part of deposition testimony.")

[16]Fed. R. Civ. P. 26(e), 1993 amendments, advisory committee's notes.

[17]Fed. R. Civ. P. 26(e), 2007 amendments, advisory committee's note.

[18]*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, No. 04-CV-1798 (CPS), 2009 WL 1617773, at *5 (E.D.N.Y. June 9, 2009) (citing Fed. R. Civ. P. 26(e) 1993 amendment, advisory committee's note); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004).

[19]Fed. R. Civ. P. 26(e)(1)(B).

[20]Def.'s Reply (doc. 457) at 8.

[21]No. 07-1279-MLB-DWB, 2008 WL 4148591 (D. Kan. Sept. 3, 2008).

interrogatory asking the plaintiff to identify all witnesses supporting one of its contentions, even though the identities of additional witnesses had been made known to the defendant through depositions.  The Court ordered supplementation because the plaintiff had stated in its interrogatory response that it would supplement its response "as additional information becomes known."[22]

### B.    William Gipson

#### 1.    The discovery at issue

Defendant moves to compel Mr. Gipson to amend and supplement his answers to Interrogatories No. 3 and 5.

Interrogatory No. 3 seeks the following information:

Identify each calendar week you claim you worked overtime while employed by SWBT during the last five years, and for each calendar week you claim you worked overtime, state your job title, supervisor, and location where you worked overtime during the calendar week, the number of overtime hours you worked, your start time and end time for work at SWBT.[23]

In his answer to Interrogatory No. 3, Mr. Gipson stated that he "worked unpaid time every week that I worked for Southwestern Bell.  I worked unpaid time of 15- 20 minutes every morning prior to the start of my scheduled shift to get my computer programs running . . . at the start of my shift."[24]  He also stated that he "spent unpaid time of 30-60 minutes weekly working during lunch."[25]

---

[22]*Id.* at 11.  *See also Hess v. Ameristep*, No. 06-3267, 2008 WL 4936726, at *3 (C.D. Ill. Nov. 17, 2008) (party ordered to provide supplemental Rule 26(a)(2) expert report even where expert's supplemental opinions were made known to the opposing party through the experts' second deposition).

[23]Interrog. No. 3, attached as Ex. A. to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[24]Gipson Answer to Interrog. No. 3, attached as Ex. D to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[25]*Id.*

In addition, he stated that "[e]ach week I have worked at Southwestern Bell during the last five years, I have worked an average of 120 minutes unpaid time."[26]

Interrogatory No. 5 asks Mr. Gipson to "[s]tate the dollar amount of damages you claim, and provide a computation and explanation of the damages you seek in this Action."[27]  In his answer to Interrogatory No. 5, he stated his damages as follows:

> I claim $70.77 per week (2 hours per week multiplied by time-and-a half multiplied by my regular pay rate of $23.59 per hour) for the 108 weeks I worked between the date three years before I filed this lawsuit in January 2008 and the date I stopped working for Southwestern Bell in March 2007, for a total of $7,643.16 in compensatory damages.  I claim an equal amount in statutory liquidated damages.[28]

Defendant asserts that Mr. Gipson initially testified in his deposition that his interrogatory answers were truthful and accurate but then "eventually admitted his answers to SWBT's Interrogatories were incomplete, inaccurate, and required amendment."[29]  Defendant does not explain in what way Mr. Gipson's interrogatory answers are incomplete, inaccurate, or require amendment.  Instead, Defendant refers the Court to certain portions of Mr. Gispon's deposition testimony.    In those portions of his deposition, Mr. Gipson was questioned regarding his answers to Interrogatories No. 3 and 5.  With respect to Interrogatory No. 3, he testified that he had not worked for SWBT for a total of five years.[30]  He also testified that during his period of employment

---

[26]*Id.*

[27]Interrog. No. 5, attached as Ex. A. to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[28]Gipson Answer to Interrog. No. 5, attached as Ex. D to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[29]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 3.

[30]Gipson Dep., attached as Ex. E. to doc. 399, p. 196, lines 12-17.

with SWBT he did not work every week because some weeks he was off for vacation.[31]  He testified consistent with his interrogatory answer that he worked about 120 minutes unpaid worktime each week that he did work.[32]  However, he also testified that he should have included in his interrogatory answer that he was not paid for the time he worked during his rest breaks.  He admitted that his interrogatory answer "probably need[s] to be amended" because it did not include the unpaid rest break time.[33]  At the same time, however, he testified that the amount of time he worked during his rest breaks "would have been included with [his] average of 120 minutes of unpaid time per work week."[34]  When asked if "[i]t's possible that your interrogatory answers are inaccurate," he responded:  "Only by the exclusion of that one item,"[35] referring to the need to include unpaid time that he worked during breaks in his answer to Interrogatory No. 3.

Mr. Gipson also testified that if he were to change his answer to Interrogatory No. 3 he would need to change his answer to Interrogatory No. 5.[36]  He did not testify as to how he would change his answer, however.

## 2. *The parties' arguments*

Defendant contends that Mr. Gipson has a duty to supplement his answers to both Interrogatories No. 3 and 5.  Defendant argues that Rule 26(e) requires Mr. Gipson to supplement his answers to Interrogatories No. 3 and 5 because he testified in his deposition that his answers

---

[31]*Id.*, p. 196, lines 18-25; p. 197, lines 1-2.

[32]*Id.*, p. 198, lines 14-21.

[33]*Id.*, p. 198, lines 22-25; p. 199, lines 1-18.

[34]*Id.*, p. 199, lines 19-23.

[35]*Id.*, p. 199, lines 14-16.

[36]*Id.*, p. 242, lines 2-4.

were incomplete, inaccurate, and needed to be supplemented. Plaintiffs counter that supplementation is not required because Defendant became aware of the claimed "additional or corrective information" through Mr. Gipson's deposition testimony. In addition, Plaintiffs assert the following:

> Plaintiffs have agreed to provide SWBT with final damage claims from each Plaintiff, but not until SWBT produces all the information necessary to determine such damages for all Plaintiffs, including (1) electronic time records and payroll information so that Plaintiffs' counsel do not have to wade through tens of thousands of pages of information with a calculator; and (2) computer log-in information and security badge-swipe data showing when Plaintiffs arrived at work and began logging into their computer.[37]

According to the latest Scheduling Order, Defendant is not required to produce these payroll and time records until 90 days after the close of the opt-in period. Plaintiffs argue that until that time, Mr. Gipson, as well as the other Plaintiffs, should not be required to supplement their interrogatory responses regarding their hours worked and claimed damages.

### 3.   Analysis

Mr. Gipson has an obligation to supplement his answers to Interrogatories No. 3 and 5 under Rule 26(e)(1)(A) to the extent that (1) his responses are in some material respect incomplete or incorrect, and (2) Defendant has not already been made aware, through Mr. Gipson's deposition testimony, of the "additional" or "corrective" information. In addition, the Court may order Mr. Gipson to supplement his answers pursuant to Rule 26(e)(1)(B) even though supplementation is not required under subsection (A).

---

[37]Pls.' Mem. in Opp's to Mot. to Compel (doc. 429) at 15-16.

The Court has reviewed the portions of Mr. Gipson's deposition testimony that Defendant has provided in its briefing to determine whether (1) his interrogatory responses are incomplete or incorrect, and (2) whether his testimony satisfies the "otherwise made known" provision of Rule 26(e)(1)(A). The Court finds Mr. Gipson's testimony is somewhat unclear with respect to the information that was requested in both Interrogatories No. 3 and No. 5. Also, Mr. Gipson testified that he had not included in his answer to Interrogatory No. 3 the time he spent working during his rest breaks and that the failure to include that time in his answer rendered his answer incomplete. He also testified that he did not work at SWBT for an entire five-year period and that there were weeks during the actual time he was employed at SWBT when he did not work because he was on vacation.

Interrogatory No. 3 asked Mr. Gipson to "identify each calendar week" during which he allegedly worked overtime "while employed by SWBT during the last five years." Mr. Gipson never went on to testify about the number of weeks he was on vacation or what weeks during the requested five-year period he was actually employed by SWBT. Thus, the Court cannot conclude that the additional and "corrective" information has "otherwise been made known" to Defendant, and the exception to the supplementation rule does not apply to Interrogatory No. 3. The Court therefore holds that Mr. Gipson should be required, pursuant to Rule 26(e)(1)(A), to supplement his answer to Interrogatory No. 3.

The Court also finds that supplementation is appropriate pursuant to Rule 26(e)(1)(B). The Court finds the instant situation analogous to that in *Pacific Railway, supra,*[38] where Magistrate Judge Bostwick ordered the plaintiff to supplement its interrogatory answer pursuant to Rule

---

[38]No. 07-1279-MLB-DWB, 2008 WL 4148591 (D. Kan. Sept. 3, 2008).

26(e)(1)(B), where the plaintiff's answer stated that it would supplements its response "as additional information becomes known."[39]   In this case, Mr. Gipson stated on the record that his answer to Interrogatory No. 3 was incomplete and probably needed to be amended because it is incomplete.

The Court also finds that supplementation of Mr. Gipson's answer to Interrogatory No. 5. is appropriate.  Mr. Gipson testified that if he were to change his answer to Interrogatory No. 3, he would also need to change his answer to Interrogatory No. 5.  He did not testify, however, as to how he would change his answer to Interrogatory No. 5. The Court therefore holds that supplementation is required pursuant to both subsections (A) and (B) of Rule 26(e)(1).

In light of the above, the Court directs Mr. Gipson to review his deposition testimony along with his answers to Interrogatories No. 3 and 5, and to supplement those answers based on the information *known to him at the present time*.[40]   To the extent Mr. Gipson learns additional information from the payroll and time records Defendant may later produce, Mr. Gipson should determine whether any additional Rule 26(e)(1)(A) supplementation may be needed at that time.

## C.   Linda Hall

### 1.   The discovery at issue and the parties' arguments

Defendant moves to compel Linda Hall to amend and supplement her answers to Interrogatories No. 3 and 5, the same two interrogatories discussed above with respect to Plaintiff William Gipson.

Defendant contends Ms. Hall's answers to Interrogatories No. 3 and 5 contradict information she provided in her Department of Labor complaint regarding the amount of time she spent working

---

[39]*Id.* at *11.

[40]*See Bohannon v. Honda Motor Co., Ltd.*, 127 F.R.D. 536, 538 (D. Kan. 1989) (party has "duty to answer the interrogatory with whatever information he has" at the present time.

off the clock each morning before her scheduled shift.  Ms. Hall testified in her deposition that she told the Department of Labor that her shift start time was 8:00 a.m. and that she arrived at work at 7:50 a.m. each day.[41]  In other words, the very most she could have worked off the clock prior to her shift start was 10 minutes.  She further testified that she did not lie to the Department of Labor.[42]  Yet, in her response to Interrogatory No. 3, Ms. Hall stated that she "worked unpaid time of 15-20 minutes every morning prior to the start of my scheduled shift."[43]

In her response to Interrogatory No. 3, she further stated that she "worked an average of 100 minutes unpaid time" per work week, which included those unpaid 15-20 minutes of pre-shift work every morning.[44]  In her response to Interrogatory No. 5, she stated:  "I claim $59.07 per week (1 2/3 hours per week multiplied by time-and-a-half multiplied by my regular pay rate . . . ."[45]

Defendant also argues that Ms. Hall's interrogatory answer regarding her job title is incorrect.  Interrogatory No. 3 also asked Plaintiffs to identify her job title.  Ms. Hall directed Defendant to her answer to Interrogatory No. 2 where she states that her job title at SWBT "was always customer service representative."[46]  In her deposition, Ms. Hall testified, however that her

---

[41]Hall Dep., attached as Ex. G. to doc. 399, p. 364, lines 1-25; p. 365, lines 1-6.

[42]*Id*., p. 365, lines 7-9.

[43]Hall Answer to Interrog. No. 3, attached as Ex. H to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[44]*Id.*

[45]*Id*., Hall Resp. to Interrog. No. 5.

[46]*Id*., Hall Resp. to Interrog. No. 2.

job title was "service representative" and not "customer service representative" and that she had made a mistake in her response to Interrogatory No. 2.[47]

Defendant contends that Ms. Hall should be required to supplement or amend her interrogatory answers to correct these discrepancies. Plaintiffs disagree, and assert that "Ms. Hall can explain the purported discrepancy [relating to the unpaid hours worked] to the jury, but this does not require her to supplement her interrogatory response."[48]  Plaintiffs also argue that the discrepancy regarding Ms. Hall's job title is so trivial as to not require supplementation.

2.     *Analysis*

The Court finds that Ms. Hall has, through her deposition testimony, provided Defendant with her correct job title. Ms. Hall has therefore satisfied the "otherwise made known" provision of Rule 26(e)(1)(a). Supplementation to correct her job title is therefore unnecessary.

The same cannot be said regarding the amount of time Ms. Hall claims she worked for SWBT, as there does appear to be a material inconsistency between her answer to interrogatory No. 3 and her deposition testimony regarding the amount of time Ms. Hall alleges she worked prior to the beginning of her shift. Because Ms. Hall does not clarify this discrepancy in her deposition, the Court cannot find that the corrective information has "otherwise been made known" to Defendant. Accordingly, the exception to the supplementation requirement does not apply. The Court therefore directs Ms. Hall to review her deposition testimony and answers to Interrogatory Nos. 3 and 5, and to supplement her answers where necessary. Again, Ms. Hall's supplementation, if any, should be based on the information known to her *at the present time*.

---

[47]Hall Dep., attached as Ex. G. to doc. 399, p. 362, lines 3-18.

[48]Pls.' Mem. in Opp'n to Mot. to Compel (doc. 429) at 5.

**D.     Jessica Weir**

*1.     The discovery at issue and the parties' arguments*

Defendant moves to compel Jessica Weir to amend and supplement her answers to Interrogatories No 3 and 5 (same as discussed above), as well as Interrogatory No. 6.  Defendant asserts that Ms. Weir's answers to Interrogatories No. 3  needs to be supplemented because Ms. Weir testified  that (1) the amount of her unclaimed work time was an "approximation"; (2) she "worked with counsel" on her answer to Interrogatory No. 3; and (3) her answer to Interrogatory No. 3 was "not exactly accurate."[49]  Defendant also argues that her answer to Interrogatory No. 5 needs to be modified because she testified that her damages calculation "possibly" needs to be modified to account for the days she was not present at work.[50]

In her answer to Interrogatory No. 3, Ms. Weir states, in pertinent part:  "Each week I have worked at Southwestern Bell in the last five years, I have worked an average of approximately 150 minutes unpaid time."[51]  She testified at her deposition, however, that there were weeks that she would not have worked 150 minutes unpaid time because she was on vacation, on disability leave, or otherwise absent from work.[52]

In her answer to Interrogatory No. 5, Ms. Weir states that she is claiming "an estimated $28,125.00 in damages," and that she claims "$93.75 per week (2.5 hours per week multiplied by

---

[49]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 5 (quoting Weir Dep., attached as Ex. K to doc. 399, p. 142, line 23 through p. 147, line 17).

[50]*Id.* (quoting Weir Dep., p. 153, lines 15-20).

[51]Weir Resp. to Interrog. No. 5, attached as Ex. J to doc. 399.

[52]Weir Dep., attached as Ex. K, p. 145, lines 3-25; p. 146, lines 1-25; p. 147, lines 1-24.

time-and-a-half multiplied by my regular pay rate" which represents the amount of unpaid time on a weekly basis "for 150 weeks during the three years prior to my joining this suit."[53]   When asked at her deposition whether her calculations in response to Interrogatory No. 5 might need to be modified  based on the fact that there were weeks in which she didn't actually work, she answered: "Minimal, but yes, or possibly."[54]

Plaintiffs argue that Ms. Weir should not have to supplement her answers to Interrogatories No. 3 and 5 because Ms. Weir's answer to Interrogatory No. 3 and her deposition testimony make it clear that her claims for unpaid work time and damages are approximations, based on her memory and daily routine.   Plaintiffs maintain that when Defendant produces its payroll and time records, Ms. Weir will be able to consult those records to determine what weeks she actually worked, and she can supplement her interrogatory answer at that time, if necessary.

　　　　　2.　　　*Analysis*

The Court disagrees with Defendant that Ms. Weir's answer to Interrogatory No. 3 requires supplementation because she testified that she had "worked with counsel" on her answer.  There is nothing inappropriate about a party and his/her counsel working together to answer an interrogatory, as Defendant suggests.   In fact, the "assistance of counsel is clearly contemplated" by Rule 33(b)(3),[55] which states that ""[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections."[56]   It is a common practice for attorneys to help their clients

---

[53]Weir Resp. to Interrog. No. 5, attached as Ex. J to doc. 399.

[54]Weir Dep., attached as Ex. K to doc. 399, p. 153, lines 15-20.

[55]*Exxon Corp. v. Fed. Trade Comm'n*, 384 F. Supp. 755, 758, n.3 (D.C. D.C. 1974) (quoting Fed. R. Civ. P. 33)).

[56]Fed. R. Civ. P. 33(b)(5).

16

prepare their interrogatory answers, particularly in complicated cases or where the interrogatories seek damages information and calculations, as in this case.[57]  For Defendant to even imply that Ms. Weir's interrogatory answer is somehow improper because she "worked with counsel" on it is frivolous.[58]

The Court, however, does hold that Ms. Weir needs to supplement her answer to Interrogatory No. 3 to indicate the specific weeks during which she claims she worked overtime. Although Ms. Weir's deposition testimony informed Defendant that Ms. Weir did not work unpaid time *every single week or day* of her employment with SWBT because there were weeks and days when she was on disability leave, vacation, or other leave, Ms. Weir still needs to identify the specific weeks she claims she worked unpaid overtime.  As in the case of Mr. Gipson, Ms. Weir has not provided sufficient additional or "corrective" information about the weeks she claimed she worked in order to meet the exception to supplementation under Rule 26(e)(1)(A).  The Court therefore holds that Ms. Weir is required, pursuant to Rule 26(e)(1)(A), to supplement her answer to Interrogatory No. 3.  Ms. Weir shall supplement her answer to the interrogatory using the information known to her at the present time.  If additional supplementation is necessary after

---

[57]*See* 6 James Wm. Moore, *Moore's Federal Practice*, § 33.104[1] ("Courts are aware that a party often will receive assistance from counsel in the preparation of responses to interrogatories, particularly complex interrogatories or those requesting opinions or contentions."); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2172 at 282-83 (2d ed. 1994) ("Interrogatories addressed to an individual party must be answered by that party.  It is improper for the party's attorney to answer them, though undoubtedly the common practice is for the attorney to prepare the answers and have the party swear to them").  *See also Leumi Fin. Corp. v. Hartford Acc. & Indem. Co.*, 295 F.Supp. 539, 543 (D.C.N.Y. 1969) ("Particularly in complex cases . . . it is unrealistic to suppose that a party draws answers to interrogatories himself.").

[58]*See Exxon,* 384 F. Supp. at 758 (holding objection frivolous where plaintiff objected that party "did not personally and independently answer Plaintiff's interrogatories but was assisted by two attorneys.").

Defendant produces its payroll and other records, then further supplementation should be made at that time.

The same is true with respect to Ms. Weir's answer to Interrogatory No. 5. Given Ms. Weir's testimony that there were weeks in which she did not work at all, her answer to Interrogatory No. 6, which is based on the assumption that she worked every work day in every work week, needs to be revised to take into account the days and weeks she did not work. The Court therefore also directs Ms. Weir to supplement her answer to Interrogatory No. 5. Again, Ms. Weir's supplementation should be based on the information known to her at the present time.

The Court now turns to Interrogatory No. 6, which asks Plaintiff to "[i]dentify all current or former SWBT employees with whom you have had contact or communication about the claims you make in this Action, and provide the date of each communication, the person initiating the communication, the substance of each communication, and whether each communication was documented."[59] In response to Interrogatory No. 6, Ms. Weir identified several individuals. At her deposition, she testified that she also communicated with Jennifer Pritchard, whom she had failed to identify in her interrogatory response.[60] The Court holds that supplementation of Ms. Weir's answer to Interrogatory No. 6 is not required. Through Ms. Weir's deposition testimony, Defendant is now aware of this additional, corrective information. The Motion to Compel is therefore denied as to Ms. Weir and her answer to Interrogatory No. 6.

### E.    Tracy Groth

#### 1.    The discovery at issue and the parties' arguments

---

[59] Interrog. No. 6, attached as Ex. A. to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[60] Weir Dep., attached as Ex. K to doc. 399, p. 153, lines 21-25; p. 154, lines 1-12.

Defendant moves that Tracy Groth be required to amend and supplement her answers to Interrogatories No. 3 and 5, asserting that she testified that her interrogatory answers are inaccurate and she equivocated about the amount of unpaid time she worked each week as reported in her answer to Interrogatory No. 3. Plaintiffs counter that Ms. Groth testified that she answered the interrogatories to the best of her knowledge and that she will be in a position to supplement her answers after Defendant produces its payroll and time records.

In response to Interrogatory No. 3, Ms. Groth stated in pertinent part: "I have worked unpaid time of 30 minutes every morning prior to the start of my scheduled shift. . . ."[61] During her deposition, however, Ms. Groth testified that "possibly" there were times when she worked less than 30 minutes prior to the start of her shift.[62] Also, in response to the deposition question "You didn't work unpaid time of 30 minutes every morning prior to the start of your shift, did you?" she responded: "I'm not saying every morning. It could have been from 15 to 30 minutes."[63] But she also testified that it was "more than likely" that she was working "30 minutes prior to shift."[64]

In her answer to Interrogatory No. 3, Ms. Groth stated that "I have also worked at least 15 minutes unpaid time at the end of every day. . . ."[65] She testified in her deposition, however, that she did not work to the end of her shift each and every day because there were days when she left

---

[61]Groth Resp. to Interrog. No. 3, attached as Ex. M to doc. 399.

[62]Groth Dep.,attached as Ex. L to doc. 399,  p. 146, lines 21-23.

[63]*Id*., p. 147, lines 12-16.

[64]*Id*, p. 148, lines 11-14.

[65]Groth Resp. to Interrog. No. 3, attached as Ex. M to doc. 399.

work early.[66] She also testified that there were weeks when she was not at work every day.[67]  She also testified that her response to Interrogatory No. 5 is inaccurate given the above.[68]

 2.     *Analysis*

The Court finds that there are discrepancies between Ms. Groth's answers to Interrogatories No. 3 and 5 and her deposition testimony.  The Court further finds that Ms. Groth's deposition testimony does not provide the required "corrective" information regarding what work weeks she actually worked (responsive to Interrogatory No. 3) and regarding the amount her damages (responsive to Interrogatory No. 5).  Furthermore, Ms. Groth's testimony as to the number of hours she allegedly worked off-the-clock (responsive to Interrogatory No. 3) is also unclear and equivocal, and fails to provide the necessary "corrective" information.  Accordingly, the Court directs Ms. Groth to supplement her answers to Interrogatories No. 3 and 5, based on the information presently known to her.

**F.     Barbara Farrington**

 1.     *The discovery at issue and the parties' arguments*

Defendant moves to compel Barbara Farrington to amend and supplement her answers to Interrogatories No. 2 and 5.  Defendant seeks supplementation because Ms. Farrington testified in her deposition that (1) her answer to Interrogatory No. 2 was incorrect because she provided the wrong job title; and (2) her answer to Interrogatory No. 3 was incorrect because she used the wrong hourly rate to calculate her damages.   Plaintiffs counter that Ms. Farrington answered the

---

[66]Groth Dep.,attached as Ex. L to doc. 399,  p. 149, lines 11-25; p. 150, lines 1-11.

[67]*Id.*, p. 150, lines 20-22.

[68]*Id.*, p. 189, lines 12-25.

interrogatories to the best of her ability and that she will be in a better position to supplement them after Defendant has produced its payroll and time records.

Interrogatory No. 2 asks Plaintiff to identify, *inter alia*, her "job titles" while employed at SWBT during the last five years.[69]  In response to Interrogatory No. 2, Ms. Farrington stated that her job title has been "customer service representative."[70]  Ms. Farrington testified in her deposition that her title "could be" "service representative," as opposed to "customer service representative."[71]  She also testified:  "I think we're referred to as both."[72]  After reviewing a 2006 performance appraisal document, however, she testified that it "appears" that since May 25, 2003 her job title has been "service representative."[73]

In response to Interrogatory No. 5, Ms. Farrington stated that she "claim[s] an estimated $14,090.00 in damages," based on the following:  "I claim $56.36 per week (1.5 hours per week multiplied by time-and-a-half multiplied by regular pay rate of $25.05 per hour) for 125 weeks during the 2½ years prior to January 2008."[74]  After reviewing pay records at her deposition, she testified that (1) she earned various different pay rates during that 2½ year time period rather than

---

[69]Interrog. No. 2, attached as Ex. A. to Def.'s Mem. in Supp. of Mot. to Compel (doc. 399).

[70]Farrington Resp. to Interrog. No. 2, attached as Ex. P to doc. 399.

[71]Farrington Dep.,attached as Ex. O to doc. 399,  p. 32, lines 12-14.

[72]*Id*., line 14.

[73]*Id*., p. 83, lines 1-21.

[74]Farrington Resp. to Interrog. No. 5, attached as Ex. P to doc. 399.

the $25.05 figure used in her interrogatory answer; and (2) it would be appropriate for her to use a different rate of than $25.05 for the period leading up to January 1, 2008.[75]

        2.     *Analysis*

The Court holds that supplementation of Ms. Farrington's answer to Interrogatory No. 2 is not required, as Ms. Farrington provided Defendant with her correct job title during her deposition. Because Defendant now knows this "corrective" information, Rule 26(e)(1)(A) does not require supplementation.

With respect to Interrogatory No. 5, Ms. Farrington's deposition testimony makes it clear that her hourly rate varied over the course of her employment with SWBT. To the extent Ms. Farrington has *present knowledge* of those different pay rates, she is required to supplement her answer to Interrogatory No. 5. If she does not have present knowledge of those varying rates, she is not obligated to supplement her answer at this time, and may supplement, if necessary, after Defendant provides Plaintiffs with its payroll and time records.

**G.    Danny Dandurand**

        1.     *The discovery at issue and the parties' arguments*

Defendant moves to compel Danny Dandurand to supplement and amend his answer to Interrogatory No. 3 because he admitted in his deposition that his answer is incomplete. He testified that he failed to include in his interrogatory answer various other tasks that he performed during the alleged unpaid periods of time. Defendant also moves to compel Mr. Dandurand to supplement and amend his answer to Interrogatory No. 5 because he admitted that the actual number of weeks he worked unpaid overtime was substantially lower than the number provided in his answer.

Plaintiffs argue that Mr. Dandurand's response to Interrogatory No. 3 does not require

---

[75]Farrington Dep., attached as Ex. O to doc. 399, p. 67, line 23 - p. 71, lines 20.

supplementation because the additional off-the-clock tasks he identified in his deposition were not required to be listed in response to Interrogatory No. 3.  With respect to Interrogatory No. 5, Plaintiffs argue that the scope of recoverable damages under the FLSA is a legal question and that it was entirely proper for Plaintiffs' counsel to assist Mr. Dandurand with his calculations and interrogatory answer.  Finally, Plaintiffs argue that Mr. Dandurand's answer to Interrogatory No. 5 is his best estimate and that he will be in a better position to supplement his calculations and answer after Defendant produces its payroll and time records

In his response to Interrogatory No. 3, Mr. Dandurand stated that he worked unpaid time of approximately ten minutes per day "working during lunch to do customer call backs."[76]  He also stated that he worked unpaid time of approximately ten minutes each day after his shift "to finish orders and billing."[77]  He testified in his deposition as to *additional* tasks that he performed during the alleged unpaid time periods.  He testified that during lunch he might also check DSL availability, call about repairs and finish orders, and he conceded that those tasks were not listed in his answer to Interrogatory No. 3.[78]  He also testified that he spent time after his shift ended handling customer calls, which again he did not provide in his response to Interrogatory No. 3.[79]  He never testified, however, that his performance of those additional tasks increased the amounts of unpaid work time that he listed in his interrogatory answer.

---

[76]Dandurand Resp. to Interrog. No. 3, attached as Ex. R to doc. 399.

[77]*Id.*

[78]Dandurand Dep., attached as Ex. Q to doc. 399,  p. 239, lines 7-17; p. 240, lines 4-25; p. 241, lines 1-13.

[79]*Id.*, p. 241, lines 14-25; p. 242, lines 1-22.

Mr. Dandurand's response to Interrogatory No. 5 states that he is claiming $19,017.60 in damages.[80]  His response further states:  "I claim $90.56 per week (2.5 hours per week multiplied by time-and-a-half multiplied by my regular rate of $24.15 per hour) for 105 weeks I worked between the date three years before I opted into this lawsuit and the date I stopped working" for SWBT.[81]  He testified that he did not "come up with" the 105-week total himself, and that it was "put together by my attorney."[82]  He also testified that the 105-week total [c]ould be short; could be long."[83]  After reviewing various SWBT records, Mr. Dandurand testified that the 105-week figure was a "guesstimate."[84]  Based on the records that he reviewed during the deposition, he testified that he had worked only 71 full weeks and not the 105 weeks stated in his interrogatory answer.[85]  He further testified that the various figures he used in his answer to Interrogatory No. 5, he "came up with in concert with" his lawyer.[86]

### 2.  Analysis

The Court holds that supplementation of Mr. Dandurand's answer to Interrogatory No. 3 is not required.  Interrogatory No. 3 does not ask Mr. Dandurand to identify the tasks he performed during the alleged unpaid work time.  Rather, it merely asks him to (1) identify each calendar week during which he allegedly worked overtime, and (2) identify, for each such week, his job title,

---

[80]Dandurand Resp. to Interrog. No. 5, attached as Ex. R to doc. 399.

[81]*Id.*

[82]Dandurand Dep., attached as Ex. Q to doc. 399,  p. 248, lines 4-13.

[83]*Id.*, p. 248, lines 14-16.

[84]*Id.*, p. 332, lines 12- 19.

[85]*Id.*, p. 332, lines 20-25.

[86]*Id.*, p. 336, lines 6-8.

supervisor, location, number of overtime hours worked, and his starting and ending times.  While he responded by mentioning some tasks that he performed during each such week, he was not required to identify those tasks.  Furthermore, and more importantly, performance of those additional tasks did not increase the amount of unpaid time that he is claiming.  Thus, the fact that he identified additional tasks in his deposition did not render his answer to Interrogatory No. 3 incomplete or incorrect "in some material respect" for purposes of applying Rule 26(e)(1).  Even if the Court were to find the answer materially incomplete or incorrect, the Could would still find that Defendant has been made aware of the additional and corrective information through Mr. Dandurand's deposition testimony, and, thus, supplementation is not required.  The Court therefore denies the Motion to Compel as to Interrogatory No. 3.

With respect to Interrogatory No. 5, the Court rejects Defendant's suggestion that Mr. Dandurand's answer is improper because counsel performed the calculations and assisted him in answering it.  As discussed above in Part III.D.2. *supra*, the assistance of counsel in preparing interrogatory answers is commonplace and is even contemplated by Rule 33.  In fact, the Court would be surprised if Plaintiffs' counsel were not involved in the preparation of these calculations and Mr. Dandurand's answer to Interrogatory No. 5.  Thus, supplementation is not required merely because counsel prepared the calculations or assisted in the preparation of his answer to Interrogatory No. 5.  Supplementation is, however, required for another reason.  Mr. Dandurand testified, based on the records he reviewed at his deposition, that he worked only 71 full weeks rather than the 105 weeks stated in his answer to Interrogatory No. 5.  This would require a recalculation of Mr. Dandurand's damages and supplementation of his answer to Interrogatory No. 5.  Mr. Dandurand is therefore directed to supplement his answer to Interrogatory No. 5.  His supplementation should be based on the information known to him at the present time.

H.   **Stephanie Vasina**

1.   *The discovery at issue and the parties' arguments*

Defendant moves to compel Stephanie Vasina to amend and supplement her answers to Interrogatories No. 3 and 5.  Defendant contends that Ms. Vasina's answer to Interrogatory No. 3 is incomplete because it does not identify all of the tasks she allegedly performed "off the clock." Defendant therefore moves to compel Ms. Vasina to list those additional tasks.  Defendant also argues that supplementation of both Interrogatories No. 3 and 5 is required because Ms. Vasina's deposition testimony contradicts her interrogatory answer that she worked unpaid time approximately 30 minutes every morning prior to the beginning of her scheduled shift.

Plaintiffs argue that Ms. Vasina's answer to Interrogatory No. 3 in not incomplete because it does not ask her to identify the tasks that she performed while she worked off-the-clock.  Further, Plaintiffs argue that Ms. Vasina's answer to Interrogatory No. 5 indicates that it is an approximation and that Defendant is wasting this Court's time by arguing that an "approximation" is an "incorrect" interrogatory answer that requires supplementation under Rule 26(e)(1)(A).

2.   *Analysis*

As in the case of Plaintiff Dandurand, Interrogatory No. 3 does not ask Ms. Vasina to identify the tasks that she performed for which she claims she was not paid overtime.  Thus, Ms. Vasina's answer is not incomplete or incorrect in a "material respect" and there is no basis to compel Ms. Vasina to supplement her interrogatory answer to list all of the tasks she allegedly performed "off the clock."  In any event, Defendant is now aware of this additional information through Ms. Vasina's deposition testimony.  Thus, even if the Court were to find her answer to Interrogatory No. 3 to be incomplete or incorrect in some "material respect," the Court would still find

26

supplementation unnecessary since this "corrective" and additional information is now known to Defendant.  The Court therefore denies the Motion to Compel with respect to this issue.

With respect to Ms. Vasina's alleged pre-shift work, the Court grants the Motion to Compel. Ms. Vasina stated in response to Interrogatory No. 3 that she "worked unpaid time of approximately 30 minutes every morning prior to the start of [her] scheduled shift."[87]  At her deposition, however, she testified that there "might be some mornings" where she did not get into work as early as 30 minutes before her scheduled shift.[88]   Ms. Vasina did not testify as to how many mornings she did not work 30 minutes of unpaid work prior to her shift.  Thus, the Court cannot conclude that this information has "otherwise been made known" to Defendant through her deposition testimony.  The Court will therefore direct Ms. Vasina to supplement her answer to Interrogatory No. 3, at least to the extent that Ms. Vasina presently possesses any additional information about mornings where she arrived less than 30 minutes before her scheduled shift.  In the event Ms. Vasina  supplements her answer to Interrogatory 3, she shall also supplement her answer to Interrogatory No. 5 to provide an amended calculation of her damages.  The Court therefore grants the Motion to Compel as to this particular issue.

I.      **Tammy Squier**

1.      *The discovery at issue and the parties' arguments*

Defendant moves to compel Tammy Squier to amend and supplement her answers to Interrogatories No. 3 and 5.  Defendant asserts that Ms. Squier should be required to supplement her answer to Interrogatory No. 3 because she admitted in her deposition that "the underlying facts in

---

[87]Vasina Resp. to Interrog. No. 3, attached as Ex. U to doc. 399.

[88]Vasina Dep., attached as Ex. T to doc. 399,  p. 219, lines 1-4.

her answer are incorrect."[89]  Defendant also argues that Ms. Squier should be required to supplement her answer to Interrogatory No. 5 because she testified that her hourly rate was lower than the $25.05 figure she used to calculate her damages.

Plaintiffs argue that Ms. Squier's interrogatory answers state that they are approximations and therefore do not require supplementation at this point in time.  Plaintiffs represent that Ms. Squier will supplement her answers after Defendant produces its payroll and time records.

Ms. Squier stated in response to Interrogatory No. 3 that "prior to six months ago, I worked unpaid time of approximately 60 minutes every morning prior to the start of my scheduled shift . . . ."[90]  She also stated that "[p]rior to six months ago, each week I worked at Southwestern Bell in the last five years, I worked an average of approximately 330 minutes unpaid time."[91]  In her deposition, however, she testified that there was a time period where she was car pooling and she did not get to work until 45 minutes prior to her scheduled shift.[92]  She also testified that there were some weeks where she worked only three days, and, as a result, she could not have worked 330 minutes off-the-clock those weeks.[93]

In response to Interrogatory No. 5, Ms. Squier stated that she is claiming "an estimated $50,667.50 in damages."[94]  She further stated:

---

[89]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 9.

[90]Squier Resp. to Interrog. No. 3, attached as Ex. W to doc. 399.

[91]*Id.*

[92]Squier Dep., attached as Ex. V to doc. 399, p. 174, lines 11-22.

[93]*Id.*, p. 199, lines 2-25; p. 200, lines 1-23.

[94]Squier Resp. to Interrog. No. 5, attached as Ex. W to doc. 399.

> I claim $206.66 per week (5.5 hours per week multiplied by time-and-a-half multiplied by my regular pay rate of $25.05 per hour) for 115 weeks (not counting 6 weeks I had off in 2007 and 4 weeks I had off in 2006 for medical leave) during the 2 ½ years prior to 6 months ago.  I claim $62.75 per week (1.67 hours per week multiplied by time-and-a-half multiplied by my regular pay rate of $25.05 per hour, for 25 weeks in the recent six months prior to my joining this suit . . . .[95]

Ms. Squier testified in her deposition that during a portion of  "the last three-year period" that she worked for Defendant, her hourly rate was actually lower than the $25.05 rate she used in her interrogatory answer but that she does not know what the correct rate is.[96]  In her deposition, she also agreed with Defendant's counsel that there was not a total of 115 weeks during the 2 ½  year period where she actually worked 330 unpaid minutes,[97] as stated in her interrogatory answer.

      2.      *Analysis*

The Court agrees with Defendant that the discrepancies between Ms. Squier's deposition testimony regarding (1) the number of weeks she actually worked, and (2) the number of unpaid minutes she actually worked prior to each shift and per each work week require Ms. Squier to supplement her answer to Interrogatory No. 3.  The Court also agrees that Ms. Squier's testimony regarding her hourly rate requires supplementation of her answer to Interrogatory No. 5, at least to the extent she has any present knowledge of the correct hourly figure(s).  Also, the Court finds that Ms. Squier must supplement her answer to Interrogatory No. 5 to revise her damage calculations to reflect any changes Ms. Squier makes to her answer to Interrogatory No. 3 about the number of unpaid hours and weeks worked.  Thus, the Court grants the Motion to Compel as to Ms. Squier.

**J.      Tina Stoddard**

---

[95]*Id.*

[96]Squier Dep., attached as Ex. V to doc. 399, p. 186, lines 13-25; P. 187, lines 1-5.

[97]*Id.*, p. 207, lines 2-6.

Defendant's Motion is not specific as to the relief sought with respect to Ms. Stoddard. Defendant's Motion merely states that the Court should enter an order that "Plaintiff Stoddard shall amend and supplement her answers so they are complete and accurate."[98]  In its supporting brief, Defendant provides scant information.  It states: "Although Plaintiff Stoddard signed her Interrogatory answers, and she believed her interrogatory answers are correct, she acknowledges her answers are incomplete."[99]  Defendant then cites to three pages of her deposition testimony.[100]  In that portion of her deposition, Ms. Stoddard testified that she should have included "checking e-mails" during her lunch period as part of the unpaid work time identified in her response to Interrogatory No. 3.

As discussed above, Interrogatory No. 3 does not ask Plaintiffs to identify the tasks they performed during the periods of time they claim they worked overtime.  Thus, there is no need for Ms. Stoddard to supplement her interrogatory response to include this task.  Even if this information were responsive to the interrogatory and deemed to be incorrect in some "material respect," Defendant is now aware of this additional information, and supplementation would not be required. The Motion to Compel is therefore denied as to Ms. Stoddard.

**K.    Dawn Erwin**

Defendant's Motion does not indicate what interrogatory answers it seeks to compel Ms. Erwin to supplement.  In its supporting brief, Defendant merely states that Ms. Erwin "testified the amount of time she claimed to work 'off the clock' [in her response to Interrogatory No. 3] 'was

---

[98]Def.'s Mot. to Compel (doc. 398) at 2.

[99]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 10.

[100]*Id.*

worked on with' her and her lawyers."[101]   Defendant then cites to two pages of her deposition testimony.

In that cited portion of her deposition, Ms. Erwin testified that her response to Interrogatory No. 3, in which she states that "[e]ach week I have worked at Southwestern Bell in the last five years, I have worked an average of approximately 90 minutes unpaid time,"[102] was "an approximation."[103]  She also testified that the "approximation was worked on with myself and my lawyers."[104]

As the Court discussed above, there is nothing improper about Plaintiffs' attorneys working with their clients on their interrogatory answers or assisting in the calculation of their damages. Furthermore, there is nothing before the Court that would lead it to conclude that Ms. Erwin's testimony is inconsistent with her answer to Interrogatory No. 3, which would require supplementation of her answer.   The Motion to Compel is therefore denied as to Ms. Erwin.

## IV.   Should Defendant Be Allowed to Reopen the Depositions of Plaintiffs?

Defendant seeks to reopen the depositions of the above-mentioned Plaintiffs to question them regarding their amended and supplemental interrogatory answers.  The Court has denied Defendant's Motion to Compel to the extent it seeks to compel Tina Stoddard and Dawn Erwin to supplement and amend their interrogatory answers.  Defendant's request to reopen their depositions is therefore denied.  While the Court has granted the Motion to Compel, in part or in whole, with respect to the other eight Plaintiffs at issue, the Court finds that it would be premature to determine, at this point in time, whether their depositions should be reopened.

---

[101]*Id.*

[102]Erwin Resp. to Interrog. No. 3, attached as Ex. B to doc. 399.

[103]Erwin Dep., attached as EX. AA to doc. 399.

[104]*Id.*, p. 96, lines 17-18.

If and when these eight Plaintiffs supplement their interrogatory answers pursuant to this Order, Defendant should review their supplemental answers and determine whether reopening their depositions is still necessary.  If Defendant determines that reopening the depositions is still necessary, Defendant shall confer with Plaintiffs' counsel pursuant to D. Kan. Rule 37.2 and any applicable Federal Rules of Civil Procedure.  If the parties are unable to resolve their dispute, Defendant may renew its request to reopen their depositions and the Court will consider the request after proper briefing.

Accordingly, Defendant's Motion, to the extent it seeks to reopen the depositions of William Gipson, Linda Hall, Jessica Weir, Tracy Groth, Barbara Farrington, Danny Dandurand, Stephanie Vasina, and Tammy Squier, is denied without prejudice.

**V.      Should Plaintiffs' Counsel Be Required to Certify That Plaintiffs Have Searched for Documents Responsive to Defendant's Requests for Production, and Should Plaintiffs Be Required to Amend or Supplement Their Responses to Defendant's Requests?**

**A.      The Parties' Arguments**

As noted above, Defendant moves for an order compelling Plaintiffs' counsel to certify, within thirty days of the date of this Order, that they have given Plaintiffs Gipson, Hall, Groth, Dandurand, Squier, and Stoddard copies of Defendant's Requests for Production.  In addition, Defendant requests that  Plaintiffs' counsel certify that these six Plaintiffs "have searched for, and produced any, documents requested by SWBT, and . . . have read and agree with their amended responses to SWBT's Requests for Production of Documents."[105]  Although Defendant's Motion does not expressly request that Plaintiffs be ordered to amend or supplement their responses to the requests for production, this is implicit in Defendant's request that Plaintiffs' counsel be required to certify

---

[105]Def.'s Mot. to Compel (doc. 398) at 2.

that Plaintiffs have produced documents and have read and agreed with their amended responses to the requests.

Defendant contends that it is entitled to this relief pursuant to Rule 26(e)(1)(A), which applies not only to the supplementation of interrogatory answers but also to the supplementation of answers to requests for production. Defendant asserts that, based on the deposition testimony of several Plaintiffs indicating that they had not seen Defendant's request for production prior to being deposed, "[i]t is evident that Plaintiffs' counsel have not reviewed with the responding Plaintiffs each of SWBT's document requests."[106] Defendant also points out that some of Plaintiffs testified in their depositions that they had made no attempts to search for any documents. Defendant contends that these "halfhearted" and "ineffective" efforts in responding to Defendant's document requests leave Defendant unsure as to whether Plaintiffs have adequately searched for and produced all responsive documents.[107] Defendant maintains that it is unable to rely on Plaintiffs' responses to the requests for production. Thus, the only way Defendant can determine whether Plaintiffs have reviewed the document requests and searched for and produced all responsive documents in their possession, is for Defendant to depose each Plaintiff. Defendant contends that this is wholly impractical since more than fifteen hundred Plaintiffs have opted into the lawsuit.

Furthermore, Defendant complains that Plaintiffs have improperly refused to supplement their responses to the requests for production. Defendant contends that Plaintiffs have failed to produce their W-2 forms despite the fact that they are clearly responsive to Requests No. 6 and 20 and despite the fact that Plaintiffs acknowledged in their depositions that they had them in their possession.

---

[106]Def.'s Mem. in Supp. of Mot. to Compel (doc. 399) at 17.

[107]*Id*. at 19.

Defendant also complains that Ms. Hall has failed to produce an e-mail that she testified she would produce to supplement her response to Interrogatory No. 1.

The document requests served on each Plaintiff are identical.  Plaintiffs' responses were also virtually identical, with Plaintiffs responding to Requests No. 1-15 and 20 by stating that "[a]ny responsive documents will be produced."[108]  Plaintiffs asserted objections to Requests No. 16-17 and 21-22, but stated that certain documents would be produced subject to the objections.  Plaintiffs asserted privilege and work product objections to Requests No. 18 and 19.

The Court's review of the deposition testimony regarding the requests for production reveals the following:  William Gipson testified that he had not seen Defendant's request for production of documents before and that he did not remember receiving any "list of documents showing [him] what Southwestern Bell was asking for in this case."[109]  He testified that no one, prior to his deposition, had told him what documents to look for to produce to Defendant.[110]  Mr. Gipson did testify, however, that he had told his counsel what documents he possesses and that those are the only documents he has "with regards to [his] employment at Southwestern Bell."[111]

Linda Hall initially testified that she was not aware that Defendant had asked for any documents from her and that she had never seen any list of documents that Defendant had requested she produce.[112]  Later in her deposition, however, she testified that a few days prior to her deposition

---

[108]*See, e.g.*, Gipson's and Stoddard's Resp. to Req. for Produc., attached as Ex. F to doc. 399.

[109]Gipson Dep., attached as Ex. E to doc. 399, p. 255, lines 1-13.

[110]*Id.,* p. 263, lines 11-22.

[111]*Id*., p. 255, lines 14-25; p. 258, lines 15-25.

[112]Hall Dep., attached as Ex. G to doc. 399, p. 12, lines 12-17.

her counsel had informed her that Defendant had given her counsel a document request.[113]  During

her deposition, Ms. Hall also testified that she had an e-mail that she would produce to Defendant to

supplement her response to Interrogatory No. 1.[114]

Tracy Groth testified that she had seen Defendant's requests for production before the

deposition and that it may have been sent to her in the mail, but she couldn't remember for sure.[115]

At the same time, she testified she was "not aware" and she "can't recall" if she was given a list of

the documents that Defendant had requested.[116]  She further testified that she did not know what

documents Defendant wanted when she looked for documents to provide her counsel.[117]

Danny Dandurand testified that he had not seen Defendant's request for production until the

morning of his deposition.[118]  He also testified that "truthfully I do not remember this document

[referring to the request for production].  I may have received this document, but I do not remember

anything that's on this document."[119]  Further, he testified that he had been "asked to produce

anything that pertained to me while I was working at AT&T."[120]  Mr. Dandurand also testified that

he had W-2 forms in his possession which would be responsive to one of Defendant's requests, but

---

[113]*Id.*, p. 12, lines 18-25.

[114]*Id.*, p. 360 lines 5-25; p. 361, lines 1-22.  In her answer to Interrogatory No. 1, Ms. Hall represented that she would produce various documents in lieu of identifying them as requested by the interrogatory.

[115]Groth Dep., attached as Ex. L, at p. 249, lines 5-18.

[116]*Id.*, p. 249, lines 23-25; p. 250, lines 1-5.

[117]*Id.*, p. 250, lines 16-20.

[118]Dandurand Dep., attached as Ex. Q to doc. 399, p. 340, lines 2-16.

[119]*Id.*, p. 343, lines 12-15.

[120]*Id.*, p. 342, lines 1-2.

that he had not produced them because he had never received any direction from his attorneys to provide them.[121]

Tammy Squier testified that, at her counsel's direction, she "looked for anything that pertained to AT&T that [she] may have had at home."[122] Ms. Squier could not recall whether she had seen the list of documents that Defendant had requested from her in this case.[123]  She testified that she did not produce any of her W-2 forms, which would be responsive to one of Defendant's requests, because she "didn't think about it,[124] and she didn't know "that those were what was requested."[125]

Finally, Tina Stoddard testified that she was not sure whether she had seen Defendant's requests for production prior to her deposition.[126]  She further testified that she had not specifically looked for any of the documents sought in the requests.[127]  She admitted that she did have W-2 forms which had not been produced, and that she did not produce them because "I didn't think I would have to provide [them]."[128]

Plaintiffs argue that Defendant's accusation that Plaintiffs' attorneys have failed to fulfill their obligations with respect to the requests for production is unfounded.  Plaintiffs state in their Response

---

[121]*Id.*, p. 358, lines 24-25, p. 359, line 13 through p. 360, line 9.

[122]Squier Dep., attached as Ex. V to doc. 399, p. 155, lines 12-19.

[123]*Id.*, p. 217, lines 9-12.

[124]*Id.*, p. 158, lines. 10-13.

[125]*Id.*, p. 217, lines 20-24

[126]Stoddard Dep., attached as Ex. Y to doc. 399, p. 168, lines 10-11.

[127]*Id.*, p. 168, lines 20-23.

[128]*Id.*, p. 168, lines 12-19.

to the Motion to Compel that "Plaintiffs' counsel cover the requests with each Plaintiff and have produced the documents requested of each Plaintiff with the written responses to the document requests, or very shortly thereafter."[129]  Further, they state that numerous responsive documents have been produced; for example, Mr. Gipson has produced 86 pages of documents, and Ms. Hall has produced nearly 1,000 pages.  Plaintiffs argue that any failure to produce their W-2 forms was a merely an oversight.

Plaintiffs also represent in their response to the Motion to Compel that "[t]o the extent Plaintiffs locate any additional responsive documents in the future, Plaintiffs will supplement their production."[130]  At the same time, however, Plaintiffs argue that it is frivolous for Defendant to complain about Plaintiffs' failure to produce their W-2 forms when (1) the gross annual compensation that Defendant paid each Plaintiff as set forth on a W-2 form is not directly relevant to proving any claim or defense, and (2)  Defendant has always had in its possession the very same information.

Defendant argues in its reply brief that the W-2 forms have only been "sparsely produced," which the Court takes to mean that despite Plaintiffs'' representation that they would supplement their production, some of the Plaintiffs have still not produced their W-2 forms.  Further, Defendant argues that Plaintiffs should not be allowed to assert for the first time in response to Defendant's Motion to Compel that the W-2 forms are irrelevant.  Finally, Defendant argues that Plaintiffs' representation that counsel covers the document requests with each Plaintiff is belied by Plaintiffs' deposition testimony that they were unaware of the document requests.

**B.     Analysis**

---

[129]Pls.' Resp. to Mot. to Compel (doc. 429) at 2.

[130]*Id.*

Defendant does not provide any legal authority, and the Court has found none, that provides the basis for requiring Plaintiffs' counsel to certify that they have given these Plaintiffs the document requests and that they have searched for and produced all responsive documents in their possession. Generally speaking, Rule 37 provides the mechanism under which a party serving a document request may obtain relief when the responding party does not fully respond to a document request or produce documents. Rule 37(a)(3)(B) provides that "a party seeking discovery may move for an order compelling an answer . . . production or inspection if . . . a party fails to respond that inspection will be permitted—or fails to permit inspection—as required under Rule 34."[131]

The Court finds that compelling Plaintiffs to produce any outstanding documents is the preferred method for insuring that Plaintiffs have produced all responsive documents that are in their possession. The Court sees no additional benefit to ordering Plaintiffs' counsel to make the certification requested by Defendant.

Furthermore, the Court sees no compelling reason to interject itself into the attorney-client relationship and dictate what an attorney must tell his/her client regarding a set of document requests. While the Court presumes it would always be a good practice to forward the actual document request to the client, the Court declines to formulate or impose such a *per se* rule in this case, particularly where no Federal Rule of Civil Procedure dictates such a result. The focus should always be on whether the client has sufficient information to make a thorough search to determine what responsive documents are in his/her possession, custody or control, and not simply whether the client has received a copy of the document request itself.

In light of the above, the Court denies Defendant's request for certification. The Court, however, in accordance with Rule 37(a)(3)(B)(iv), compels these six Plaintiffs to produce their W-2

---

[131]Fed. R. Civ. P. 37(a)(3)(B)(iv).

forms, to the extent they have not already produced them.[132]   The Court also compels Ms. Hall to produce the e-mail that she testified she would produce to Defendant to supplement her response to Interrogatory No. 1.  In addition, the Court reminds Plaintiffs' counsel that Plaintiffs' answers to the majority of Defendant's document requests represented that "[a]ny responsive documents will be produced."  To the extent these particular Plaintiffs have not produced all responsive documents in their possession, custody or control, they should do so.  The Motion to Compel as to Gipson, Hall, Groth, Dandurand, Squier, and Stoddard's responses to Defendant's document requests is therefore granted in part and denied in part.

**VI.      Is Defendant Entitled to an Award of Sanctions?**

Defendant requests that it be awarded sanctions against Plaintiffs and their counsel under the Court's inherent power to impose sanctions and pursuant to Federal Rules of Civil Procedure 26(g), 37(a)(5), and 37(c)(1).  Defendant, however, asks only that it be awarded the amount of its reasonable expenses and attorney's fees associated with the Motion to Compel and with the reopening of Plaintiffs' depositions.

The Court has denied Defendant's request to reopen the depositions of Tina Stoddard and Dawn Erwin.  The Court has also denied without prejudice Defendant's request to reopen the depositions of the remaining eight Plaintiffs at issue in this motion.  Thus, Defendant's request for fees and expenses relating to the reopening of these depositions must also be denied.

---

[132]To the extent Plaintiffs assert in their Response to the Motion to Compel that the W-2 forms are irrelevant, the Court overrules that objection.  Plaintiffs never asserted such an objection in their initial responses to Requests No. 6 and 20, and they are not allowed to assert this objection for the first time in their opposition to the Motion to Compel.  *See Gipson v. Southwestern Bell Tel. Co.*, No. 08-2017-EFM-DJW, 2009 WL 790203, at *6 (D. Kan. Mar. 24, 2009) ("[A]ny objections not asserted in a party's initial response to a discovery request are waived and cannot be raised for the first time in opposition to a motion to compel.").

The Court will now turn to Defendant's request for expenses and fees associated with the Motion to Compel.  Such an award is authorized under Rule 26(g), Rule 37(a)(5) and Rule 37(c)(1). Rule 26(g)(1) requires that every discovery response or objection be signed by at least one attorney of record or by the pro se party.[133]  More importantly, the Rule provides that the attorney or pro se party's signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the discovery response, or objection is "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."[134]  The signature also certifies that the response or objection is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[135]  Finally, the signature certifies that the response or objection is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."[136]

If an attorney makes a Rule 26(g) certification that violates the Rule and the violation is "without substantial justification," the Court, on motion or *sua sponte,* "must impose an appropriate sanction" on the signer, the party on whose behalf the signer was acting, or both of them.[137]  Such a

---

[133]Fed. R. Civ. P. 26(g)(1).

[134]Fed. R. Civ. P. 26(g)(1)(B)(i).

[135]Fed. R. Civ. P. 26(g)(1)(B)(ii).

[136]Fed. R. Civ. P. 26(g)(1)(B)(iii).

[137]Fed. R. Civ. P. 26(g)(3).

sanction may include an order to pay the reasonable expenses caused by the violation, including attorney's fees.[138]

Rule 37(a)(5) governs the award of fees and expenses in connection with motions to compel. It requires the court to award reasonable expenses and attorney's fees to a prevailing party unless the position of the non-prevailing party was substantially justified or other circumstances make an award of expenses unjust.[139]  If a discovery motion is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.[140]  Courts have generally held that a party's position (i.e., motion, request, response, or objection) is "substantially justified" within the meaning of Rule 37 if it is "justified to a degree that could satisfy a reasonable person"[141] or where "reasonable people could differ as to the appropriateness" of the objection or response.[142]  Whether to impose sanctions when a court grants in part and denies in part a motion to compel, lies within the court's sound discretion, and the court must consider on a case-by-case basis whether the party's position

---

[138]*Id.*

[139]*See* Fed. R. Civ. P. 37(a)(5)(A) & (B).

[140]Fed. R. Civ. P. 37(a)(5)(C).

[141]*See, e.g., Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir. 2005); *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 765 (6th Cir. 2005); *Millennium Mktg. Group, Ltd. v. Simonton Bldg. Prods., Inc.*, No. 08-2198-JWL-DJW, 2009 WL 2407723, at *19 (D. Kan. Aug. 4, 2009).

[142]M*addow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997); *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2008 WL 833509, at *1 (D. Kan. Mar. 27, 2008); *Cardenas v. Dorel Juvenile Group, Inc.*, No. 04-2478-KHV-DJW, 2005 WL 3503625, at *2 (D. Kan. Dec. 22, 2004).  In a similar context, the Supreme Court has said that "substantially justified" does not mean "justified to a high degree," but only "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing government's obligations under Equal Access to Justice Act).

was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.[143]

Finally, Rule 37(c)(1) provides for sanctions when a party fails to supplement an earlier discovery response.  Under subsection (A) of Rule 37(c)(1), the court may order payment of the reasonable expenses, including attorney's fees, caused by the failure to supplement.[144]

After carefully reviewing (1) Plaintiffs' responses to both Defendant's interrogatories and requests for production, (2) Plaintiffs' deposition testimony regarding their discovery responses and the manner in which they prepared their answers and searched for documents, and (3) the parties' legal arguments, the Court concludes that an award of expenses and fees under any of the above-cited Rules is not appropriate.  The Court also does not find an award appropriate under the Court's inherent power to sanction parties.  The Court is granting the Motion to Compel only in part. Furthermore, the Court does not find that Plaintiffs' counsel violated Rule 26(g) or that sanctions are necessary under Rule 37(c)(1)(A).  The Court therefore denies Defendant's request for expenses and attorney's fees.  Each party shall bear its/his/her own expenses and fees associated with the Motion to Compel.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (doc. 398) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED** that any supplemental interrogatory answers required to be served as a result of this Order shall be served by Plaintiffs within **twenty (20) days** of the date of this Order.

---

[143]*Moss v. Blue Cross and Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 699 (D. Kan. 2007) citations omitted).

[144]Fed. R. Civ. P. 37(c)(1)(A).

**IT IS FURTHER ORDERED** that  that all documents required to be produced as a result of this Order shall be produced by Plaintiffs  **within twenty (20) days** of the date of this Order.  Said production shall take place at the offices of Defendant's counsel or at any other location agreed upon by the parties.

**IT IS FURTHER ORDERED** that Defendant's request for sanctions is denied, and each party shall bear its/his/her own expenses and attorney's fees associated with this Motion to Compel.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 28th day of September 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties